IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | |
|---|---|
| In re:<br>KIMYA D. CRAWFORD,<br>                Debtor. | Case No. 19-24551-MMH<br>(Chapter 7) |
| In re:<br>RENEE PETERSON,<br>                Debtor. | Case No. 19-24045-DER<br>(Chapter 7) |

## RESPONSE OF UPSOLVE TO ORDER TO SHOW CAUSE

In response to the Court's *Order Directing Upsolve to Show Cause and Verify that the Assistance It Provides to Debtors in this District Complies with Applicable Law*, dated January 17, 2020, Upsolve Inc. hereby submits the following response along with the Affidavits of Rohan Pavuluri and Tina Tran and the exhibits attached thereto:

### INTRODUCTION AND SUMMARY

Upsolve Inc. ("Upsolve") is a nonprofit organization based in New York, New York, that provides an online software product free of charge to self-represented individuals seeking to file for Chapter 7 bankruptcy.

Upsolve's free internet application uses technology to assist users of the product gather and input their information into the standard Chapter 7 bankruptcy forms and checks (including with some human oversight) those forms for errors and inconsistencies. Upsolve does not provide legal advice or representation, and repeatedly tells users that it does not and cannot do so. Upsolve has rigorous disqualification criteria that limits its service to users with straightforward, routine cases.

1

In an abundance of caution and to ensure transparency, Upsolve encourages its users to inform the Court in which they file of their use of Upsolve's service. Upsolve does so by providing its users with a form letter—formerly a form declaration, as the debtors in these two cases filed—noting that they received pro bono assistance, but not legal advice, from Upsolve in preparing their petitions.

As explained below, Upsolve believes its limited pro bono assistance complies with the Bankruptcy Code provisions and state statutes raised in the Court's Order. First, because Upsolve does not provide any services for compensation, it does believe it has mandatory disclosure obligations under Sections 110 or 329 of the Bankruptcy Code. Second, because Upsolve's assistance to its users amounts to providing technology and simple error-checking, it does not involve the application of legal knowledge, principles or judgment to its specific users' circumstances, and therefore is not the practice of law under Maryland (or other state) law. Rather, Upsolve simply provides its users with general information about the law and facilitates users' input of information into the standard bankruptcy forms, checking only for accuracy and consistency while thoroughly disclosing the limited nature of its services.

Upsolve welcomes this opportunity to introduce its service to this Court, and it stands ready to provide any additional information needed or answer any further questions the Court may have. Upsolve has made, and will continue to make, every effort to ensure that its services are in compliance with the applicable law of all of the jurisdictions in which it is available. In light of the nature of Upsolve's product and its role in these cases, Upsolve asks the Court to find that (i) the statements in the Declarations are fully informed and appropriate under applicable law, and (ii) the assistance provided by Upsolve to debtors filing petitions in this district complies with applicable law.

I.  **UPSOLVE'S SERVICES AND FUNDING MODEL**

   **A.  The Nature of Upsolve's Services**

Upsolve was co-founded in 2016 by Rohan Pavuluri and Jonathan Petts, with the mission of providing free services to indigent pro se debtors and, by doing so, increasing access to justice. Pavuluri Aff ¶¶ 3-5. Upsolve offers a free software product designed to assist self-represented debtors in preparing their bankruptcy petitions. Pavuluri Aff ¶ 12. Mr. Pavuluri currently serves as the organization's Chief Executive Officer. Pavuluri Aff ¶ 3.

The current iteration of Upsolve's web-based software is the product of a multi-year process of studying, developing and refining Upsolve's software and delivery model. Throughout this process, Upsolve has engaged in robust consultation with bankruptcy experts and key stakeholders to ensure that its product is in compliance with the law and advances Upsolve's mission of helping indigent debtors achieve a fresh start. Pavuluri Decl. ¶ 5, 41. From mid-2016 to mid-2017, Upsolve operated a brick-and-mortar legal aid clinic in Brooklyn, New York, using an early version of its software to allow for automated intake and bankruptcy form generation, supplemented by limited attorney review of those forms. Upsolve no longer operates any physical clinics. Pavuluri Decl. ¶ 8. Beginning in early 2018, Upsolve made its software available to legal aid programs nationwide in an effort to support the work of local programs providing *pro bono* services to indigent debtors.

In June 2018, Upsolve published its software as a web-based application on its website, effectively making it available nationwide for use by any potential self-represented debtor seeking to generate bankruptcy petitions. Due to improvements in Upsolve's software and the implementation of highly restrictive eligibility criteria Upsolve limiting its use to simple Chapter 7 cases, Upsolve was able to conduct the limited human-review aspect of its services in-house. Pavuluri Decl. ¶ 10.

3

Upsolve's web-based approach allows a wider user base to take advantage of its free-of-charge services. In 2019, over 2,500 self-represented debtors generated their bankruptcy petitions using Upsolve's software. Pavuluri Decl. ¶ 13. And Upsolve's success in providing technology-enabled support to self-represented debtors has earned it wide and positive media coverage. Pavuluri Decl. ¶ 7.

### B. The Limited Scope of Upsolve's Services and the Circumscribed Nature of Attorney Review

Upsolve's software is designed to perform only straightforward operations that require no discretionary decisions in individual cases.

One key to maintaining this narrow scope is Upsolve's rigorous approach to determining which users are eligible to use its software. Before allowing users to use its software, Upsolve requires potential users to complete a screening questionnaire that imposes a rigorous set of disqualifying criteria. These criteria ensure that only people with sufficiently straightforward cases may use its software so that petitions can be generated automatically by Upsolve's software using only information provided by the users without the need for any discretionary determinations. Pavuluri Decl. ¶ 16. These screening criteria are sufficiently rigorous that only a small percentage of individuals who take the survey—those with only the most uncomplicated potential bankruptcy cases—were able to use Upsolve's software to generate and file their bankruptcy forms. Pavuluri Decl. ¶ 18.

Specifically, this questionnaire ensures that only self-represented debtors who intend to file simple, no-asset Chapter 7 cases can use the software. Disqualifying circumstances include: ownership of a home, mobile home, or any real property; ownership of more than $10,000 in assets; involvement in a personal injury lawsuit; earning above the median income in one's state; intention to discharge student debt, child support debt, spousal support or other alimony; and

4

incorrect tax filings within the last two years. Pavuluri Decl. ¶ 17. This approach filters out users whose situations might require specialized advice or the exercise of legal judgment, and ensures that potential users who will require greater assistance than Upsolve can offer will seek alternative support as needed on their own initiative. *Id.* ¶ 19.

When applying these disqualification criteria, Upsolve does not provide disqualified (or qualified) users with any advice or recommendations specific to their situation. Rather, Upsolve simply informs disqualified users that they are not able to use Upsolve's service and provides them with a directory of legal-aid options and an opportunity to consult with an attorney at their own direction and expense. Pavuluri Decl. ¶ 19.

Once a user has satisfied Upsolve's eligibility criteria, but before she can take advantage of Upsolve's software, the user is required to read and sign a number of disclosures informing her of the consequences of filing for bankruptcy, the limitations of filing without the aid of an attorney, and importantly, the limitations of Upsolve's software, including that Upsolve is not an attorney and is not providing legal services. Pavuluri Decl. ¶ 20.

After a user has satisfied Upsolve's rigorous eligibility criteria—meaning that their petition can be prepared by Upsolve's software without any exercise of discretionary judgment—and has read and signed the necessary disclosures, the preparation of their petition using Upsolve's software is relatively straightforward.

Upsolve gathers relevant information from its users through a series of questions, and uses this information along with information drawn from a user-directed credit report pull to populate the bankruptcy forms and declarations required for filing. Pavuluri Decl. ¶ 21. The information Upsolve gathers is derived from—and, in turn, inputted into—the relevant bankruptcy forms. Indeed, much of the information Upsolve provides its users when gathering such information is

5

similar to that provided by the Administrative Office of the U.S. Courts through the informational booklet "Instructions: Bankruptcy Forms for Individuals."

Upsolve, however, provides a number of nondiscretionary, useful functions that streamline and simplify the generation of bankruptcy forms by its users and, by helping ensure consistency and completeness, make those forms easier for courts and trustees to process. First, Upsolve automates the process of gathering user information and inputting it in the proper places on the relevant forms. For example, Upsolve populates a user's schedule of creditors based on the user's credit report. At each step however, the software requires the user to review and confirm the accuracy of information that has been gathered from them. Pavuluri Decl. ¶ 22. And Upsolve employs branching logic to ensure that users do not have to see questions that they have already made clear do not apply to them. For example, if a user answers that they do not have a spouse, Upsolve ensures that they do not have to answer any further questions regarding that nonexistent spouse. Upsolve also built into its software a robust system of automated checks to ensure accuracy and consistency. For example, if a user inputs a car loan into Upsolve's software, Upsolve will ask the user to confirm whether they own a car. Pavuluri Decl. ¶ 23.

Once a user has provided all of the information necessary to populate the relevant forms, the user-generated forms receive a limited human-performed quality-control review for completeness and consistency. Pavuluri Decl. ¶ 27. During this review, Upsolve sometimes becomes aware of inconsistencies across the information provided by the user and, upon discovering such inconsistency, asks the user to review and verify the information they provided. Tran Decl. ¶ 3. This review is currently performed by Tina Tran, Upsolve's managing attorney. Tran Decl. ¶ 1. Although Tran is an attorney (though not, as the Court noted in its Order, barred

6

in Maryland), her review of Upsolve users' data is strictly limited to review for accuracy and completeness and she does not provide legal advice. Tran Decl. ¶ 2.

Once this review is complete, the user is notified that their forms are completed and that they may review and print their documentation and, at their own initiative and discretion, file the forms they generated using Upsolve's software. Pavuluri Decl. ¶ 29. Included among these forms is a form letter for the user to review and sign—and, if they so choose, file—stating that a user received free assistance from Upsolve. Upsolve previously provided users with a form declaration (like those filed by the debtors in these cases) but now provides them with a form letter. Upsolve provides this form letter in order to be transparent, so that a self-represented individual may inform the Court and U.S. Trustee that she received pro bono assistance from Upsolve, but that Upsolve is not her attorney and was not paid any fee. Pavuluri Decl. ¶ 31. Upsolve provides this so that courts or trustees reviewing Upsolve users' petitions do not draw the conclusion that its users have received undisclosed legal representation or compensated assistance. *Id*. Like all of the forms Upsolve provides, however, a user must read and sign this form letter and files it only at their own discretion.

Once a user has used Upsolve's software to generate her bankruptcy forms, Upsolve's interaction with the user is (i) computerized; and (ii) limited to providing general information, including an informational video about the section 341 hearing and technical assistance with using the software. Pavuluri Decl. ¶ 32. Upsolve's website also publishes articles designed to inform its users and the general public about particular aspects of the bankruptcy system in general, and addresses a number of frequently asked questions. *Id*.

The two self-represented individual debtors in these cases used Upsolve's software in order to prepare their petitions. Tran Decl. ¶ 6. Consistent with the process described above, Upsolve

7

did not provide any legal advice to either individual. These debtors—like all of Upsolve's users—satisfied the necessary eligibility criteria to ensure that Upsolve's software could prepare their petitions without any exercise of discretion or personal interaction with anyone at Upsolve. And these debtors—like all of Upsolve's users—received clear and repeated disclosures about the nature of Upsolve's services, including disclosures in the form declarations that these two debtors filed in these cases. Pavuluri Decl. ¶ 35, 36. Neither Tina Tran nor any other Upsolve employee had any communication whatsoever with either of the two debtors during the preparation of their forms, nor did anyone associated with Upsolve adjust their forms in any way. These debtors' interaction with Upsolve was a pure software experience. Tran Decl. ¶ 6.

In specific response to the Court's question regarding the identity of Maryland attorneys who may have assisted the debtors, *see* Order at 2, no attorney associated with Upsolve—whether admitted to practice law in Maryland or otherwise—provided assistance to these debtors. Although Upsolve once stated on its website that users could have their petitions "reviewed by a lawyer for free," it removed this language to avoid any confusion as to the nature of Upsolve's assistance. Pavuluri Decl. ¶ 20.

### C. Upsolve's Funding

Upsolve never asks or requires users to pay to use its software. Pavuluri Decl. ¶ 39. Upsolve does accept donations from individuals, including its users, but users are not required to donate to Upsolve and receive the same product regardless of whether they donate. Such donations amounted to less than one percent of Upsolve's funding in 2019. Instead, the majority of Upsolve's funding comes from grants from governments and private foundations. In 2019, Upsolve received over $1 million in grants from organizations including, among others, the Legal Services Corporation, the Robin Hood Foundation, the New York Bar Foundation, and the Lawyers Trust Fund of Illinois. Pavuluri Decl. ¶ 40.

8

## II. THIS COURT SHOULD FIND THAT UPSOLVE'S ASSISTANCE COMPLIES WITH APPLICABLE LAW

In its Order, this Court asked Upsolve to "show cause, if any there be, why the Court should find that (i) the statements in the Declarations are fully informed and appropriate under applicable law, and (ii) the assistance provided by Upsolve to debtors filing petitions in this district otherwise complies with applicable law, including applicable rules with respect to authorization to practice law in this district." Order at 4.

Upsolve's technology-driven non-profit model of limited-scope assistance to self-represented debtors was designed with care to ensure compliance with all applicable law. As explained below, Upsolve believes and respectfully represents to the Court that the services it provides—and provided in these cases—comply with all of the state and federal laws addressed in this Court's Order. *See* Order (citing 11 U.S.C. §§ 101, 329; Fed. R. Bankr. P. 2016(b); Md. Code Ann., Bus. Occ. & Prof. § 10-101; Md. R. Attorneys, R. 19-305.5, 19-504.

### A. Because Upsolve does not receive compensation for its services, it falls outside of sections 110 and 329 of the Bankruptcy Code.

Several provisions of the Bankruptcy Code, and related Bankruptcy Rules, govern the actions of "bankruptcy petition preparers," *see* 11 U.S.C. § 110, and "attorney[s] representing the debtor," *id.* § 329; *see* Fed. R. Bankr. P. 2016. *See* Order at 2. There provisions apply only when the service-provider is charging a fee. Because Upsolve does not charge a fee, it believes these provisions do not apply.

*1. Section 110*

Section 110 of the Bankruptcy Code governs "bankruptcy petition preparers." It defines a "bankruptcy petition preparer" as "a person, other than an attorney for the debtor or an employee of such attorney under the direct supervision of such attorney, who prepares *for compensation* a document for filing." 11 U.S.C. § 110 (emphasis added). Such "bankruptcy petition preparers"

9

must sign any document prepared for filing and provide the debtor with written notice informing the debtor, among other things, that the preparer is not an attorney. 11 U.S.C. § 110(b). The Code also prohibits a bankruptcy petition preparer from "offer[ing] a potential bankruptcy debtor any legal advice," and enumerates a number of forms such advice may take. *Id.* § 110(e). Section 110 goes on to impose additional restrictions on petition preparers and provide detailed provisions for the enforcement of the section's restrictions. *Id.* § 110.

The definition of a "bankruptcy petition preparer" as a person who prepares documents "for compensation" plainly excludes pro bono service providers who do not do anything *for compensation*. Furthermore, exclusion from the definition of "bankruptcy petition preparer" in turn excludes pro bono services from all of the requirements of section 110, which all apply only to a "bankruptcy petition preparer." *See id.* § 110(b)-(j).

While no reported cases appear to address this issue, Collier reads the plain text of section 110's definition to unambiguously exclude those who do not receive compensation: "[V]olunteers in *pro bono* programs are not subject to section 110, *since they are not compensated*." 2 Collier on Bankruptcy ¶ 110.02[2] (emphasis added); *see also id.* ("[S]ection 110 does not apply to law students preparing petitions as part of their clinical studies, *as long as they are not compensated for their services*." (emphasis added)). Because Upsolve does not provide any services *for compensation*—a necessary predicate to classification as a "bankruptcy petition preparers" under the Bankruptcy Code—it believes that it is exempt from the requirements section 110 places on such "bankruptcy petition preparers." As explained above, Upsolve does not require its users to provide any compensation for services rendered.

Upsolve's funding by donations, rather than as compensation for services rendered, is materially different from the sort of disguised requests for compensation that Courts have found

10

sufficient to satisfy the requirements of section 110. *See, e.g., In re Crowe*, 243 B.R. 43, 50 (B.A.P. 9th Cir.), aff'd, 246 F.3d 673 (9th Cir. 2000) ("[An individual's] characterization of himself as an author is a disingenuous attempt to sidestep the 'for compensation' component of the definition of petition preparer under § 110(a). He is exactly such; the book is a mere front for his services").

### 2. Section 329

Under section 329(a) of the Bankruptcy Code, "[a]ny attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation." 11 U.S.C. § 329(a); *see* Fed. R. Bankr. P. 2016(b) ("Every attorney for the debtor, whether or not the attorney applies for compensation, [to] file and transmit ... the statement required by § 329 of the Code."); *see also* Procedural Form 2030 (the Disclosure of Compensation of Attorney for Debtor). Section 329(b) goes on to provide that "[i]f such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment." 11 U.S.C. § 329(b).

Upsolve falls outside section 329 and the related rules for two reasons. First, Upsolve is not an "attorney representing a debtor in a case under this title." For one thing, Upsolve is not an attorney at all, and "[t]he plain text of section 329 does not subject nonattorneys to its strictures." 3 Collier on Bankruptcy 329.02[2]. For another, Upsolve is not "representing a debtor" in these or any cases because it is not engaged in the practice of law. Although Upsolve employs an attorney—Tina Tran—none of her responsibilities, or any services provided by Upsolve to its users, amount to legal representation.

11

Second, even assuming Upsolve were an "attorney representing a debtor," the text and context of section 329 make clear that it applies only to attorneys providing representation *for compensation*, which Upsolve is not. *See* 11 U.S.C. § 329(a) (requiring an attorney to "file with the court a statement of the compensation paid or agreed to be paid"). Absent compensation or agreement for compensation, section 329 statement need not to be filed. This is confirmed by section 329(b), which empowers the Court, on the basis of the statement filed, to reduce "such compensation," which again presumes the existence of compensation. 11 U.S.C. § 329(b); *see also* Fed. R. Bankr. P. 2017 (implementing section 329 and authorizing the Court to determine "whether any payment of money or any transfer of property … is excessive").

Section 329's text thus makes clear that its sole purpose is to guard against excessive or otherwise inappropriate compensation being charged in connection with bankruptcy representation, not to require disclosure free assistance by non-legal service providers. Upsolve respectfully submits that while some attorneys representing debtors pro bono may voluntarily file a statement of no compensation, such a filing is not required by Upsolve—though it has sought to do something similar by providing its users with a document to file disclosing its assistance. *See* Order at 3 n.3. Indeed, it appears that at least one legal organization in Maryland that provides limited pro bono assistance does not file a statement of no compensation in connection with such assistance. *See, e.g., In re Mia Shane Glenn*, No. 18-18578, Doc. 6, at 3 (Bankr. D. Md. June 27, 2018) (application for fee waiver stating "I attended a bankruptcy class at Maryland Legal Aid at no cost");

### B. Upsolve Provides Users with a Web-Based Self-Help Tool—Its Role in Individual cases is Narrowly Circumscribed and Does Not Constitute the Practice of Law

As the Court noted in its Order, Maryland law prohibits the unauthorized practice of law by non-attorneys. *See* Order at 4; Md. R. Attys. 19-305.5 (barring the unauthorized practice of law); *see also id.* § 19-504 (defining "pro bono attorney"); Md. Code Ann., Bus. Occ. & Prof. § 10-101 (defining "practice law"). Section 110(k) of the Bankruptcy Code likewise makes clear that state restrictions on the unauthorized practice of law by non-attorneys apply in bankruptcy. *See* 11 U.S.C. § 110(k) ("Nothing in this section shall be construed to permit activities that are otherwise prohibited by law, including rules and laws that prohibit the unauthorized practice of law."); *In re Johnson*, No. ADV 12-00408-DER, 2012 WL 5193964, at *6 (Bankr. D. Md. Oct. 19, 2012) ("In determining whether an action constitutes the practice of law under the provisions of § 110 of the Bankruptcy Code, courts look to state law."). At bottom, each of these restrictions bar Upsolve from engaging in activities that constitute the "practice of law," and Upsolve has always sought to comply fully with both the letter and spirit of all such provisions.

"Under Maryland law, the focus of the inquiry on whether an individual has engaged in the practice of law should 'be on whether the activity in question required legal knowledge and skill in order to apply legal principles and precedent.'" *In re Lucas*, 312 B.R. 559, 575 (Bankr. D. Md. 2004) (quoting *Attorney Grievance Comm'n v. Hallmon,* 681 A.2d 510, 514 (Md. 1996)). As the Maryland Court of Appeals has explained, "[t]o determine what is the practice of law" is not a straightforward inquiry, but rather requires the Court to look at the facts of each case and determine whether they 'fall[ ] within the fair intendment of the term.'" *Hallmon*, 343 Md. at 397 (second alteration in original) (quoting *In re Application of Mark W.*, 303 Md. 1, 8 (1985)) (internal quotation marks omitted). When considering whether a particular case constitutes the practice of law, a court must thus bear in mind that "[t]he objective of the prohibition against unauthorized

13

practice of law . . . is to 'protect the public from being preyed upon by those not competent to practice law—from incompetent, unethical or irresponsible representation.'" *In re Lucas*, 312 B.R. at 572 n.6 (quoting *Turkey Point Prop. Owners' Ass'n v. Anderson*, 666 A.2d 904, 908 (Md. Ct. Special App. 1995)).

In the particular context of assistance with document preparation, courts have explained that the practice of law in Maryland includes "'drawing for others . . . written instruments'" only where doing so "'require[s] more than the most elementary knowledge of the law, or more than that which the ordinary or average laymen may be deemed to possess' in situations where 'special legal knowledge and skill are required.'" *In re Johnson*, 2012 WL 5193964, at *6 (quoting *Lukas v. Bar Ass'n of Montgomery Cty., Md., Inc.*, 35 Md. App. 442, 448 (Md. Ct. Spec. App. 1977)). Thus where no "special legal knowledge [or] skill are required" to assist in the drafting of documents, any such assistance does not constitute the practice of law. *Id.*

Although Upsolve has automated the bankruptcy filing process for self-represented debtors—which likewise redounds to the courts' and trustees' benefit in the form of more accurate and complete self-represented bankruptcy petitions—it does not apply any "special legal knowledge [or] skill" when helping debtors prepare their documents for filing. *Lukas*, 35 Md. App. at 448-49. Rather, as explained above, Upsolve's software simply takes the information reviewed and approved by its users and places it in the appropriate place on the standard Chapter 7 bankruptcy forms. Upsolve makes no discretionary determination in any individual cases. And its review of users' data, although conducted by an attorney, is limited to ensuring accuracy and internal consistency. None of these tasks involve the exercise of legal judgment.

Upsolve's rigorous eligibility criteria for the use of its service ensure that only individuals with straightforward Chapter 7 cases may use the product. Upsolve's users thus consist of those

individuals who intend to file only the most straightforward bankruptcy cases—cases that can be filed with only "'the most elementary knowledge of the law,'" that is not "'more than that which the ordinary or average laymen may be deemed to possess.'" *In re Johnson*, 2012 WL 5193964, at *6. Cases of greater complexity are excluded.

Moreover, Upsolve clearly and repeatedly discloses to its users that it is not acting as their attorney and is not providing legal advice. As described above and in the Pavuluri Declaration and attached exhibits, Upsolve makes abundantly clear to its users that it is not an attorney and is not providing them with legal advice. The declarations filed by the Upsolve users in these cases confirm Upsolve's attempt to ensure that its users are transparent with the Courts that Upsolve did not provide legal advice. As each declarant affirmed "Upsolve is not my attorney." To be sure, the language of the Declarations stated that the self-represented Debtors "received free legal assistance in preparing my bankruptcy forms from the legal aid nonprofit Upsolve," which could be interpreted to not accurately characterize the services Upsolve provides. However, as illustrated in this submission and the accompanying declaration, the nature and extent of the services provided did not involve the practice of law.

Upsolve believes and submits to the Court that none of the services it provides amount to the practice of law, especially when considered in light of "the facts of [this] case" and "the fair intendment of the term," *Hallmon*, 343 Md. at 347 (internal quotations omitted), which is to "protect the public from being preyed upon by those not competent to practice law—from incompetent, unethical or irresponsible representation," *In re Lucas*, 312 B.R. at 572 n.6 (internal quotations omitted). Upsolve is a nonprofit dedicated to providing free assistance to individuals seeking to represent themselves in their bankruptcy filing. It provides only an extremely limited form of assistance based on using technology to automate the completion of required bankruptcy

forms to make it easier for those self-represented individuals to seek the fresh start that bankruptcy promises. And Upsolve engaged in a robust process of consultation and refinement—including the employment of an on-staff consulting attorney—to ensure that it is acting competently, ethically, and responsibly, and in compliance with all applicable laws.

In doing so, Upsolve plays an important and well-recognized role in helping to bridge the access to justice gap. As the Court notes in its Order, a significant number of individual debtors are not represented by an attorney, both in this District and most others. *See* Order at 2 n.2. Although attorneys are required to integrate pro bono work into their service obligations, *see id.* at 3, there are simply not enough attorneys to provide the critical legal services needed by poor and low-income Americans. *See* Deborah L. Rhode, *Access to Justice: An Agenda for Legal Education and Research*, 62 J. Legal Educ. 531 (2013) ("For decades, bar studies have consistently estimated that more than four-fifths of the individual legal needs of the poor and a majority of the needs of middle-income Americans remain unmet."). For example, in 2018 Maryland Legal Aid closed just 113 full- or limited-assistance bankruptcy cases in 2018—which is a relatively small number when compared to the 3,500 unrepresented bankruptcy filings in this district in 2019, not to mention the many individuals who may benefit from bankruptcy but do not file at all. *See* Order at 2 n.2; Legal Services Corporation, *Case Services Provided: Maryland, Consumer, Bankruptcy/Debt Relief*, https://www.lsc.gov/grants-grantee-resources/grantee-data/case-services-provided. By using technology to provide limited assistance—well short of any assistance that constitutes the practice of law—to self-represented debtors, Upsolve is able to make the protections of bankruptcy more accessible for those individuals who stand to benefit most from it.

Indeed, Upsolve is one of a number of organizations helping to bridge the gap between the availability of pro bono legal services and the civil justice needs of low-income communities. For example, "Maryland Legal Aid offers classes to teach people who have minimal property how to file a Chapter 7 bankruptcy." Maryland Legal Aid, *Bankruptcy: What You Need to Know in Maryland* 15, https://www.mdlab.org/wp-content/uploads/MLA_Bankruptcy_07.2018_WEB.pdf. While that organization "also represents people in some Chapter 7 and Chapter 13 bankruptcy cases," it simply "does not have enough resources to provide representation to every person who needs an attorney," and so offers self-help classes as a stopgap alternative. *Id.* Courts, too, have also implemented programs to support self-represented debtors short of providing them with full legal representation, like the Maryland Courts Debtor Assistance Project, which provides potential self-represented debtors the opportunity to meet one-on-one with a bankruptcy attorney who does not represent the debtor but can provide referrals to bankruptcy attorneys. *See* U.S. Bankr. Ct. D. Md., *Debtor Assistance Project*, https://www.mdb.uscourts.gov/content/debtor-assistance-project.

Simply put, Upsolve respectfully submits that its limited interactions with the debtors in these cases should not be found to constitute the practice of law. Upsolve's competent, ethical, and responsible operations support rather than undermine the very purpose of regulation of the practice of law designed to "protect the public . . . from incompetent, unethical or irresponsible representation." *In re Lucas*, 312 B.R. at 572 n.6.

## CONCLUSION

For the reasons explained above, Upsolve requests that this Court find that Upsolve has fully complied with the Order to Show Cause and is relieved from any further duties under the Order to Show Cause.

_/s/ Holly Loiseau_
Holly E. Loiseau (12541)
Brian E. Ferguson (10326)
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW #600
Washington, DC 20036
(202) 682-7000
(212) 310-8007 (fax)
holly.loiseau@weil.com
brian.ferguson@weil.com

Theodore E. Tsekerides (*Pro Hac Vice* Pending)
David N. Griffiths (*Pro Hac Vice* Pending)
Robert Niles-Weed (*Pro Hac Vice* Pending)
Victor S. Leung (*Pro Hac Vice* Pending)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000
(212) 310-8007 (fax)
theordore.tsekerides@weil.com
david.griffiths@weil.com
robert.niles-weed@weil.com
victor.leung@weil.com