Entered: June 1st, 2022
Signed: June 1st, 2022

**SO ORDERED**



STEPHEN C. ST. JOHN
U.S. BANKRUPTCY JUDGE
SITTING BY DESIGNATION

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MARYLAND
### at Baltimore

| | | |
|---|---|---|
| In re: | * | Case No.   19-24045 |
| RENEE PETERSON, | * | Chapter   7 |
| Debtor. | * | |
| * * * * * * * | * | |
| In re: | * | Case No.   19-24551 |
| KIMYA DAWN CRAWFORD, | * | Chapter   7 |
| Debtor. | * | |
| * * * * * * * * * * * * * | | |

## <u>MEMORANDUM OPINION</u>

These matters are before the Court upon the Order Directing Upsolve to Show Cause and

Verify That the Assistance It Provides to Debtors in This District Complies with Applicable Law

(hereinafter, "Order to Show Cause"), entered on January 17, 2020.[1]  The Court conducted an

---

[1] Identical versions of the Order to Show Cause were entered on January 17, 2020, in Case No. 19-24045 by the Honorable David E. Rice and in Case No. 19-24551 by the Honorable Michelle M. Harner of the United States Bankruptcy Court for the District of Maryland.  *In re Renee Peterson*, Case No. 19-24045 (hereinafter, "*In re Peterson*"), ECF No. 16; *In re Kimya Dawn Crawford*, Case No. 19-24551 (hereinafter, "*In re Crawford*"), ECF No. 19.  On March 29, 2021, Judge Rice and Judge Harner each issued orders recusing themselves from the above-captioned matters upon learning that Robert A. Gordon, a former United States Bankruptcy Judge for the District of Maryland, whose term concluded in June 2020, serves on the Advisory Board of Upsolve, Inc.  *In re Peterson*, ECF No. 79, at 1; *In re Crawford*, ECF No. 80, at 1.  Pursuant to a Notice of Recusal, all Judges for the United States Bankruptcy Court for the District of Maryland

evidentiary hearing on August 18, 2021, at which counsel for Upsolve, Inc. (hereinafter, "Upsolve") and the Assistant United States Trustee for the District of Maryland appeared. The Court heard final arguments from counsel for Upsolve and the Assistant United States Trustee on September 22, 2021. At the conclusion of the September 22, 2021 hearing, the Court requested briefing from the parties on the issue of exemption selection. Counsel for Upsolve timely filed the requested brief on October 6, 2021. The Acting United States Trustee for Region Four, by the Assistant United States Trustee, filed a statement on October 7, 2021, advising that no response would be filed to the brief filed by Upsolve. On October 20, 2021, the Court advised the parties by letter that the matter would be taken under advisement. This Court has jurisdiction over these proceedings pursuant to 28 U.S.C. §§ 157(b) and 1334(b) and Local Rule 402 of the United States District Court for the District of Maryland. Venue is proper pursuant to 28 U.S.C. §§ 1408(1) and 1409(a). This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law.

## I. PROCEDURAL HISTORY

### A. *In re Renee Peterson*

Renee Peterson ("Ms. Peterson"), proceeding without legal counsel, filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code on October 21, 2019. *In re Peterson*, ECF No. 1, at 1-7. With her voluntary petition, Ms. Peterson filed the following

---

were recused from any matter in which the former judge appeared from June 18, 2020, through December 31, 2021. *See* Notice of Judicial Recusal for Matters in Which Robert A. Gordon Appears, United States Bankruptcy Court for the District of Maryland, https://www.mdb.uscourts.gov/files/JudgeGordonRecusalNotice%20%282020-10-19%29.pdf (last visited June 1, 2022). While the former judge did not and has not made an appearance in the above-captioned matters, Chief Circuit Judge Roger L. Gregory, United States Court of Appeals for the Fourth Circuit, determined that public interest required the assignment and designation of the presiding Judge for these matters pursuant to 28 U.S.C. § 155(a). *In re Peterson*, ECF No. 85, Order of Designation entered Apr. 8, 2021; *In re Crawford*, ECF No. 84, Order of Designation entered Apr. 8, 2021.

documents:  Summary of Your Assets and Liabilities and Certain Statistical Information; Schedules A-J, inclusive; Declaration About an Individual Debtor's Schedules; Statement of Financial Affairs for Individuals Filing for Bankruptcy; Verification of Matrix; List of Creditors; and a document entitled "Declaration of Pro Se Assistance."  *Id*. at 8-48; ECF No. 1-1, at 1. Simultaneous with her petition, Ms. Peterson filed her Statement About Your Social Security Numbers (ECF No. 2); Certificate of Credit Counseling (ECF No. 3); Chapter 7 Statement of Your Current Monthly Income (ECF No. 4); Statement of Intention for Individuals Filing Under Chapter 7 (ECF No. 5); and Application to Have the Chapter 7 Filing Fee Waived (ECF No. 6).

On her Schedule A/B, Ms. Peterson listed the following assets and accompanying values:

| | |
|---|---|
| Car, described as "2007 Chevrolet Colbalt [*sic*] with 45,396 miles in 'fair condition'" | $1,850.00 |
| Household goods and furnishings, described as "bed, bedding, chairs, cooking utensils, couch, eating utensils, microwave, picture frames, and towels" | $1,000.00 |
| Electronics, described as "smartphone and TV" | $500.00 |
| Firearms, described as "for protection" | $100.00 |
| Clothes, described as "all clothes and footwear" | $200.00 |
| Jewelry, described as "wedding/engagement ring" | $500.00 |
| Non-farm animal, listed as "dog" | $50.00 |
| Cash | $20.00 |
| Deposits of money in the form of a checking account and a savings account, both at M&T Bank | $0.00 for both accounts |
| Retirement or pension account, denoted as a 401(k) or similar plan and described as "Janney Montgomery Scott LLC" | $2,000.00 |
| Security deposit on rental unit with Cherish Smith | $1,300.00 |

3

Interest in an insurance policy with Reliance Standard,
    indicating her husband is the beneficiary        $0.00

Total of all property on Schedule A/B        $7,520.00

*In re Peterson*, ECF No. 1, at 10-19.

Ms. Peterson's Schedule C indicated that she was "claiming state and federal nonbankruptcy exemptions" pursuant to 11 U.S.C. § 522(b)(3). *Id*. at 20. Schedule C reflected the following exempted assets, the assets' values, the amounts of the claimed exemptions, and the law allowing the exemption for each asset:

| Exempted Asset | Current Value | Exemption Amount | Statute(s)[2] |
|---|---|---|---|
| Household goods | $1,000.00 | $1,000.00 | §§ 11-504(b)(4) & 11-504(b)(5) |
| Electronics | $500.00 | $500.00 | §§ 11-504(b)(5) & 11-504(f)(1) |
| Firearms | $100.00 | $100.00 | §§ 11-504(b)(5) & 11-504(f)(1) |
| Clothes | $200.00 | $200.00 | §§ 11-504(b)(5) & 11-504(f)(1) |
| Jewelry | $500.00 | $500.00 | §§ 11-504(b)(5) & 11-504(f)(1) |
| Personal animals | $50.00 | $50.00 | § 11-504(b)(4) |
| Cash | $20.00 | $20.00 | § 11-504(b)(5) |
| Automobile | $1,850.00 | $1,850.00 | §§ 11-504(b)(5) & 11-504(f)(1) |
| M&T Bank | $0.00 | $0.00 | §§ 11-504(b)(5) & 11-504(f)(1) |
| M&T Bank | $0.00 | $0.00 | §§ 11-504(b)(5) & 11-504(f)(1) |
| Janney Montgomery Scott LLC | $2,000.00 | $2,000.00 | 11 U.S.C. §§ 522(d)(10) & 522(d)(12) |
| Cherish Smith | $1,300.00 | $1,300.00 | §§ 11-504(b)(5) & 11-504(f)(1) |
| Insurance Plan | $0.00 | $0.00 | §§ 11-504(b)(5) & 11-504(f)(1) |

[2] Unless otherwise stated, all citations in the "Statute(s)" column are to the Code of Maryland, Courts and Judicial Proceedings article.

*See* ECF No. 1, at 20-21. Additionally, Ms. Peterson indicated on her Schedule C that she was not claiming a homestead exemption of more than $170,350.00. *Id*. at 20.

Ms. Peterson answered the following questions regarding assistance she received related to filing bankruptcy in the negative:

- Page 7, Voluntary Petition: Did you pay or agree to pay someone who is not an attorney to help you fill out your bankruptcy forms? *See id*. at 7.

- Declaration About an Individual Debtor's Schedules: Did you pay or agree to pay someone who is NOT an attorney to help you fill out bankruptcy forms? *See id*. at 34.

- Question 16, Statement of Financial Affairs for Individuals Filing for Bankruptcy: Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone you consulted about seeking bankruptcy or preparing a bankruptcy petition? *See id*. at 41.

- Question 17, Statement of Financial Affairs for Individuals Filing for Bankruptcy: Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone who promised to help you deal with your creditors or to make payments to your creditors? *See id*. at 42.

- Part 12, Statement of Financial Affairs for Individuals Filing for Bankruptcy: Did you pay or agree to pay someone who is not an attorney to help you fill out bankruptcy forms? *See id*. at 46.

- Question 17, Application to Have the Chapter 7 Filing Fee Waived: Have you paid anyone for services for this case, including filling out this application, the bankruptcy filing package, or the schedules? *See In re Peterson*, ECF No. 6, at 3.

- Question 18, Application to Have the Chapter 7 Filing Fee Waived: Have you promised to pay or do you expect to pay someone for services for your bankruptcy case? *See id.*

- Question 19, Application to Have the Chapter 7 Filing Fee Waived: Has anyone paid someone on your behalf for services for this case? *See id.*

Marc H. Baer, Esquire, was appointed Chapter 7 Trustee in Ms. Peterson's case. *In re Peterson*, ECF No. 7. The Chapter 7 Trustee filed his Report of No Distribution on January 9, 2020, indicating that there was no estate property available for distribution to creditors beyond

that which Ms. Peterson exempted. *In re Peterson*, ECF No. 13. The Court granted Ms.

Peterson's discharge on July 7, 2020. *In re Peterson*, ECF No. 54.

## B. *In re Kimya Dawn Crawford*

Kimya Dawn Crawford ("Ms. Crawford"), who, like Ms. Peterson, was unrepresented by

legal counsel, filed her voluntary petition for relief under Chapter 7 of the United States

Bankruptcy Code on October 31, 2019. *In re Crawford*, ECF No. 1, at 1-7. Ms. Crawford filed

a number of documents with her petition: Summary of Your Assets and Liabilities and Certain

Statistical Information; Schedules A-J, inclusive; Declaration About an Individual Debtor's

Schedules; Statement of Financial Affairs for Individuals Filing for Bankruptcy; Verification of

Matrix; and List of Creditors. *Id*. at 8-56. Ms. Crawford also filed with the Court,

contemporaneously with her petition, her Chapter 7 Statement of Your Current Monthly Income

(ECF No. 2); Statement About Your Social Security Numbers (ECF No. 3); Certificate of Credit

Counseling (ECF No. 4); Statement of Intention for Individuals Filing Under Chapter 7 (ECF

No. 5); Application for Individuals to Pay the Filing Fee in Installments (ECF No. 6); Initial

Statement About an Eviction Judgment Against You (ECF No. 7); and a document with the title

"Declaration of Pro Se Assistance" (ECF No. 8).

Ms. Crawford listed several assets and accompanying values on her Schedule A/B:

| | |
|---|---|
| Household goods and furnishings, described as "bed, bedding, chairs, cooking utensils, couch, eating utensils, picture frames, and towels" | $500.00 |
| Electronics, described as "smartphone and TV" | $500.00 |
| Clothes, described as "all clothes and footwear" | $500.00 |
| Jewelry, described as "bracelet, earrings, and non-wedding ring" | $100.00 |
| Cash | $100.00 |

6

Deposits of money, listed as:

|  |  |
|---|---|
| Checking account, Wells Fargo | $0.00 |
| Checking account, WoodForest Bank | $3.00 |
| Saving account, Wells Fargo | $0.00 |
| Checking account, Money Lion | $100.00 |

| | |
|---|---|
| Retirement or pension account, denoted as a 401(k) or similar plan and described as "Wells Fargo" | $0.00 |
| Security deposit on rental unit with Jagar McGill | $1,900.00 |
| Total of all property on Schedule A/B | $3,703.00 |

*In re Crawford*, ECF No. 1, at 10-20.

On her Schedule C, Ms. Crawford indicated that she was "claiming state and federal nonbankruptcy exemptions" pursuant to 11 U.S.C. § 522(b)(3). *Id*. at 21. Schedule C reflected Ms. Crawford's exemptions for each of the assets listed in Schedule A/B, as well as the assets' values, the amounts of the exemptions, and the laws allowing the exemptions:

| Exempted Asset | Current Value | Exemption Amount | Statute(s)[3] |
|---|---|---|---|
| Household goods | $500.00 | $500.00 | § 11-504(b)(4) |
| Electronics | $500.00 | $500.00 | § 11-504(b)(4) |
| Clothes | $500.00 | $500.00 | §§ 11-504(b)(5) & 11-504(f)(1) |
| Jewelry | $100.00 | $100.00 | §§ 11-504(b)(5) & 11-504(f)(1) |
| Cash | $100.00 | $100.00 | § 11-504(b)(5) |
| Wells Fargo | $0.00 | $0.00 | §§ 11-504(b)(5) & 11-504(f)(1) |
| WoodForest Bank | $3.00 | $3.00 | §§ 11-504(b)(5) & 11-504(f)(1) |
| Money Lion | $100.00 | $100.00 | §§ 11-504(b)(5) & 11-504(f)(1) |
| Wells Fargo | $0.00 | $0.00 | §§ 11-504(b)(5) & 11-504(f)(1) |

---

[3] Unless otherwise stated, all citations in the "Statute(s)" column are to the Code of Maryland, Courts and Judicial Proceedings article.

| Wells Fargo | $0.00 | $0.00 | 11 U.S.C. §§ 522(d)(10) & 522(d)(12) |
| Jagar McGill | $1,900.00 | $1,900.00 | §§ 11-504(b)(5) & 11-504(f)(1) |

*See id*. at 21-22.   Ms. Crawford answered "No" to Question 3 on her Schedule C regarding whether she was claiming a homestead exemption of more than $170,350.00.  *Id*. at 21.

Ms. Crawford answered the following questions regarding assistance she received related to filing bankruptcy in the negative:

- Page 7, Voluntary Petition:  Did you pay or agree to pay someone who is not an attorney to help you fill out your bankruptcy forms?  *See id.* at 7.

- Declaration About an Individual Debtor's Schedules:  Did you pay or agree to pay someone who is NOT an attorney to help you fill out bankruptcy forms?  *See id.* at 39.

- Question 16, Statement of Financial Affairs for Individuals Filing for Bankruptcy: Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone you consulted about seeking bankruptcy or preparing a bankruptcy petition?  *See id.* at 46.

- Question 17, Statement of Financial Affairs for Individuals Filing for Bankruptcy: Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone who promised to help you deal with your creditors or to make payments to your creditors?  *See id.* at 47.

- Part 12, Statement of Financial Affairs for Individuals Filing for Bankruptcy:  Did you pay or agree to pay someone who is not an attorney to help you fill out bankruptcy forms?  *See id.* at 51.

Morgan W. Fisher, Esquire, was appointed Chapter 7 Trustee in Ms. Crawford's case.  *In re Crawford*, ECF No. 9.  The Chapter 7 Trustee filed a Report of No Distribution in Ms. Crawford's case on December 11, 2019, in which he noted that there was no property of the bankruptcy estate available for distribution to creditors beyond that exempted by Ms. Crawford. *In re Crawford*, ECF No. 18.  The Court granted Ms. Crawford's discharge by order entered February 25, 2020.  *In re Crawford*, ECF No. 22.

C.  Declaration of Pro Se Assistance

The document titled "Declaration of Pro Se Assistance" (hereinafter, "Declaration" or collectively, the "Declarations") filed by both Ms. Peterson and Ms. Crawford is identical in all respects with the exception of the individual debtor's name, signature, and date.  *Compare In re Peterson*, ECF No. 1-1, at 1, *with In re Crawford*, ECF No. 8.  The Declarations contain an identically formatted caption bearing the name of the Court, the specific debtor's name, and chapter under which the petition was filed.  *In re Peterson*, ECF No. 1-1, at 1; *In re Crawford*, ECF No. 8.  Following the Declaration's title are two paragraphs:

> I, [debtor's name], received free legal assistance in preparing my bankruptcy forms from the legal aid nonprofit Upsolve.  Upsolve is a national legal aid nonprofit funded by the Legal Services Corporation and leading philanthropic foundations.  It provides free Chapter 7 assistance for low-income debtors who need a fresh start but cannot afford counsel.
>
> Upsolve is not my attorney.  I am filing this case without a lawyer or "pro se."  Because Upsolve has provided its services pro bono, Upsolve is **not a petition preparer under Section 110 of the Bankruptcy Code**, and Official Form 119 is not required and has not been provided.

*In re Peterson*, ECF No. 1-1, at 1; *In re Crawford*, ECF No. 8.  The debtors in each instance signed and dated their respective Declaration.  *In re Peterson*, ECF No. 1-1, at 1; *In re Crawford*, ECF No. 8.  Below the debtor's signature and date, the following text appears:

Upsolve Contact Information:
TINA TRAN, MANAGING ATTORNEY
TINA@UPSOLVE.ORG

*In re Peterson*, ECF No. 1-1, at 1; *In re Crawford*, ECF No. 8.

D.  Order Directing Upsolve to Show Cause

The Court entered the Order to Show Cause directed to Upsolve in each of the above-captioned cases on January 17, 2020.  *In re Peterson*, ECF No. 16; *In re Crawford*, ECF No. 19

(hereinafter, "Order to Show Cause").[4]  The Court recounted in pertinent part the contents of the Declarations, including that the Declarations were neither affidavits nor made under the penalty of perjury.  *See* Order to Show Cause, at 1-3.  The Court further noted that the Declarations closely resemble letters submitted by Upsolve with other bankruptcy petitions filed with the Court by *pro se* debtors earlier in 2019, including in the *In re Marc Shutta* case, Case No 19-21007-DER (ECF No. 1-1, at 1).  *Id*. at 2.  Tina Tran signed the earlier-filed letters as "executive director" of Upsolve.  *Id*.  The Court noted that Ms. Tran was not admitted to practice in either the Maryland state courts or the United States District Court for the District of Maryland.  *Id*. at 3 n.4.  In the instant matters, the Court surmised that Upsolve both drafted the Declarations and instructed each debtor to sign and file the Declaration with her petition.  *Id*. at 2.  Neither debtor here filed Procedural Form 2030, Disclosure of Compensation of Attorney for Debtor, leading the Court to infer that Upsolve did not provide such form to either debtor for filing.[5]  *Id*.

Upon the Court's review of the record of each case, it appeared that neither debtor is a lawyer nor does either debtor have experience interpreting the United States Bankruptcy Code, Federal Rules of Bankruptcy Procedure, or Local Bankruptcy Rules.  *Id*.  The lack of legal expertise caused the Court to question each debtor's independent basis for attesting to the majority of the contents of the Declaration, especially as it relates to 11 U.S.C. § 110 and Official Form 119, the Bankruptcy Petition Preparer's Notice, Declaration, and Signature.  *Id*.

---

[4] As indicated in footnote 1, *supra*, Judge Rice and Judge Harner entered identical versions of the Order to Show Cause in both the Peterson and Crawford cases.  Subsequently filed documents related to the Order to Show Cause have all been filed in both the Peterson and Crawford cases, with the exception of the August 18, 2021, and September 22, 2021 transcripts, which were filed only in the Crawford case.  In the remainder of this Memorandum Opinion, unless otherwise noted, citations to filings in the Peterson and Crawford cases will be made only to the Crawford case for ease of reference.

[5] The Court notes that attorneys who provide legal assistance on a pro bono basis in this District generally file Procedural Form 2030 pursuant to 11 U.S.C. § 329 and Federal Rule of Bankruptcy Procedure 2016(b).

The Court recounted that "Upsolve's website suggests that Upsolve does far more than what would be permitted for a bankruptcy petition preparer under 11 U.S.C. § 110.  Indeed, the website indicates that people using Upsolve can, 'Generate your bankruptcy forms and get them reviewed by a lawyer for <u>free</u>.'"  *Id.* at 3-4.

Grounded in the necessity for full disclosure to debtors and the Court and for the protection of debtors' interests, the Court expressed concern that neither of the debtors nor Upsolve filed a statement under oath regarding

> (i) the extent and nature of the services provided to the debtors by Upsolve, (ii) the identity of any attorney admitted to practice law in Maryland who may have provided assistance or advice to the debtors, or (iii) how Upsolve is actually directly or indirectly funded or compensated for the pro bono services provided to the debtors, including the extent to which debtors have been or will in the future be encouraged or solicited to make donations to support Upsolve's operations.

*Id*. at 3.  The Court further emphasized its concerns regarding whether Upsolve was providing legal advice to debtors filing for bankruptcy protection in the District of Maryland, and if so, whether attorneys connected with Upsolve (directly, indirectly, or on a referral basis) who provided such advice are licensed Maryland attorneys; whether those attorneys were otherwise in compliance with the applicable bankruptcy rules and rules of professional conduct; and the circumstances regarding Ms. Peterson's and Ms. Crawford's execution of the documents filed with the Court, including the Declarations.  *Id*. at 4.

Upon consideration of the above-noted observations, concerns, and conclusions, the Court directed an Upsolve officer with personal knowledge of Upsolve's work in the Peterson and Crawford cases to appear and show cause

> why the Court should find that (i) the statements in the Declarations are fully informed and appropriate under applicable law, and (ii) the assistance provided by Upsolve to debtors filing petitions in this district otherwise complies with applicable law, including applicable rules with respect to authorization to practice law in this district[.]

11

*Id.*  The Court further ordered Upsolve to file a memorandum and any supporting materials or affidavits no later than February 29, 2020, for the Court's review and determination as to whether further proceedings were necessary to address the issues specified by the Court.  *Id.*  A hearing was scheduled for March 30, 2020.  *Id.*

### E.  Upsolve's Response to Order to Show Cause

Upsolve timely filed its response to the Order to Show Cause ("Response") on February 28, 2020.  ECF No. 28 (hereinafter, "Response to Order to Show Cause").  In support of the contents of the Response, Upsolve contemporaneously filed affidavits by Tina Tran ("Ms. Tran") (hereinafter, "Tran Affidavit") and Rohan Pavuluri ("Mr. Pavuluri") (hereinafter, "Pavuluri Affidavit," and together with the Tran Affidavit, the "Response Affidavits").[6]  *See* ECF Nos. 29-30.

Upsolve represents that it is a nonprofit organization located in New York, New York. Response to Order to Show Cause, at 1.  Founded in 2016 by Mr. Pavuluri (Upsolve's current Chief Executive Officer) and Jonathan Petts, Upsolve seeks to "increas[e] access to justice" for "indigent pro se debtors" by providing them access to free, internet-based software to prepare Chapter 7 bankruptcy petitions.  *Id.* at 3; *see also id.* at 1; Pavuluri Affidavit ¶¶ 3, 5, 12.  Until mid-2017, Upsolve operated a legal aid clinic in Brooklyn, New York, that utilized its software to automate the information intake process and prepare bankruptcy forms that were then reviewed by an attorney.  Response to Order to Show Cause, at 3; Pavuluri Affidavit ¶ 8.  The legal aid clinic no longer operates.  Response to Order to Show Cause, at 3; Pavuluri Affidavit ¶ 8.  From January 2018 to June 2018, Upsolve provided its software to legal aid programs

---

[6] Counsel for Upsolve filed a third, procedural affidavit contemporaneously with the Response in support of the filing of the Response and accompanying affidavits via CD-ROM and duplicate paper copy due to technical issues with counsel's CM/ECF login information.  ECF No. 31, at 2.

nationwide.  Response to Order to Show Cause, at 3; Pavuluri Affidavit ¶ 9.  Upsolve made its software available on the internet in June 2018 to potential debtors in forty-seven states, and it remains free for users.  Response to Order to Show Cause, at 3-4; Pavuluri Affidavit ¶¶ 14, 39.

Upsolve users may, but are not required to, donate to Upsolve; donations do not affect the operation of the software.  Response to Order to Show Cause, at 8; Pavuluri Affidavit ¶¶ 14, 39. Upsolve is funded primarily by donations and grants from government and private foundations, such as "the Legal Services Corporation, the Robin Hood Foundation, the New York Bar Foundation, and the Lawyers Trust Fund of Illinois."  Response to Order to Show Cause, at 8; *see also* Pavuluri Affidavit ¶ 40.[7]

Only people meeting certain criteria can utilize Upsolve's software to complete their bankruptcy forms.  Response to Order to Show Cause, at 1, 4; Pavuluri Affidavit ¶¶ 15, 17. Individuals who either own a home or other real property; have more than $10,000.00 in assets; are involved in a personal injury lawsuit; earn more than the state's median income; intend to discharge debts such as student loans or domestic support obligations; or who had "incorrect tax filings"[8] during the prior two years cannot use the software.  Response to Order to Show Cause, at 4-5; *see also* Pavuluri Affidavit ¶¶ 15, 17.  Individuals who live outside the United States; have filed for bankruptcy during the prior eight years; have whole life insurance; own automobiles exceeding a certain value; or fail to acknowledge the consequences of filing bankruptcy and/or bankruptcy fraud are also not permitted to use Upsolve's software.  *See* Pavuluri Affidavit ¶ 38 & Exh. F.  Upsolve represents that these criteria allow only individuals with "straightforward, routine," "uncomplicated," "simple, no-asset Chapter 7 cases" to use the software.  Response to Order to Show Cause, at 1, 4; Pavuluri Affidavit ¶ 16.  Upsolve claims it

---

[7] Attached to Mr. Pavuluri's Affidavit as Exhibit G is his letter to Upsolve's donors dated December 16, 2019.  Pavuluri Affidavit ¶ 48 & Exh. G.

[8] Neither the Response nor the Pavuluri Affidavit provide an example of an "incorrect tax filing."

permits the generation of petitions "using only information provided by the users without the need for any discretionary determinations." Response to Order to Show Cause, at 4; *see also id.* at 5; Pavuluri Affidavit ¶ 16. The screening criteria "filters out users whose situations might require specialized advice or the exercise of legal judgment . . . ." Response to Order to Show Cause, at 5; *see also* Pavuluri Affidavit ¶ 16. Disqualified users are provided with legal aid resources and a preassembled list of bankruptcy attorneys they may consult at the user's expense; Upsolve provides no additional advice or recommendations. Response to Order to Show Cause, at 5; Pavuluri Affidavit ¶¶ 19, 36.

A qualified user must read and sign numerous disclosures (characterized by Mr. Pavuluri as "legal information") before the software proceeds. Response to Order to Show Cause, at 5; Pavuluri Affidavit ¶¶ 20, 35.[9] The disclosures concern the "consequences of filing for bankruptcy, the limitations of filing without the aid of an attorney, and . . . the limitations of Upsolve's software[.]" Response to Order to Show Cause, at 5; *see also* Pavuluri Affidavit ¶ 20.[10] Users are specifically advised that "Upsolve is not your lawyer, and there is no attorney-client relationship between you and Upsolve. Upsolve does not provide legal advice." Pavuluri Affidavit ¶ 36; *see also id.* ¶¶ 20, 35; Response to Order to Show Cause, at 5.

Upsolve's software completes Chapter 7 bankruptcy forms by "auto-populat[ing] the bankruptcy petition forms and declarations" with user-provided answers to Upsolve-posed questions. Pavuluri Affidavit ¶ 21; *see also* Response to Order to Show Cause, at 5-6. Additionally, a "user-directed credit report" "populates a user's schedule of creditors." Response to Order to Show Cause, at 5-6; Pavuluri Affidavit ¶ 21. Users also upload their tax returns and

---

[9] Attached to Mr. Pavuluri's Affidavit are Upsolve's Terms of Service (Exh. A); Terms of Use (Exh. B); and Privacy Policy (Exh. C). Pavuluri Affidavit ¶¶ 42-44 & Exhs. A-C.
[10] Exhibit E to Mr. Pavuluri's Affidavit contains five (5) disclosures that Upsolve purportedly presents for a prospective debtor's review and signature. Pavuluri Affidavit ¶ 46 & Exh. E.

pay stubs.  Pavuluri Affidavit ¶ 21.  Mr. Pavuluri recited that users may elect to use either federal or state exemptions, dependent upon the exemptions available in the user's state.  *Id*. ¶ 24.  Upsolve asserts that a user must review and confirm the accuracy of information during each step of the form generation process.  Response to Order to Show Cause, at 6; Pavuluri Affidavit ¶¶ 22-23.  Users can make changes to the information reflected.  Pavuluri Affidavit ¶¶ 21, 23.  During the question-and-answer process, Upsolve provides users with information that, according to Upsolve, "is similar to that provided by the Administrative Office of the U.S. Courts through the informational booklet 'Instructions:  Bankruptcy Forms for Individuals.'"  Response to Order to Show Cause, at 5-6; *see also* Pavuluri Affidavit ¶ 26.

Upsolve represents that its automated process provides "nondiscretionary, useful functions" to simplify the bankruptcy form generation process.  Response to Order to Show Cause, at 6.  This automation includes "checks to ensure accuracy and consistency."  *Id*.; Pavuluri Affidavit ¶ 23.  Additional quality-control measures include "spell check, ensuring that all forms are complete, and performing all of the mathematical addition the forms require."  Pavuluri Affidavit ¶ 25.  Upsolve's managing attorney, Ms. Tran (who is not licensed to practice law in Maryland), conducts "a limited human-performed quality-control review" of the forms for "completeness and consistency" in the information provided by the user.  Response to Order to Show Cause, at 3, 6-7; Tran Affidavit ¶¶ 1-3; Pavuluri Affidavit ¶ 27.[11]  The review apparently includes correcting typographical errors and formatting to improve readability.  Pavuluri Affidavit ¶ 28.  Ms. Tran communicates inconsistencies to the user by email to "ask[] the user to review and verify the information they provided."  Response to Order to Show Cause, at 6; *see also* Tran Affidavit ¶¶ 3, 5; Pavuluri Affidavit ¶ 27.  Neither Upsolve nor Ms. Tran provide legal

---

[11] The Tran Affidavit contains two sets of paragraphs each numbered 1 and 2.  The citations here refer to the substantive paragraphs that comprise the second set of numbered paragraphs 1 and 2.

advice.  Response to Order to Show Cause, at 1, 7; Tran Affidavit ¶¶ 2, 7; Pavuluri Affidavit ¶¶ 27-28.

After Ms. Tran completes the review process, the user receives an automated message; the user can then review, print, and file the forms as they wish.  Response to Order to Show Cause, at 7; Tran Affidavit ¶ 4; Pavuluri Affidavit ¶ 29.  "Upsolve does not assist its users with filing and the decision whether, where, and when to file rests solely with the user."  Pavuluri Affidavit ¶ 29.  Upsolve supplies users who print their bankruptcy forms with a document indicating that the user received Upsolve's free assistance in preparing their bankruptcy papers. Response to Order to Show Cause, at 7.  Upsolve indicates that a user must read and sign this document.  *Id*.  Upsolve represents the letter provides transparency regarding its assistance (but not legal advice) and confirmation that Upsolve does not represent the prospective debtor.  *Id*. at 2, 7; Tran Affidavit ¶ 8; Pavuluri Affidavit ¶ 31. This document was in the form of a declaration at one point[12] but is now a letter from Ms. Tran.[13]  Response to Order to Show Cause, at 7; Tran Affidavit ¶ 8; Pavuluri Affidavit ¶¶ 30-31.  Post-form generation, Upsolve provides general information via its website regarding the bankruptcy process in the form of articles, frequently asked questions, and videos.  Response to Order to Show Cause, at 7; Pavuluri Affidavit ¶ 32. The general bankruptcy content is available to anyone, not solely Upsolve users.  Response to Order to Show Cause, at 7.

Upsolve asserts that its interactions with Ms. Peterson and Ms. Crawford followed the process described above.  *Id*. at 7-8.  Both debtors met Upsolve's eligibility criteria, used its software to prepare their bankruptcy petitions, and received the standard disclosures.  *Id*. at 8.

---

[12] Exhibit D to Mr. Pavuluri's Affidavit is an unsigned copy of the Declaration filed by Ms. Crawford in Case No. 19-24551.  *See* Pavuluri Affidavit ¶ 45 & Exh. D.
[13] Exhibit A to Ms. Tran's Affidavit is a document that is apparently representative of the letter Upsolve now supplies to users.  Tran Affidavit ¶ 8 & Exh. A.

Regarding exemptions, Mr. Pavuluri conveyed that the software asks Maryland debtors, such as Ms. Peterson and Ms. Crawford, if Maryland state exemptions should be applied; "the Upsolve software . . . applies these exemptions at the user's direction."  Pavuluri Affidavit ¶ 24.  Upsolve professes that neither Ms. Peterson nor Ms. Crawford received legal advice or assistance from an attorney associated with Upsolve, and no one employed by Upsolve, including Ms. Tran, communicated with or made any adjustments to either debtor's bankruptcy papers.  Response to Order to Show Cause, at 8; Tran Affidavit ¶ 6; Pavuluri Affidavit ¶ 34.

Upsolve devotes a majority of the Response's legal argument to whether its assistance complies with applicable law.  Upsolve first asserts that the requirements of Section 110 regarding bankruptcy petition preparers apply only to a person who prepares documents for filing for compensation, not to those doing so on a pro bono basis.  Response to Order to Show Cause, at 9-10 (quoting 11 U.S.C. § 110(a)(1) ("'[B]ankruptcy petition preparer' means a person, other than an attorney for the debtor or an employee of such attorney under the direct supervision of such attorney, who prepares for compensation a document for filing[.]")).  Upsolve cites uncompensated students in law school clinics who prepare petitions as an example of assistance to debtors that falls outside the Section 110 boundaries.  *Id*. at 10 (quoting 2 Collier on Bankruptcy ¶ 110.02[2] (16th ed. 2021)).  Upsolve distinguishes the donation-sourced funding it receives from instances where petition preparers have disguised their compensation to avoid application of Section 110.  *Id*. at 10-11 (citing *Ferm v. U.S. Tr.* (*In re Crowe*), 243 B.R. 43, 50 (B.A.P. 9th Cir. 2000), *aff'd*, 246 F.3d 673 (9th Cir. 2000)).

Upsolve asserts that Section 329 and related Federal Rule of Bankruptcy Procedure 2016(b) are inapplicable for two reasons.  *Id*. at 11.  As with Section 110, Upsolve maintains that application of Section 329 requires compensation for services provided.  *Id*. at 11-12 (quoting 11

17

U.S.C. § 329(a) ("Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation."); Fed. R. Bankr. P. 2016(b) ("Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 14 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code[.]")).  Without compensation (either received or to be received), Upsolve argues that the Federal Rule of Bankruptcy Procedure 2016(b) statement need not be filed.  *Id*. at 12.  Upsolve bolsters this argument by referring to Section 329(b) and related Federal Rule of Bankruptcy Procedure 2017, which allow a court to reduce an attorney's compensation if it exceeds the value of services received.  *Id*. (quoting 11 U.S.C. § 329(b); Fed. R. Bankr. P. 2017).  Upsolve recognizes that "some attorneys representing debtors pro bono may voluntarily file a statement of no compensation" but discounts that such disclosures are required when pro bono assistance is provided.  *Id*.  Nonetheless, Upsolve acknowledges that its Declaration serves a similar purpose of disclosing its assistance to debtors.  *Id*.

Moreover, however, Upsolve asserts that it is neither an attorney (as required by Section 329(a)) nor did it represent either Ms. Peterson or Ms. Crawford.  *Id*. at 11 (quoting 11 U.S.C. § 329(a)).  Upsolve contends that it is not engaged in the practice of law because, although Ms. Tran is a lawyer, she does not provide any legal representation to Upsolve's users.  *Id*.  Upsolve does not challenge the proposition that, under 11 U.S.C. § 110, state law dictates whether an activity constitutes the practice of law.  *Id*. at 13 (citing *McDow v. Mancini* (*In re Johnson*), Adv.

No. 12-00408-DER, 2012 WL 5193964, at *6 (Bankr. D. Md. Oct. 19, 2012)).  Specific to the instant matters, Upsolve concurs that "Maryland law prohibits the unauthorized practice of law by non-attorneys."  *Id*. (citing Order to Show Cause, at 4 n.6).

Upsolve quotes this Court's decision of *Lucas v. Nickens* (*In re Lucas*), 312 B.R. 559 (Bankr. D. Md. 2004) (hereinafter, "*Lucas*"), for the standard to determine if someone is practicing law in Maryland:  "Under Maryland law, the focus of the inquiry on whether an individual has engaged in the practice of law should 'be on whether the activity in question required legal knowledge and skill in order to apply legal principles and precedent.'"  *Lucas*, 312 B.R. at 575 (quoting *Att'y Grievance Comm'n v. Hallmon*, 343 Md. 390, 397 (1996)).  Upsolve urges that such inquiry requires examination of the particular facts and circumstances and acknowledges that the objective of unauthorized practice of law regulations is to "'protect the public . . . from incompetent, unethical or irresponsible representation.'"  Response to Order to Show Cause, at 13-14 (quoting *Lucas*, 312 B.R. at 572 n.6).  Further, Upsolve observes this Court's prior conclusion that drafting written documents constitutes the practice of law in Maryland if "'special legal knowledge and skill are required'" beyond a basic level or that possessed by an average layperson.  *Id*. at 14 (quoting *In re Johnson*, 2012 WL 5193964, at *6).

Against this legal backdrop, Upsolve insists that the services it provides to prospective debtors does not rise to the level of the practice of law.  Upsolve reiterates that its ultimate end-users are those individuals with straightforward Chapter 7 cases, whose case filings require only basic legal knowledge.  *Id*. at 14-15.  In addition, the Upsolve "software simply takes the information reviewed and approved by its users and places it in the appropriate place on the standard Chapter 7 bankruptcy forms."  *Id*. at 14.  Thus, Upsolve argues, no special knowledge or skills are employed, and no discretionary decisions are made.  *Id*.  Ms. Tran's review of

documents is "limited to ensuring accuracy and internal consistency," which also does not require legal judgment. *Id*.

Upsolve briefly addresses the Court's inquiry as to whether the statements in the Declarations by Ms. Peterson and Ms. Crawford were fully informed and appropriate under applicable law. Upsolve emphasizes the multiple admonitions its users receive that Upsolve is not an attorney and is not providing legal advice, with the Declaration including the debtors' affirmation of these points. *Id*. at 15. Upsolve offers that the Declaration's intent is transparency that "Upsolve did not provide legal advice." *Id*. Upsolve concedes that the Declarations' reference to the debtors' receipt of "free legal assistance in preparing my bankruptcy forms from the legal aid nonprofit Upsolve" may fall short of fully characterizing Upsolve's services. *Id*. Ultimately, however, Upsolve relies on the Response and Response Affidavits to demonstrate that "the nature and extent of the services provided did not involve the practice of law." *Id*. Upsolve did not address how Ms. Peterson and/or Ms. Crawford were fully informed to enable them to affirm the statements within the Declarations regarding the inapplicability of 11 U.S.C. § 110.

Upsolve argues that the facts and circumstances of these cases confirm that none of Upsolve's services constitute the practice of law. *Id*. Rather, Upsolve asserts its services are not those that the unauthorized practice of law regulations are designed to govern. *Id*. Upsolve frames its role as supporting the protection of the public "'from incompetent, unethical or irresponsible representation.'" *Id*. at 17 (quoting *Lucas*, 312 B.R. at 572 n.6).

### F.  Pre-Evidentiary Hearing Procedural History

#### 1.  Continuances Due to COVID-19 Pandemic

Following receipt of Upsolve's Response and prior to the Court's conduction of the March 30, 2020 hearing on the Order to Show Cause, the World Health Organization declared the COVID-19 Pandemic.  Court operations were affected by the need for social distancing and reliance upon videoconferencing platforms for the conduction of Court proceedings.  By Order entered March 13, 2020, the Court requested that the parties file a Line to address the timing of the hearing and capability of appearing via videoconference if the Court determined to proceed in such fashion.  ECF No. 46.  Upsolve, by counsel, filed its Line on March 17, 2020, and requested a continuance of the March 30, 2020 hearing for at least thirty days due to (1) an affiant's quarantine because of possible COVID-19 exposure; and (2) the exposed affiant's limited videoconferencing capabilities.  ECF No. 49, at 1-2.  Upsolve further indicated its preference for an in-person hearing to best assist the Court in resolving this matter.  *Id*. at 2.  By order entered March 19, 2020, the Court continued the matter.  ECF No. 50, at 2.  The Court directed Upsolve, as well as any other parties planning to appear at the future scheduled hearing, to file a Status Report no later than May 18, 2020, with any pertinent information regarding a new date for the continued hearing and the manner in which such hearing should be conducted. *Id*.

Upsolve filed a status report on May 18, 2020, and sought an additional sixty-day continuance to allow pandemic conditions to abate to enable the conduction of an in-person hearing.  ECF No. 52, at 2.  Upsolve also noted its desire for in-person preparation for such hearing.  *Id*.  Upsolve was willing, however, to engage in a hearing by videoconference if the Court desired a more expeditious resolution of the matters.  *Id*.  The Court granted Upsolve's

request for a continuance in its Order dated June 10, 2020, and directed updated Status Reports be filed no later than August 7, 2020.  ECF No. 53, at 2.

In its August 7, 2020 Status Report, Upsolve requested another sixty-day continuance. ECF No. 55, at 1.  Upsolve maintained that in-person hearing preparation and conduct of an in-person proceeding would effectuate the most effective presentation of evidence.  *Id*. at 2.  In support, Upsolve submitted that the instant matter did not require, from its perspective, urgent consideration but offered to participate in a videoconference hearing if the Court preferred to resolve the matter sooner.  *Id*.  The Court continued the matter again by order entered August 12, 2020, and requested a subsequent Status Report no later than October 30, 2020.  ECF No. 56, at 2.

Upsolve observed in its October 29, 2020 Status Report that the Court would likely be conducting virtual hearings for an indefinite period because pandemic conditions prevented holding an in-person hearing safely.  ECF No. 58, at 2.  Upsolve indicated its willingness to participate in the hearing by videoconference to timely resolve these matters and requested a hearing date in either December 2020 or January 2021, noting its expectation that two witnesses would testify.  *Id*.  Within the Status Report, Upsolve stated:

> As a final matter and out of an abundance of caution, if the Court does conclude that Upsolve's actions are in violation of applicable law, Upsolve hereby preserves the right to challenge the validity of such laws on constitutional grounds. Specifically, Upsolve hereby preserves the arguments that enforcing any such restrictions against Upsolve violates Upsolve's associational rights under the First Amendment of the U.S. Constitution, *see In re Primus*, 436 U.S. 412 (1978); *NAACP v. Button*, 371 U.S. 415 (1963); that such restrictions unlawfully burden Upsolve's freedom of speech under the First Amendment of the U.S. Constitution and Article 40 of the Maryland Declaration of Rights, *see Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361 (2018); *Reed v. Town of Gilbert*, 576 U.S. 155 (2015); and that such restrictions lack a rational basis and are impermissibly vague, violating Upsolve's due process rights under the Fifth and Fourteenth Amendments of the U.S. Constitution, *see United States v. Williams*,

22

> 553 U.S. 285 (2008); *N. Dakota State Bd. of Pharmacy v. Snyder's Drug Stores, Inc.*, 414 U.S. 156, 166 (1973).

*Id*. at 2-3.

On November 13, 2020, the Court issued an Order Setting Status Conference.  ECF No. 59.  Reiterating the importance of the issues presented in the Order to Show Cause, the Court determined that a status conference should be conducted by videoconference on January 21, 2021, to "(i) identify the scope of the issues, (ii) discuss whether all necessary parties are currently included in the matter, (iii) establish a briefing schedule, and (iv) determine the best way to proceed to an evidentiary hearing."  *Id.* at 2.

### 2.  January 21, 2021 Status Conference

Counsel for Upsolve and the Assistant United States Trustee for the District of Maryland appeared at the January 21, 2021 Status Conference.[14]  ECF No. 82, Jan. 21, 2021 Status Conference Transcript (hereinafter, "Jan. 21, 2021 Transcript"), at 3.  Counsel for Upsolve confirmed Upsolve's position that a virtual hearing should be scheduled in light of ongoing pandemic conditions.  *See id*. at 4-5.  Counsel for Upsolve summarized its view of the issues to be addressed at the hearing on the Order to Show Cause as:  (1) whether Upsolve is a bankruptcy petition preparer pursuant to 11 U.S.C. § 110; (2) whether Upsolve's activities constitute the practice of law and whether Upsolve has adequately informed its users that Upsolve is not representing them in their bankruptcy cases; and (3) if the Court concludes that Upsolve's activities are subject to the regulations governing the practice of law under the Bankruptcy Code and Maryland state law, whether Upsolve has any defenses, particularly as may be afforded under the First and Fifth Amendments of the United States Constitution.  *Id*. at 5-6.  Counsel

---

[14] The Honorable Michelle M. Harner and the Honorable David E. Rice of the United States Bankruptcy Court for the District of Maryland presided jointly over the Status Conference.  Jan. 21, 2021 Transcript, at 3.

presented Upsolve's desire to proceed on the issues in a bifurcated fashion through evidentiary presentation and briefing on the Section 110 and practice of law matters. *Id*. at 6. Upsolve reasoned that the constitutional issues would need to be addressed only if the Court's concerns were not resolved following the evidentiary phase; this approach would also permit Upsolve to satisfy its obligation under Federal Rule of Bankruptcy Procedure 9005.1 to file and serve notice of the constitutional questions on the proper governmental agencies. *Id*.

The Assistant United States Trustee for the District of Maryland, Gerard Vetter, Esquire, represented that the Executive Office of the United States Trustee had asked Upsolve questions similar to those matters raised by the Court. *Id*. at 15. The United States Trustee did not have concerns regarding compliance with applicable law, and the agency had not initiated any action against Upsolve; assuming the documentary evidence filed by Upsolve was consistent with its to-date representations, Mr. Vetter anticipated the United States Trustee's position would remain the same. *Id*. at 15-16. Mr. Vetter indicated that the United States Trustee would have significant concerns if the constitutional issues alluded to by Upsolve turned on the constitutionality of the statutes themselves as opposed to an unconstitutional application of the statutes *vis a vis* Upsolve. *Id*. at 16.

The Court concurred that the issues should be addressed in a bifurcated manner. *Id*. at 6. The Court noted that while the information filed to date addressed the noted issues in part, additional information and explanation regarding the software's functionality was necessary. *Id*. at 10. The Court expounded upon the issues noted by Upsolve's counsel, adding that the practice of law question was comprised of both human and electronic elements, particularly as it concerned the software program's development. *Id*. at 11-12. The Court also voiced interest in a demonstration of the user's experience with the software program and Upsolve's solicitation of

donations from users. *Id*. at 11-12, 17. Further, the Court requested Upsolve address the issue of whether it was serving as either a bankruptcy petition preparer or an attorney such that the applicable disclosure requirements must be satisfied. *Id*. at 17. The Court scheduled an evidentiary hearing on the Order to Show Cause for March 30, 2021, with the constitutional issues reserved to a later date. *Id*. at 23, 26.

### 3. Subsequent Procedural History

On March 25, 2021, counsel for Upsolve filed its exhibits, exhibit list, and witness list for the March 30, 2021 evidentiary hearing. ECF No. 75. Counsel for Upsolve also filed on March 25, 2021, a letter accompanied by a copy of a report submitted on March 18, 2021, by the United States Trustee to the United States Bankruptcy Court for the Eastern District of Kentucky in the case of Amanda Diane Keller, Case Number 21-50004. ECF No. 74. According to the report, the United States Bankruptcy Court for the Eastern District of Kentucky ordered the United States Trustee to investigate whether Upsolve's activities complied with applicable law. *See In re Amanda Diane Keller*, Case No. 21-50004 (hereinafter, "*In re Keller*"), ECF No. 34, United States Trustee's Report in Response to Order of the Court, at 1 (filed in *In re Crawford*, ECF No. 74). The United States Trustee recited that program representatives and Upsolve met multiple times within several years regarding Upsolve's activities. *Id*. at 2. Based upon the information received from Upsolve and reviewed by the United States Trustee Program, including Upsolve's website, news articles, information from cases in various jurisdictions regarding Upsolve, and Ms. Keller's testimony at her Section 341 Meeting of Creditors, the United States Trustee concluded that Upsolve was neither a bankruptcy petition preparer nor a debt relief agency. *See*

*id*. at 3-4.  He further determined that Upsolve was not representing debtors or engaging in the practice of law.[15]  *Id*. at 5.

On March 29, 2021, Judge Rice and Judge Harner each issued orders recusing themselves from the above-captioned matters and cancelling the March 30, 2021 evidentiary hearing.  ECF No. 80, at 2-3.  On April 8, 2021, the undersigned United States Bankruptcy Judge was assigned and designated as the presiding Judge for these matters pursuant to 28 U.S.C. § 155(a).  ECF No. 84.[16]

Thereafter, on April 16, 2021, counsel for Upsolve filed a Status Update and Request for Dismissal, or, in the Alternative, Request for Status Conference.  ECF No. 85 (hereinafter, "Apr. 16, 2021 Status Update").  Upsolve detailed its organizational structure, mission, and services to potential debtors.  *See* Apr. 16, 2021 Status Update, at 1-3, 6.  Upsolve also summarized the procedural history following the Court's entry of the Order to Show Cause.  *Id*. at 4-5.  Upsolve included in its April 16, 2021 Status Update a request that the Court dismiss the Order to Show Cause based upon the pleadings and exhibits filed to date.  *Id*. at 5-6; *see also id*. at 8.  Upsolve argued that the filings demonstrate Upsolve is not subject to Section 110 of the Bankruptcy Code because it does not receive compensation from users for their use of Upsolve's software.  *See id*. at 5.  Further, Upsolve asserted that its software program is "user-driven," which, when combined with its numerous disclosures to users, obviates the premise that Upsolve engages in the practice of law.  *Id*. at 5-6 (citing *Lucas*, 312 B.B. at 575).  Upsolve requested that a status conference be scheduled to discuss the scope and re-scheduling of the evidentiary hearing if the Court denied its request to dismiss the Order to Show Cause.  *Id*. at 6-7; *see also id*. at 8.

---

[15] As of the date of the issuance of this Memorandum Opinion, the United States Bankruptcy Court for the Eastern District of Kentucky has made no factual findings regarding Upsolve's activities in *In re Keller* or entered any further order regarding the United States Trustee's report filed in that case.

[16] *See also supra* footnote 1.

Upsolve again reserved its right to raise constitutional defenses to the imposition of any sanction for the unauthorized practice of law as a violation of the First and Fifth Amendments to the United States Constitution. *Id*. at 7.

The Acting United States Trustee for Region Four, by Mr. Vetter, filed a Response to Upsolve's April 16, 2021 Status Update. ECF No. 88 (hereinafter, "Response to Apr. 16, 2021 Status Update"). Mr. Vetter represented that the United States Trustee was not taking a position regarding the relief requested by Upsolve in the April 16, 2021 Status Update or the issues raised by the Court in its Order to Show Cause. *Id*. at 2, 4. Mr. Vetter confirmed that the United States Trustee continued to endorse both the conclusions reached in the report filed in *In re Keller* and his comments from the January 21, 2021 Status Conference. *Id*. at 3. Mr. Vetter explained that those conclusions were based not on the United States Trustee's fact finding, but rather, upon information provided by Upsolve prior to and following the Court's entry of the Order to Show Cause. *Id*. at 3-4. Mr. Vetter offered that the conclusions reached by the United States Trustee Program in the report filed in *In re Keller* "are based on the assumption that information voluntarily provided to the [Program] by Upsolve is true and correct." *Id*. at 1-2. Mr. Vetter further indicated that the United States Trustee had no reason to doubt the truthfulness of Upsolve's representations. *Id*. at 2.

The Court held a Status Conference by videoconference on May 19, 2021, at which counsel for Upsolve and Mr. Vetter appeared. Mr. Vetter reaffirmed that, unless the evidence revealed information contrary to that previously reviewed by the United States Trustee's Office, his role at an evidentiary hearing would be mostly in the nature of observation. The Court noted its expectation that the United States Trustee would participate in the proceedings as a statutory party in interest. The Court declined to dismiss the Order to Show Cause. The Court expressed

that Upsolve's evidentiary presentation should include any materials available on Upsolve's website, as well as the continued endorsement of a bifurcated approach that reserved the possible constitutional defenses.   The Court scheduled the evidentiary hearing on the Order to Show Cause for August 18, 2021.   ECF No. 89, Scheduling Order & Protocol for Conduction of Evidentiary Hearing by Videoconference, entered June 1, 2021.

Upsolve timely filed exhibits, an exhibit list, and a witness list on August 4, 2021, along with Mr. Pavuluri's affidavit in support of the exhibits.   ECF Nos. 91-92.   Upsolve also filed a Motion to Waive Service on the Debtors, asserting that because Ms. Peterson and Ms. Crawford had received their respective discharges, were not parties to the Order to Show Cause, and would not be affected by its resolution, Ms. Peterson and Ms. Crawford could become confused and/or alarmed if they received hard copies of Upsolve's extensive exhibits.   ECF No. 93, at 2.   In the alternative, Upsolve requested permission to serve the exhibits upon Ms. Peterson and Ms. Crawford in electronic format.   *Id*.   Mr. Vetter on behalf of the United States Trustee did not object to the relief sought by Upsolve regarding the transmission of the exhibits to Ms. Peterson and Ms. Crawford.   ECF No. 95.   By order entered August 16, 2021, the Court granted Upsolve's request to waive service of the exhibits upon Ms. Peterson and Ms. Crawford.   ECF No. 96.

## II.  EVIDENTIARY HEARING

At the evidentiary hearing held via videoconference on August 18, 2021, Robert Niles-Weed, counsel for Upsolve; Mr. Pavuluri; Ms. Tran; and Mr. Vetter appeared.   ECF No. 97; ECF No. 101, August 18, 2021 Evidentiary Hearing Transcript (hereinafter, "Aug. 18, 2021 Transcript"), at 4-5.   Counsel for Upsolve provided brief opening remarks, stating that Upsolve would demonstrate the user's perspective of the Upsolve website and form generation process to

illustrate that Upsolve is neither engaged in the practice of law nor making any legal determinations. *Id*. at 6. Upsolve indicated that it would present testimony from Mr. Pavuluri regarding the Upsolve website and user experience and from Ms. Tran concerning the review of users' forms. *Id*. at 6-7.

Mr. Vetter also provided a brief opening statement, noting that the United States Trustee had followed Upsolve's participation in bankruptcy cases for a period of time. *Id*. at 8. Mr. Vetter indicated that United States Trustee's Office representatives met with Upsolve managers in 2017 at Upsolve's request. *Id*. The United States Trustee's Office had several follow up conversations with Upsolve, including in January 2021. *Id*. In the week prior to the evidentiary hearing in these matters, Mr. Vetter and representatives from the Executive Office for the United States Trustee Program discussed several topics with Upsolve, including "transparency about Upsolve's role in bankruptcy cases, the extent to which Upsolve . . . [is] involved in those cases, and the functioning of Upsolve's system and its criteria for screening Debtors eligible to use its software." *Id*.

Mr. Vetter represented that Upsolve evolved its software at various points in response to the United States Trustee's concerns but that the United States Trustee's Office has not endorsed Upsolve's platform, despite Upsolve's request, as such was outside the office's purview. *Id*. Mr. Vetter reminded the Court that earlier in 2021, the United States Bankruptcy Court for the Eastern District of Kentucky directed the United States Trustee's Office to file a report in the *In re Keller* case as to whether Upsolve's bankruptcy assistance complies with applicable law. *Id*. at 9. According to Mr. Vetter and as set forth in the *Keller* report, based solely on Upsolve's representations, the United States Trustee concluded that Upsolve was not subject to 11 U.S.C. §

110 and Upsolve did not appear to be entering into any attorney/client relationships or engaging in the unauthorized practice of law. *Id*.[17]

A. Upsolve Background and User Account Creation

Mr. Pavuluri began his testimony by confirming that he is the CEO of Upsolve, a nonprofit organization whose "mission is to help low income families across America have access to . . . legal rights for free." *Id*. at 11. Mr. Pavuluri recounted that Upsolve sought legal advice regarding compliance with applicable rules and law as early as 2016. *Id*. at 12. In developing Upsolve's software, Mr. Pavuluri consulted with industry experts, including bankruptcy judges, trustees, the United States Trustee's Office, legal aid organizations, lawyers, and bankruptcy practitioners "to avoid providing legal advice." *Id*. Upsolve's advisory board consists of academic professors, former bankruptcy judges, bankruptcy practitioners, and current and former trustees. *Id*.

Mr. Pavuluri described Upsolve's software generally as "mimic[king] the bankruptcy forms" to assist unrepresented users in filing under Chapter 7 of the Bankruptcy Code. *Id*. at 12-13; *see also id*. at 15. Mr. Pavuluri emphasized that Upsolve's software makes the forms easier for *pro se* filers to complete by presenting the questions individually. *Id*. at 15. Upsolve neither recommends a bankruptcy chapter under which to file; makes any discretionary decisions for the user; nor files users' forms for them. *Id*. at 14-15. Mr. Pavuluri likened Upsolve's nationally available software to the Electronic Self-Representation program offered by some Bankruptcy Courts. *Id*. at 15-16. To date, Upsolve had assisted over 7,000 individuals with filing for bankruptcy, which Mr. Pavuluri believes, based upon feedback received from courts and trustees, improved the quality of *pro se* bankruptcy filings. *See id*. at 12-14; *see also id*. at 173-74. Counsel for Upsolve offered the Upsolve website, as existing on August 18, 2021, into evidence,

---

[17] The report filed by the United States Trustee in *In re Keller* is discussed *supra* in Section I.F.3.

which the Court accepted without objection by Mr. Vetter.  *Id*. at 22-23.  The Court also accepted into evidence without objection the previously filed exhibits, consisting of screenshots of the Upsolve website as of August 1, 2021, including articles available to its users and the general public and internal documentation concerning Upsolve's policies and procedures.  *Id*.; *see generally* ECF No. 92, filed Aug. 4, 2021.[18]

Mr. Pavuluri testified that the website initially explains to users that only individuals meeting certain criteria may use the software; ineligible individuals may opt for a free evaluation from an attorney.  Aug. 18, 2021 Transcript, at 25.  Users may also decide that they do not wish to use the software and instead select the "I don't want a free tool.  Find me a private attorney" link, which allows the user "to provide their phone number, name and email," after which the user will be contacted by an attorney.  *Id*.; *see* ECF No. 92-1, at 19.

Users who proceed with the software are presented with screening criteria, which ensures that Upsolve does not provide legal advice to users: "When individuals tell us certain facts about themselves, which present the risk of requiring legal advice in the future, we don't allow them to continue using Upsolve."  Aug. 18, 2021 Transcript, at 16, 26; *see also id*. at 28.  This approach prevents use of the software in complex cases.  *Id*. at 30.  If the user does not meet any one of the criteria, they are no longer able to continue using the software.  *Id*. at 26-27.  In such instance, users are presented with an apology and informed that "[t]he Upsolve app has limitations that make it unqualified to assist" the user.  *Id*. at 62-63; *see, e.g.*, ECF No. 92-1, at 100 (example of screen informing user that the Upsolve software cannot assist them).  Users are also simultaneously advised, "Many people are still a good fit for Chapter 7 bankruptcy even if our

---

[18] Counsel for Upsolve filed exhibits for the hearing in three separate files due to ECF file size limitations.  *See* ECF No. 92.  Exhibits 1 through 11 are contained in ECF No. 92-1; Exhibits 12 through 30 are set forth in ECF No. 92-2; and Exhibits 31 through 110 comprise ECF No. 92-3.  All page number citations for the Exhibits reference the ECF-assigned page number at the top of the document.

app is not qualified to assist them." Aug. 18, 2021 Transcript, at 62; *see, e.g.*, ECF No. 92-1, at

100. The software states, "The law, the fact that Upsolve is an app and our small team size limits

what we can do." Aug. 18, 2021 Transcript, at 63; *see, e.g.*, ECF No. 92-1, at 100. Users not

meeting Upsolve's criteria are presented with links for either pursuing assistance from legal aid

or obtaining a free evaluation by an attorney. Aug. 18, 2021 Transcript, at 63-64; *see, e.g.*, ECF

No. 92-1, at 100-01. Users may also continue to access Upsolve's "Learning Center," which

contains general, bankruptcy-related articles. Aug. 18, 2021 Transcript, at 63, 85; *see* ECF No.

92-2, at 159. After a certain time, unqualified users' accounts are deleted, if not deleted by the

users themselves. Aug. 18, 2021 Transcript, at 63.

To utilize Upsolve, a potential debtor must have at least $10,000.00 in debt. *Id*. at 18, 26.

The $10,000.00 debt threshold allows Upsolve, "[a]s a nonprofit with limited resources, . . . to

focus on serving individuals where we think we can have the most impact with our limited

bandwidth resources." *Id*. at 26. Upsolve then asks for the user's zip code to ensure that

Upsolve operates in their state. *Id*. at 27. The user provides their household size and monthly

income amount, as potential users must be under the median income in their state. *Id*. at 17-18,

27. To continue, users must have also either filed their most recent tax return or affirm that they

were not required to do so. *Id*. at 28-29. Upsolve then asks whether the user owns any real

estate or mobile homes and/or has any mortgages; only users answering in the negative may

continue. *Id*. at 30. Mr. Pavuluri explained that if a user answers the next question, "Do you

own a car or any other item that you can sell for more than $10,000?" in the affirmative, the user

cannot continue with Upsolve. *Id*. The Upsolve program then inquires whether the user is

currently involved in, or could potentially be involved in, a personal injury claim or case; if so,

they are not able to continue using the software. *Id*.; *see also id*. at 18.

A user who has filed for bankruptcy in the past eight years also cannot use Upsolve's software to complete their bankruptcy forms. *Id*. at 31. Finally, Upsolve advises, "Upsolve cannot help erase student debt, child support debt, spousal support or debt from a DUI. Do you still want to use our free help?" *Id*.; *see also id*. at 18. At this juncture, users may decline to use the software. *Id*. A user satisfying the gating criteria provides their name and creates an encrypted, secure account. *Id*. at 32; *see also id*. at 17. Mr. Pavuluri stated that two percent of website visitors reach this point and create an account, and only 0.2% of people who visit the Upsolve website generate bankruptcy forms. *Id*. at 18, 32; *see also id*. at 33.

### B. The "About You" Section

Mr. Pavuluri discussed the ten-part questionnaire that users complete after creating an account, which "mimic[s] the bankruptcy forms" and "collect[s] information that populates the bankruptcy forms." *Id*. at 17, 33. The first section, entitled "About You," begins by describing the limitations of Upsolve's service. *See id*. at 34-33; ECF No. 92-1, at 46. Upsolve includes this information to ensure "that users understand that they are filing on their own, that we are not a law firm, that we are not their lawyer." Aug. 18, 2021 Transcript, at 35. Users must read and acknowledge (by clicking check boxes) six separate statements centered on informing the users that Upsolve is neither a lawyer nor providing legal advice and that the individual user directs the software's actions:

> I understand that Upsolve is not a lawyer in any way and will not provide me with a lawyer. I understand that Upsolve is a free tool I can use to help me file bankruptcy on my own and without a lawyer. I understand that the Upsolve software acts entirely at my own direction and that Upsolve does not have the authority or ability to provide legal services.

> I understand Upsolve will not provide legal advice to me in any way or represent me in court. I understand that Upsolve does not and will not make any legal judgments for me.

I understand that based on my answers, Upsolve may still disqualify me from using its service if it determines that its software has limitations preventing it from adequately serving me.

I understand that if I don't complete this questionnaire or file within 8 weeks, I'll have to start over from the beginning.

I understand that I'm filing for bankruptcy on my own and that I'm the only one responsible for the outcomes of my case.  I understand that I'm the one who is fully responsible for what goes on my forms, and that I'm the only one submitting my forms to the bankruptcy court.

I confirm that I'm filling out my own info and I'm not using Upsolve to help someone else file, even if I have Power of Attorney for them.  I'm capable of attending any meeting or hearing at the court on my own as required by bankruptcy law.

ECF No. 92-1, at 46-47; *see also* Aug. 18, 2021 Transcript, at 35-37 (recitation of the acknowledgments into the record).

After a user acknowledges these limitations, the program asks for the user's name, cell phone number, e-mail address, social security number, current and past addresses, and marital status.  *See* ECF No. 92-1, at 48-50, 61-83; *see also* Aug. 18, 2021 Transcript, at 37, 44-50.  If a user indicates they are currently living outside the United States, the software prohibits the user from continuing the process.  *See* ECF No. 92-1, at 63-64; *see also* Aug. 18, 2021 Transcript, at 45-46.  Upsolve also asks why the user is filing for bankruptcy so as to better understand why individuals are accessing Upsolve's website.  ECF No. 92-1, at 53-54; Aug. 18, 2021 Transcript, at 39.  The Upsolve program then displays "Upsolve's User Agreement," which reiterates that Upsolve is not a lawyer and states, in pertinent part:

[Y]ou agree that you are aware of and fully understand the:

1.    Different types of bankruptcy and the consequences of bankruptcy,

2.    The court costs if you do not qualify for a waiver, and

3.      The role of bankruptcy exemptions, to protect your property.  Exemptions are an important part of the bankruptcy process that allow a debtor to keep their property, when applicable.  By signing, you acknowledge that you understand the role of exemptions in your bankruptcy and your responsibility in selecting them. Upsolve does not and cannot advise you whether or how to use these exemptions.

Finally, by signing, you agree to let our software pull your credit report for you. We need your credit report because you need to list all of your debts in your bankruptcy petition.  Please note that a soft inquiry will show up on your credit report, letting you know we pulled it.  We pull your credit report while you're answering questions in this questionnaire, so that it is ready for you in the debts section.

ECF No. 92-1, at 58-59; *see also* Aug. 18, 2021 Transcript, at 40-42 (recitation of the user agreement into the record).  Mr. Pavuluri asserted that any user who signs and accepts the agreement without understanding its contents would misrepresent themselves to Upsolve.  Aug. 18, 2021 Transcript, at 42.  Mr. Pavuluri pointed out that the three numbered representations in the user agreement contain hyperlinks to general information articles that users may read and review.  *Id*.; ECF No. 92-1, at 58-59.  Mr. Pavuluri described the contents of the articles as a compilation of information from the official bankruptcy forms and "a sophisticated Google search of generally available information."  Aug. 18, 2021 Transcript, at 43; *see also id*. at 72. The software also presents a screen entitled "Bankruptcy Consequences," the text of which is from the official bankruptcy forms.  ECF No. 92-1, at 84-85; Aug. 18, 2021 Transcript, at 49-50, 52; *see also* Aug. 18, 2021 Transcript, at 50-52 (recitation of the screen's contents into the record).  Users must answer two questions, also taken from the bankruptcy forms, to both indicate their understanding of the text describing the consequences of filing for bankruptcy and continue using the software.  ECF No. 92-1, at 85; Aug. 18, 2021 Transcript, at 52.

The software then asks a series of additional gating questions, including whether the user is currently facing an eviction, has recently purchased any luxury items costing more than $500.00, or obtained a recent cash advance, for which an answer in the affirmative would

disqualify a user from proceeding further.  ECF No. 92-1, at 86-87, 92-93, 97-98; Aug. 18, 2021

Transcript, at 52-53, 55.  Several gating questions, including those concerning past filings,

monthly income, and total debt, are posed multiple times to ensure that users provide consistent

answers.  ECF No. 92-1, at 89-91, 94-95; Aug. 18, 2021 Transcript, at 54-55.  Just prior to the

conclusion of the "About You" section, users are presented with a screen setting forth a list of

four numbered items:

> 1.  You must list every single creditor you owe. You cannot leave out any credit
> cards or any other creditor.
>
> 2.  You cannot leave out your car or any other expensive asset.  Most people who
> use Upsolve and are honest are able to keep all of their assets during their
> bankruptcy.
>
> 3. If you have a spouse, you need to list your spouse's income, even if your
> spouse is not filing.  The Bankruptcy Court requires this info.
>
> 4. You must tell the truth about owning a home, car, or expensive assets.  The
> Bankruptcy Court has access to several databases to double-check and retrieve
> information.

ECF No. 92-1, at 106; Aug. 18, 2021 Transcript, at 58 (recitation of the quoted text into the

record).

At the end of the "About You" section, as well as all sections of the software, users can

review and edit the information they provide.  ECF No. 92-1, at 107-09; Aug. 18, 2021

Transcript, at 59, 95.  Mr. Pavuluri stressed that after answering the questions on the website, the

users "can do anything to their forms as they see fit before filing their forms."  Aug. 18, 2021

Transcript, at 19.

### C.  General Information Section

Mr. Pavuluri explained that the general information section of the Upsolve software asks

"general questions that really don't fit into the other categories" presented to users but

nonetheless are taken from the official bankruptcy forms. *Id*. at 68; *see also* ECF No. 92-1, at 111. The general information section begins with questions concerning marital status and number of dependents. ECF No. 92-1, at 112-22; *see also* Aug. 18, 2021 Transcript, at 69-70. Next, users are asked a series of questions regarding the sale, transfer, exchange, payment, or gift of any money or property within certain enumerated time periods prior to filing. *See* ECF No. 92-1, at 123-27, 136-51, 161-65; *see also* Aug. 18, 2021 Transcript, at 70-74, 76-77. The software also inquires about any pending litigation. ECF No. 92-1, at 128-35; Aug. 18, 2021 Transcript, at 72.

Users are then presented with questions about repossessions, foreclosures, garnishments, offset taxes, and seized or levied accounts or property. ECF No. 92-1, at 152-60; Aug. 18, 2021 Transcript, at 74-75. Additionally, users must disclose whether they regularly controlled another's property or drove a car owned by someone else in the past year and whether they have stored any of their property somewhere other than their residence, such as a storage unit. ECF No. 92-1, at 166-71; Aug. 18, 2021 Transcript, at 77. Questions concerning hazardous materials and environmental law violations are also posed. ECF No. 92-1, at 172-81; Aug. 18, 2021 Transcript, at 78-79. The general information section concludes by asking if the user's debts originated from running a business and if the user paid creditors more than $6,825.00 in the preceding ninety days. ECF No 92-1, at 182-85; Aug. 18, 2021 Transcript, at 79-80. Users may then review and edit the information provided, as well as preview a draft of Official Form 107 (Statement of Financial Affairs for Individuals Filing for Bankruptcy). *See* Aug. 18, 2021 Transcript, at 80-82.

D.  Debts and Creditors Section

Upsolve next asks users about their debts and creditors.  ECF No. 92-1, at 187, 189; Aug.

18, 2021 Transcript, at 82.  The section begins with the following text:

> Important things to know in the Debts and Creditors section
>
> You must include debt, even if they can't be discharged.  Common debts that may not be able to be discharged include student loans, alimony, child support, income taxes.
>
> Debtors don't have the option to "leave debts out."  If you owe any person, hospital, doctor, company, or the government any money at all, you must list the debt.
>
> - If you have an auto loan, our questionnaire will ask if you want to keep your car.  You cannot omit info about your auto loans.  Forgetting to list a car doesn't protect it.
>
> - Even if you want or plan to pay back a debt, you must still list it.  You can still pay back your friend you owe if you want after filing, but you still need to list the debt.
>
> - Even if the debt is "charged off," you must include it as you still owe the debt.
>
> - If you know for sure you're an authorized user on a credit card, you can remove it.
>
> Things that may be helpful:  old bills, old mail, and bank statements.

ECF No. 92-1, at 190; *see also* Aug. 18, 2021 Transcript, at 83-84 (recitation of the quoted text

into the record).

Users are instructed to list secured, priority unsecured, and non-priority unsecured debts.

ECF No. 92-1, at 191; Aug. 18, 2021 Transcript, at 85.  Users are informed, "To make this

easier, this tool will do a 'soft pull' for your credit report.  You will have the opportunity to add

debts that don't appear on your credit report."  ECF No. 92-1, at 189.  Mr. Pavuluri testified that:

> We, with their permission, pull[] their credit report and populate the software with the Creditors directly from their credit report.  And this is a service

38

that we provide both to the Debtors, but also to the Trustees [and] the Court so that they know that they're getting Creditors from their credit reports.  Of course, users can edit [the list of] Creditors however they see fit.  Our software is asking users' direction.

Aug. 18, 2021 Transcript, at 83.  Mr. Pavuluri confirmed that the software "cut[s] and paste[s] information from the credit report onto the page listing Creditors" to populate the debts and creditors.  *Id*. at 83, 86.  Users may edit debts added from their credit report or input additional debts as they determine appropriate.  *Id*. at 83, 85; *see also id*. at 84, 86. The Debts and Creditors section also contains links to informational articles regarding different types of debts, types of debts that can and cannot be discharged, and alternatives to Chapter 7 filings.  ECF No. 92-1, at 193-94; *see* Aug. 18, 2021 Transcript, at 85-87.  Users can review and edit the list of debts and creditors at the conclusion of the section.  ECF No. 92-1, at 195-96; Aug. 18, 2021 Transcript, at 88-89.

### E.  Vehicle Ownership Section

The next section of the Upsolve software addresses vehicle ownership.  ECF No. 92-1, at 199.  Here, the program asks if users "own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not."  *Id*. at 200; *see also* Aug. 18, 2021 Transcript, at 89.  Users also describe their ownership of the vehicles and "what [they] would like to do" with the vehicles with regard to the bankruptcy.  ECF No. 92-1, at 200; *see also* Aug. 18, 2021 Transcript, at 89.  Upsolve allows the user to enter various types of vehicles, including cars, trucks, motor homes, and trailers.  ECF No. 92-1, at 201-02; Aug. 18, 2021 Transcript, at 90. For each vehicle, "[t]he software requests make, model, year, current condition and estimated mileage[,] mimicking the bankruptcy forms."  Aug. 18, 2021 Transcript, at 90; ECF No 92-1, at 204.

Regarding vehicle value, users are directed to "[g]o to Kelley Blue Book at KBB.com and look up the trade-in value of the [vehicle]."  ECF No. 92-1, at 205.  The website further instructs:

> You must go to Kelley Blue Book and look up the 'Trade-in Value' of the car.  If you don't do this, you may lose the car.  If the car is damaged, you can adjust the value you look up.  The vast majority of Upsolve users keep their car during their bankruptcy if they want to.

*Id*.  Upsolve provides a link to the Kelley Blue Book website.  *Id*.  Mr. Pavuluri confirmed, "Here, we're asking users to go and find the trade-in value of the car."  Aug. 18, 2021 Transcript, at 91.  Upon inquiry by the Court, Mr. Pavuluri confirmed that users may input whatever value they desire.  *Id*. at 93.  After the trade-in value is input, a subsequent screen entitled "Your Vehicles & Bankruptcy Exemptions" is displayed.  ECF No. 92-1, at 207.  As in prior sections, Upsolve allows users to review and edit the Vehicle Ownership section.  *Id*. at 208.

### F.  Bankruptcy Section

The bankruptcy section requires users to list all previous bankruptcy filings.  *Id*. at 212. The first screen in this section states, "To help with this, we can automatically check the national bankruptcy records through a system called PACER, which is run by the U.S. Courts system." *Id*.  Regarding the PACER search, Mr. Pavuluri stated:

> [W]e realized early in the development of the Upsolve software . . . that people who are filing pro se sometimes thought that they had filed over eight years ago, but they had actually filed less than eight years ago.  And as a service to both [] the users [and] also the Courts, because it delays the – it just clogs up the Court system if people are filing bankruptcies and have fil[ed] in less than eight years, we are [able to] check – the software does the check.

Aug. 18, 2021 Transcript, at 96.  The software performs a "search based on the individual name and social security number to see if the user has filed for bankruptcy before and when."  *Id*.  Mr. Pavuluri further noted that for most users, no prior records exist, and the search returns no prior

bankruptcies.  *Id*. at 97.  Users who filed a Chapter 7 case within the past eight years and received a discharge, filed a Chapter 13 case in the previous six years and received a discharge, or have an open bankruptcy case under either Chapter 7 or Chapter 13 are not permitted to continue using the Upsolve program.  ECF No. 92-1, at 213; Aug. 18, 2021 Transcript, at 97-98.  Users are also asked to list affiliated pending bankruptcy cases.  ECF No. 92-1, at 216; Aug. 18, 2021 Transcript, at 98.  Finally, as in other sections, users can review and edit their prior bankruptcy history.  ECF No. 92-1, at 214; Aug. 18, 2021 Transcript, at 98.

## G.  Income and Expenses Section

Mr. Pavuluri testified that the next section of the Upsolve website collects information concerning the user's income and expenses.  Aug. 18, 2021 Transcript, at 99-100.  Upsolve prompts the user to "[l]ist monthly expenses that you expect in the upcoming month after filing."  ECF No. 92-1, at 224.  This section also provides an embedded YouTube video that discusses the expenses a user should list on the bankruptcy petition.  *Id*. at 224-25; *see* Aug. 18, 2021 Transcript, at 100.  The website inquires about the user's monthly debt repayment, separating dischargeable debts (including credit card and other loan payments) and non-dischargeable debts (such as payments on student loans and taxes).  ECF No. 92-1, at 226; *see* Aug. 18, 2021 Transcript, at 101.  The website specifically reiterates the nature of certain debts:  "[E]xpenses coming from paying down credit cards and loans will not appear on the expenses section, Form 106J . . . .  [P]ayments on dischargeable debts will not be considered in income/expense difference calculations."  ECF No. 92-1, at 227.  Mr. Pavuluri answered affirmatively when asked whether this statement "is just telling the user what categories of information the form does and does not ask for[.]"  Aug. 18, 2021 Transcript, at 102.

Users are then asked numerous questions regarding monthly living expenses.  *See* ECF No. 92-1, at 228-54.  Users input their monthly expenses for rent and related property expenses (*id*. at 228-30; Aug. 18, 2021 Transcript, at 102); storage units (ECF No. 92-1, at 231; Aug. 18, 2021 Transcript, at 103);  utilities (ECF No. 92-1, at 235-36; Aug. 18, 2021 Transcript, at 103); insurance (ECF No. 92-1, at 237-45; Aug. 18, 2021 Transcript, at 104-06); and out of pocket medical costs (ECF No. 92-1, at 245-46; Aug. 18, 2021 Transcript, at 106).  Users are then prompted to input monthly expenses for their household (including food, clothing, and personal care), family (such as childcare or child support), public transportation, vehicle (including lease and installment payments but excluding insurance), and other installment payments.  ECF No. 92-1, at 247-54; Aug. 18, 2021 Transcript, at 106-08.  Lastly, a user must indicate any expected changes to their post-filing expenses.  ECF No. 92-1, at 255-59; Aug. 18, 2021 Transcript, at 109.  In this section, the program asks users again whether they are homeowners.  ECF No. 92-1, at 232; Aug. 18, 2021 Transcript, at 103.  If the user is a homeowner, they are unable to continue using the Upsolve program.  ECF No. 92-1, at 233-34; Aug. 18, 2021 Transcript, at 103.

Users are then presented with a synopsis of different income sources, as well as an embedded informational YouTube video (available to the general public) about what constitutes income.  ECF No. 92-1, at 260.  Users indicate expected post-petition sources of income and support from the website-provided list, which includes employment, freelancing, government assistance, and family support.  *Id*. at 261-62; *see* Aug. 18, 2021 Transcript, at 111.  For each income source, users are directed to list category-specific details such as the employer's name; income amount; and income frequency.  *See* ECF No. 92-1, at 264-65; *see* Aug. 18, 2021 Transcript, at 116; *see also* Aug. 18, 2021 Transcript, at 112-15.  Users employed within the past sixty days are required to upload their pay stubs to include with their bankruptcy filing.  ECF No.

92-1, at 266-67; Aug. 18, 2021 Transcript, at 120.  Upsolve provides an embedded YouTube video that explains the paystub upload process and what paystubs may look like.  ECF No. 92-1, at 267.  The program provides a tool to upload paystubs and an alternate method of describing a paystub's content if it is not available for upload.  *Id*. at 268-70; Aug. 18, 2021 Transcript, at 121; *see also* ECF 92-2, at 32-36.  Upsolve asks users again if they earn income through other sources, such as an independent contractor, or as a recipient of local, state, or federal government assistance, to ensure that users are providing consistent information.  *See* ECF No. 92-1, at 274-86; Aug. 18, 2021 Transcript, at 112-17.  Finally, the Upsolve program asks users if they expect their income to change drastically in the upcoming six-month and twelve-month periods and if so, why.  ECF No. 92-1, at 287.  Mr. Pavuluri noted, "These are questions asked on Schedule I[.]"  Aug. 18, 2021 Transcript, at 117.

Upsolve then provides the user an opportunity to review their income and expense information.  ECF No. 92-1, at 288-95; Aug. 18, 2021 Transcript, at 117-18.  The user is prompted to review two articles, with the program noting that "[y]our expenses are much higher than your income.  You can only file bankruptcy once in an eight-year period and we wanted to make sure that you feel confident that you're filing bankruptcy at the right time for you."  Aug. 18, 2021 Transcript, at 118.  Mr. Pavuluri testified that the articles, which describe income, expenses, and choosing to file for bankruptcy, are accessible to anyone via the internet.  *Id*. at 119.  Upsolve imposes a time-delay before users can move forward from this stage as Upsolve does not "want people speeding through" the articles.  *Id*.

Upsolve prompts users to upload their previous two years' tax returns if they were required to file them.  *Id*. at 122-23; *see* ECF No 92-2, at 38-45.  The program next asks users to enter their sources of income for the past three years, as well as the actual income from the prior

43

six months for purposes of completing the means test calculation for Form 122A.  ECF No. 92-2, at 5-6, 13; *see* Aug. 18, 2021 Transcript, at 123-26; *see also* ECF No. 92-1, at 272-73.  Mr. Pavuluri stated that the past income section was "largely the same" as the current income section, asking users to identify their sources and amounts of income.  Aug. 18, 2021 Transcript, at 123; *see also* ECF No. 92-2, at 8-12, 15-29.  Finally, users are prompted to review draft versions of Schedules I and J, which the software generates by inputting the users' answers into the corresponding questions on the bankruptcy forms.  Aug. 18, 2021 Transcript, at 120, 126.

### H.  Your Businesses and Contracts & Leases Sections

The Upsolve program next asks users about businesses they have owned or were connected with over the prior four years.  ECF No. 92-2, at 48-49; Aug. 18, 2021 Transcript, at 127.  For each business, users input "the business name, BIN, when the business started, and when the business closed . . . ."  Aug. 18, 2021 Transcript, at 128.  Users are also instructed to disclose if they have "held a management position at or had more than 5% ownership of any corporation in the past 4 years."  ECF No. 92-2, at 51; Aug. 18, 2021 Transcript, at 128.  If a user adds such a role, they are prompted to enter related details including the business name, start and end date at the business, and address.  ECF No. 92-2, at 52-53; Aug. 18, 2021 Transcript, at 128-29.  The program also inquires as to assets owned by the user that are used for professional work and business:  "On Form 106AB Part 5, the court requires you list assets you own that are used for your professional work and business.  List business-related assets below."  ECF No. 92-2, at 56; Aug. 18, 2021 Transcript, at 129-30.  The section concludes by asking if the user provided any financial statements to anyone regarding the user's business.  ECF No. 92-2, at 58; Aug. 18, 2021 Transcript, at 130.

Upsolve then inquires as to any contracts and leases held by the user. ECF No. 92-2, at 61-62; Aug. 18, 2021 Transcript, at 130. This section provides an article entitled "A Guide to Leases in Bankruptcy." ECF No. 92-2, at 62. The program poses specific questions regarding whether the user rents property and if they have a rental contract, as well as whether the user has any contracts for expenses such as a storage lease, cell phone lease, or leases on other property. *Id*. at 63-65; Aug. 18, 2021 Transcript, at 131-32. Users may then review the contracts and leases section and a draft Schedule G for accuracy. ECF No. 92-2, at 65-66; Aug. 18, 2021 Transcript, at 133.

I. Assets Section

The next section of the Upsolve program, the assets section, prompts users to "List everything you own!" ECF No. 92-2, at 69. The program further states:

> This includes everything your name is attached to. If your name is on a title of a car, a deed of a house, or a joint bank account, you must list it. Even if you don't use it.

> According to Bankruptcy Law, a debtor does not have a choice whether they can include or exclude something in their bankruptcy. A debtor's "Bankruptcy Estate" includes all of the assets and debts they have before filing.

> Listing an asset on your form doesn't mean that it will be taken away. The "bankruptcy exemptions" are rules that allow you to keep your property if their value is not greater than the exemption limits.

*Id*.; *see also* Aug. 18, 2021 Transcript, at 133-34 (recitation of the quoted text into the record).[19]

Upsolve poses questions to users based upon those set forth on Schedule A/B and begins by asking if the user owns any real estate:

> If you own part or all of any home, apartment, residence, building, land, any type of timeshare, etc. anywhere in the world, you must say Yes. If your name is on the deed to anything, you must say Yes. You cannot leave any real estate property out of your bankruptcy.

---

[19] Mr. Pavuluri testified that "[t]he average Upsolve user owns less than $2,000 in overall assets." Aug. 18, 2021 Transcript, at 159.

ECF No. 92-2, at 71; *see also* Aug. 18, 2021 Transcript, at 135 (recitation of the quoted text into the record and explaining that the questions concerning assets "mimic Schedules A and B").  If a user affirmatively indicates real estate ownership, they cannot continue using Upsolve.  ECF No. 92-2, at 72; Aug. 18, 2021 Transcript, at 135.  Users who deny owning real property are asked to again affirm that they do not own any real estate at all and if they own a mobile home, motor home, or RV.  ECF No. 92-2, at 74-75; Aug. 18, 2021 Transcript, at 136-37.  Users are next directed to disclose any property or payments they are owed from someone who died or who may die in the next six months; and whether they are in the process of opening a claim or lawsuit.  ECF No. 92-2, at 78, 84; Aug. 18, 2021 Transcript, at 137-38.  Users answering either of these inquiries affirmatively are not permitted to continue using Upsolve.  ECF No. 92-2, at 79, 85; Aug. 18, 2021 Transcript, at 137-38.

The program then asks users to list their personal and household items.  ECF No. 92-2, at 87; Aug. 18, 2021 Transcript, at 138.  Users are presented with a number of screens that each provide a list of items under enumerated categories.  *See, e.g.*, ECF No. 92-2, at 88-89 (displaying, below the question, "Do you own any electronics?" a variety of electronics items, including cell phones, computers, TVs, radios, VCRs, and tablets).  Users click an icon labeled "+Add" to add an item in the enumerated category, as well as the item's value, to their list of assets.  Aug. 18, 2021 Transcript, at 139-40; *see also id*. at 142.  Asset categories include electronics; jewelry (such as wedding or engagement rings, watches, heirlooms, and other jewelry) (ECF No. 92-2, at 91); collectibles of value (with examples such as antiques, art, books, and other collectibles) (*id*. at 94-95); household goods and furnishings (including bedding, microwaves, refrigerators, sofas, and other household furnishings) (*id*. at 96-97); sports and hobby equipment, and firearms (*id*. at 98-99).  *See* Aug. 18, 2021 Transcript, at 139-43.  Users

are also prompted to enter any pets they own, as well as any health aids or equipment. ECF No.
92-2, at 100-01; Aug. 18, 2021 Transcript, at 143-44. Regarding clothing, users are directed to
enter the value with the question, "How much would you get for **your clothes** if you tried to sell
to a thrift store? We know this question may surprise you. Just do your best." Aug. 18, 2021
Transcript, at 93; *see also* ECF No. 92-2, at 93.[20] Mr. Pavuluri confirmed that despite this
statement, "the user . . . could put whatever amount they want[.]" Aug. 18, 2021 Transcript, at
141.

> Users must also list their financial assets:

> > For this section, we'll be asking about all your financial accounts.

> > **Remember:** The court just wants a complete financial picture. Listing an
> > asset on your form doesn't mean that it will be taken away. The "bankruptcy
> > exemptions" are rules that allow you to keep your property if their value is not
> > greater than the exemption limits.

ECF No. 92-2, at 102. First, users list the value of all of the cash they will have on hand on the
day of filing:

> > Please list roughly how much cash you will have (e.g., in your wallet, at
> > home, in a safe deposit box, on hand) on the actual day you file for bankruptcy.

> > This doesn't include money in your checking or savings accounts. Most
> > Upsolve users have at least some cash. Do your best to estimate how much you'll
> > have on the day you file, as many people spend money between now and the day
> > they file.

*Id*. at 103. Next, users are asked whether they have any checking or savings accounts; digital
wallet accounts; retirement accounts (such as 401k accounts, individual retirement accounts, or
pension plans); or any special savings accounts (including health savings accounts). *Id*. at 104-
08; Aug. 18, 2021 Transcript, at 146-48. Users must also list any life insurance policies,

---

[20] To this Court's knowledge, thrift stores do not purchase used clothing, but rather, accept it on
a donation basis. Therefore, it is unclear to the Court how this instruction would be applicable to
or helpful regarding the valuation of a user's clothing items.

intellectual property, or any other financial assets they own, such as bonds or trust funds.  ECF No. 92-2, at 109-13; Aug. 18, 2021 Transcript, at 148-50.

Upsolve then inquires if the user expects the return of any payments, such as security deposits, prepaid rent, or utility security deposits.  ECF No. 92-2, at 114-16; Aug. 18, 2021 Transcript, at 150-51.  Users also input any payments they are owed for alimony, child support, or from a divorce settlement, tax refund, or unpaid work benefit.  ECF No. 92-2, at 117-20; Aug. 18, 2021 Transcript, at 152-53.  Last, the program asks users to disclose, from a provided list, any farm or commercial fishing-related property that they own.  ECF No. 92-2, at 122-23; Aug. 18, 2021 Transcript, at 154.  As in the prior sections, users are presented with the opportunity to review and edit the assets section.  ECF No. 92-2, at 124; Aug. 18, 2021 Transcript, at 155.  Users are also presented with a draft version of Schedule A/B, compiled using the information provided.  Aug. 18, 2021 Transcript, at 158.

## J.  Exemptions Section

The next segment of the Upsolve program purports to "[a]pply bankruptcy statute exemptions to your assets."  ECF No. 92-2, at 128.  An embedded YouTube video, titled "Exemptions Explained," "shows just a general overview of what the exemptions are.  It's available on YouTube to anybody, and it's not personalized based on anybody's specific situation."  Aug. 18, 2021 Transcript, at 159; *see* ECF No. 92-2, at 128.  Above the video link, the screen states:  "Our Bankruptcy system allows people to protect their property up to certain amounts with property exemptions.  In fact, in 96% of Chapter 7 cases, filers are able to keep everything they own under the governing property exemptions.  Watch this video to learn more about exemptions."  ECF No. 92-2, at 128.  Below the video link, the website reads:

Please read the articles below to understand more about what exemptions you have available.  The exemptions that you may have available to you depend on the state that you live in, or where you have recently lived.

By clicking onto the next screen, you acknowledge the following:

I would like Schedule C, the exemptions section of my bankruptcy forms, to be populated with all of the assets I previously entered in this questionnaire based on the description of those assets I previously acknowledged.

I understand that exemptions are laws I must list next to my assets on Schedule C to protect them from being seized.

I understand that in populating Schedule C with information I have already entered Upsolve is not making any legal judgments for me.

I understand that I can edit any part of Schedule C, which lists my exemptions, on my forms before I file.  I understand that I may choose not to apply any exemptions to my property and may choose which exemptions apply to which property.  This is totally in my control.

*Id*. at 129-30; *see also* Aug. 18, 2021 Transcript, at 160 (recitation of the acknowledgments into the record).  Mr. Pavuluri testified that the articles below the video are "general educational articles about bankruptcy exemption[s]."  Aug. 18, 2021 Transcript, at 160.

The program next asks users to select the exemptions they would like to use and presents options of the federal and state exemptions if the user lives in a state where federal exemptions are permitted; otherwise, only state exemptions are presented to the user.  ECF No. 92-2, at 131; Aug. 18, 2021 Transcript, at 161.  The screen indicates that "[t]he vast majority of Upsolve users with your state(s) of residence who don't own real estate select the federal exemptions to protect their property."  ECF No. 92-2, at 131.  Below this text, the user can select either "Federal exemptions (Most Common), 11 U.S.C. § 522(b)(2)" or state-specific exemptions, "State exemptions, 11 U.S.C. § 522(b)(3)."  *Id*.  When asked whether it was necessary for Upsolve to indicate that the federal exemptions were more common than the state exemptions, Mr. Pavuluri responded, "No."  Aug. 18, 2021 Transcript, at 161.  Mr. Pavuluri testified that Upsolve

determines the state law to present to a particular user based upon their state of residence, as disclosed earlier in the process, or whether they previously lived if the user has recently moved: "[I]f a user has moved recently, the state exemptions that are available to them are based mechanically on where they live from two years ago to two years and six months ago." *Id*. at 162.

Mr. Pavuluri represented that if a user resides in a state where federal or state exemptions can be used, Upsolve will allow users to continue using the program only if they select the federal exemptions. *Id*. at 162-63; ECF No. 92-2, at 132-33. A user selecting federal exemptions is presented with three articles to read. Aug. 18, 2021 Transcript, at 164; ECF No. 92-2, at 135. Mr. Pavuluri explained that the articles displayed to users would explain the state exemptions if the user was in a state where federal exemptions were unavailable. Aug. 18, 2021 Transcript, at 164. Regardless of the exemption scheme, the articles set forth the exemption statutes available to the user. *Id.* at 166. Additionally, the screen requires the user to acknowledge three points:

> I have reviewed the federal exemption laws (below) that are available to protect my property.

> I understand the specific federal exemptions that exist to protect my assets.

> I understand the federal wildcard exemption that exists to protect my assets that aren't covered by the other exemptions specific to the property I own.

ECF No. 92-2, at 135; *see also* Aug. 18, 2021 Transcript, at 163-64 (recitation of the acknowledgments into the record).[21] The user then selects one of two choices, with the first stating:

---

[21] While Mr. Pavuluri did not so testify, the Court presumes that the language of these and subsequent acknowledgements in the exemptions section would reference state exemption laws if such exemption scheme was selected by the user.

> Yes, I acknowledge this all and I'd like to import the federal exemptions to protect my assets. I understand that I'll be able to review, edit, and finalize my exemptions however I'd like later in the process before filing. I understand that I am fully responsible for my exemptions and that Upsolve is not able to advise me on whether and how to use exemptions in my case.

ECF No. 92-2, at 135; *see also* Aug. 18, 2021 Transcript, at 164 (recitation of the quoted choice into the record). The other option reads, "No, I do not acknowledge this and would not like to import the federal exemptions." ECF No. 92-2, at 135; *see also* Aug. 18, 2021 Transcript, at 164 (recitation of the acknowledgment into the record). Mr. Pavuluri further noted that if a user selects the second of these options, they may not continue using the Upsolve program. Aug. 18, 2021 Transcript, at 165.

The program then displays the "Exemptions Editor," a screen on which the program populates a list of assets based upon the assets previously input by the user. *Id*. at 165, 170; ECF No. 92-2, at 136. A second table, entitled "Bankruptcy Exemption Usage," appears below the assets and contains a list of the exemption statutes based on the user's prior selection. Aug. 18, 2021 Transcript, at 166; ECF No. 92-2, at 136. Mr. Pavuluri confirmed that the program "cut[s] and past[es] from those articles . . . which exemptions are available to the user" into the "Bankruptcy Exemption Usage" table. Aug. 18, 2021 Transcript, at 166.

Mr. Pavuluri explained that the program "suppl[ies] a default assumption of which exemption applies based on the user's description of the property and the user's acknowledgement of the articles they had read[.]" *Id*. at 167. Mr. Pavuluri denied that "there [are] any categories of asset[s] that the user enter[s] that require[s] discretion in applying the applicable exemption[.]" *Id*. at 166. Mr. Pavuluri testified that the "Exemptions Editor" allows the user "to edit, update, delete exemptions however they see fit. They are fully in control of writing anything they want that will populate Schedule C." *Id*. at 165; *see also* ECF No. 92-2, at

51

139.   To change a pre-populated exemption statute, the user selects a different statute from a drop-down menu or by writing in the desired statute.  Aug. 18, 2021 Transcript, at 167-68.  The user can also change the amount of the exemption taken.  *Id*. at 167.

The Court requested clarification from Mr. Pavuluri regarding what the user would see in a state such as Maryland, where the federal exemptions are unavailable, and users must use state exemptions to exempt property.  *Id*. at 168.  Mr. Pavuluri stated that "the user will see a screen where they have to opt in to choosing the exemptions" for their state; the federal exemptions are not presented as an option.  *Id*. at 168-69.  Mr. Pavuluri elaborated that "the Upsolve software does not, by default in any way, choose a set of exemptions" for a user.  *Id*.

On cross-examination, when asked whether the exemption statute for "Household Goods" listed on Ms. Crawford's Schedule C was automatically populated by the software, Mr. Pavuluri answered, "That's my best guess.  I don't know how she might've adjusted it any way, but that'd be my best guess."  *Id*. at 187.  Upon further questioning from Mr. Vetter, Mr. Pavuluri confirmed that Ms. Crawford was presented initially with a default provision, based on her decision to apply the Maryland exemption laws, after which Ms. Crawford could have altered the default provision.  *Id*.  Mr. Pavuluri verified that "the software was programmed to set up these default statutory provisions both for the federal and the relevant state exemptions . . . based on the assignments that are in the exemption laws themselves."  *Id*. at 187-88.  On redirect examination, Mr. Pavuluri clarified that, in a state where no federal exemption was available, users could elect to either use the state exemptions and continue with the program or decline to use the state exemptions, in which case they would be unable to continue using Upsolve.  *Id*. at 191-92.  Using Maryland exemptions as an example, Mr. Pavuluri represented that the program imports the exemptions and allows a user to edit them at their discretion.  *Id*. at 191.  Mr.

Pavuluri maintained that the software "allows the user to import these exact exemptions from the article that they had just acknowledged reading[.]"  *Id*. at 192.

### K.  Court Filing Fee Payment Method Section

The program next enters the Court Filing Fee Payment Method section.  ECF No. 92-2, at 143.  The first screen of this section advises users that bankruptcy courts require a Chapter 7 filing fee of $338.00, which is due at filing unless the court grants an exception.  *Id*.  The program then advises users that they may either apply for a fee waiver, pay the fee in full at filing, or pay in installments within 120 days.  *Id*. at 144; *see also* Aug. 18, 2021 Transcript, at 172.  Upsolve does not allow a user who is not eligible for a waiver (based on the income entered earlier) to select that option.  ECF No. 92-2, at 144.  The Court Filing Fee Payment Method section is the final substantive section of the Upsolve program a user completes to be able to generate their bankruptcy forms.  Aug. 18, 2021 Transcript, at 172.

### L.  Post-Questionnaire Review and Form Generation

The program then advises users of additional pre-filing requirements, including the pre-petition credit counseling requirement, and the post-petition financial management course.  *Id*. at 172-73.  Mr. Pavuluri testified that Upsolve does not provide a credit counseling course; users must handle that aspect themselves.  *Id*. at 172.  The program then displays a preview of each completed form, which users may edit as they see fit.  *Id*. at 172-73.  The program also instructs the user regarding mailing documents to the Chapter 7 trustee and attending their Section 341 meeting of creditors.  *Id*.  Mr. Pavuluri testified that it is up to the users to decide whether to file the Upsolve-generated forms.  *Id*.

Users can generate their forms for printing only after a "brief clerical review."  *Id*. at 173.  Mr. Pavuluri noted that users can modify their forms at will once they have been generated.  *Id*.

at 174; *see also id*. at 94.  Mr. Pavuluri explained that the clerical review averages less than five minutes per user, specifically noting that no additional actions were recommended after the clerical reviews in the two instant cases.  *Id*. at 174.  He elaborated that the review primarily focuses on ensuring that the user has uploaded the correct documents, such as paystubs, tax returns, and credit counseling certificates.[22]  *Id*. at 174-75.  Upsolve has a review checklist and an organization-wide policy limiting the scope of the clerical review and prohibiting the provision of legal advice.  *Id*. at 175; ECF No. 92-1, at 7-8.  The conclusion of the policy, included as Upsolve's Exhibit 3 and admitted into evidence without objection, states:

> Under no circumstances should anyone at Upsolve come close to providing personalized legal advice, telling an Upsolve user what they should do during their bankruptcy case on substantive legal matters.  This is a rule that we take extremely seriously, as we're able to provide our self-service web application, customer support, and review only as long as we do not provide legal advice.

ECF No. 92-1, at 8; Aug. 18, 2021 Transcript, at 176 (recitation of quoted text into the record). Mr. Pavuluri represented that the quoted text "accurately express[es] Upsolve's view on its need to comply with regulations governing the practice of law[.]"  Aug. 18, 2021 Transcript, at 177.

Upsolve provides users with the option to notify the court of the assistance Upsolve provided via a form letter a user can file with their petition.  *Id*. at 177, 179; ECF No. 92-1, at 2 (accepted into evidence as Exhibit 2 without objection).  Upsolve does not require users to file the form letter.  Aug. 18, 2021 Transcript, at 177.  Rather, the form letter is provided to avoid confusion by the courts and trustees, who may not be accustomed to receiving proper forms from *pro se* debtors.  *Id*. at 177-78; *see also id*. at 180.  In the Peterson and Crawford cases, Mr. Pavuluri testified that both debtors filed a Declaration of Pro Se Assistance, which was the precursor to the letter in use at present.  *Id*. at 178-79; *In re Crawford*, ECF No. 8; *In re*

---

[22] The clerical review process is discussed in detail *infra* in Section II.M.

*Peterson*, ECF No. 1, at 49. Mr. Pavuluri testified that Upsolve provides educational content about the letter, and the user ultimately chooses whether to file the letter. Aug. 18, 2021 Transcript, at 180.

On cross-examination, Mr. Vetter asked Mr. Pavuluri if he was aware of the Maryland bankruptcy case *In re Mark Shutta*, a debtor who used Upsolve to generate his forms and to whose discharge the United States Trustee objected for failure to properly list certain assets and creditors. *Id*. at 189. Mr. Pavuluri noted his awareness of the case and that Mr. Shutta was untruthful on his forms and during the process. *Id*. Mr. Pavuluri estimated that fewer than twenty Upsolve users have had their discharge challenged by the United States Trustee or another party in interest. *Id*. He noted the common theme in these actions was that the user failed to list property they owned. *Id*. at 189-90. On redirect examination, Mr. Pavuluri testified that Upsolve attempts to ensure that users are truthful on their schedules, including asking questions multiple times and comparing information to that obtained from PACER. *Id*. at 194.

M. Clerical Review

Ms. Tran, the managing attorney and products manager of Upsolve, testified that she is a member of the Illinois state bar and that she has never been disbarred or faced disciplinary action. *Id*. at 195-96. Ms. Tran's primary responsibility at Upsolve is "reviewing the cases . . . for both completeness and consistency;" she also communicates with Upsolve's engineers "to make sure the product that we offer is running smoothly." *Id*. at 196. Ms. Tran does not serve as Upsolve's general counsel or answer legal questions faced by Upsolve. *Id*. at 197. Concerning the review of users' forms, Ms. Tran stated:

> I'm looking to make sure that all the forms are filled out completely, and all the blanks are filled in as well as the – whether everything is consistent, . . . if we're asking for paystubs, if the paystubs are actually [up]loaded, if their credit counseling certificate is actually uploaded, and things like that.

55

*Id*.

Ms. Tran testified that she follows a checklist, from which she does not deviate, when performing these reviews, which take about five minutes each. *Id*. at 197-98; ECF No. 92-1, at 4-5. The checklist includes confirming that no information is missing, there is no duplicate information, and the user has not listed anything that should have rendered them unable to continue using Upsolve. Aug. 18, 2021 Transcript, at 198; ECF No. 92-1, at 4-5. Ms. Tran never reviews a user's decision as to whether to file for bankruptcy or the chapter under which they file, never reviews any of their discretionary choices, and does not use her legal training and experience when reviewing the forms. Aug. 18, 2021 Transcript, at 199-200.

When Ms. Tran identifies an error or inconsistency from the checklist on a user's forms, she messages the user through the in-app messenger "for clarification" but does not change any information on a user's form without their knowledge or consent. *Id*. at 199. If a user asks follow-up questions, Ms. Tran will either provide them with a link to one of Upsolve's educational articles or will directly answer the user if it is technology related. *Id*. Ms. Tran confirmed that Upsolve was working towards automating the process of responding to users. *Id*. at 200. If a user asks a legal question, Ms. Tran testified:

> I do let them know that . . . no one at Upsolve and Upsolve as a whole is not their attorney. We are not authorized to provide them with any legal advice . . . or any answers to legal questions and give them the option of opting in for a free consultation with an attorney in their area using the client and attorney link that we have.

*Id*. at 199. Ms. Tran had no contact or communication with either Ms. Peterson or Ms. Crawford either before or after their cases were filed. *Id*. at 200-01. Ms. Tran did not "change or alter any of the information" on either Ms. Peterson's or Ms. Crawford's forms. *Id*. at 201. Ms. Tran was aware that Ms. Peterson and Ms. Crawford each filed a Declaration of Pro Se Assistance bearing

Ms. Tran's name.  *Id*. at 201.  She characterized the Declaration as "a courtesy to both the trustees and the courts and clerks" to advise that the debtors used Upsolve's software.  *Id*.  Users are not required to file the declarations.  *Id*. at 201-02.  Ms. Tran has never been asked by a user to explain the declaration.  *Id*. at 202.

Ms. Tran testified that she was familiar with the regulations governing the unauthorized practice of law and that to the best of her understanding, both her clerical review and Upsolve in general complied with these rules and regulations.  *Id*.  Ms. Tran recounted Upsolve's internal policy prohibiting legal advice, noting that she followed the policy and would be "out of a job" if she did not.  *Id*. at 202-03.

### N.  Funding

Mr. Pavuluri addressed Upsolve's funding, testifying that Upsolve does not charge its users or solicit donations from users, although users may donate to Upsolve's publicly available donation fund.  *Id*. at 24, 181.  Users do not get preferential treatment, or different treatment in any way, if they donate to Upsolve.  *Id*. at 181.  Instead, "[t]he vast majority of funding – and we've raised over $6 million so far – is from philanthropy."  *Id*.; *see also id*. at 26.  Mr. Pavuluri indicated that Upsolve's largest donor is the Legal Services Corporation; Upsolve also receives funding from the New York Bar Foundation, the Lawyers Trust Fund of Illinois, the Robin Hood Foundation, and the Hewett Foundation, as well as from many high-profile individual donors, such as the CEO of Twitter.  *Id*. at 181-82; *see also id*. at 66.  Mr. Pavuluri stated that approximately twenty percent of Upsolve's total funding for the prior year was "from fees that attorneys pay [Upsolve] to provide free [e]valuations to folks who request them on our [website]."  *Id*. at 182; *see also id*. at 65-66.  The aforementioned attorneys are independent, and

many of them previously work for LegalZoom.  *Id*. at 65.  The attorneys pay the same fee regardless of whether they ultimately file a bankruptcy case for the user.  *Id*. at 65-66.

On cross-examination by Mr. Vetter, Mr. Pavuluri clarified that the funding Upsolve receives from attorney referrals equated to approximately $500,000.00 for fiscal year 2020, and he estimated a similar amount for 2021.  *Id*. at 185-86.  Mr. Pavuluri stated that 2019 was the first year that Upsolve utilized the referral program, in which the proceeds from the program were $390,000.00.  *Id*. at 186.  Participating attorneys pay Upsolve "about $20" per referral.  *Id*. Mr. Vetter inquired as to whether Upsolve performed any due diligence regarding the former LegalZoom attorneys who pay Upsolve for user referrals.  *Id*. at 188.  Mr. Pavuluri indicated that Upsolve does perform due diligence to ensure that the attorneys are licensed in the states where they provide evaluations; have no pending or recent disciplinary actions against them; that the attorneys generally have good online reputations; and that the attorneys' fees are reasonable.[23] *Id*.  Upsolve requires attorneys to sign a statement regarding their fees and the level of care they will provide to users referred from Upsolve.  *Id*. at 188-89.

### O.  Upsolve's Approach to Practice of Law Regulations

Mr. Pavuluri testified that he did not believe any of Upsolve's activities constitutes the practice of law.  *Id*. at 184.  He remarked that Upsolve was designed with this concern in mind from its inception and that he consulted multiple experts and legal counsel to ensure that Upsolve does not engage in the practice of law.  *Id*.  Mr. Pavuluri further stated that Upsolve was "totally open" to communicating and working with local trustees, the United States Trustee's Office, and Bankruptcy Judges.  *Id*.  He additionally affirmed that Upsolve is willing to change any aspect of the website, should the Court find that it runs afoul of applicable law.  *Id*. at 185.

---

[23] Mr. Pavuluri believed that "reasonable fees" for a Chapter 7 bankruptcy filing were approximately $1,500.00.  Aug. 18, 2021 Transcript, at 189.

### III. LEGAL ARGUMENT

The Court held a hearing on September 22, 2021, at which counsel for Upsolve and Mr. Vetter presented their oral arguments. *See* ECF No. 103, September 22, 2021 Hearing Transcript (hereinafter, "Sept. 22, 2021 Transcript"). Counsel for Upsolve outlined the four topics he would discuss in closing: first, that Upsolve was not engaged in the practice of law under Maryland law; second, that Ms. Tran's review of users' forms was purely clerical; third, that Upsolve fully informs users of its limited services; and fourth, that Upsolve's services protect consumers and aid the courts. *Id*. at 7.

Counsel for Upsolve asserted that Upsolve's limited services process makes no decisions for its users and does not apply special legal knowledge or skill to any user's case. *Id*. at 8. The Court questioned counsel whether only petition preparers and attorneys are authorized under the Bankruptcy Code to transfer information provided by debtors onto bankruptcy forms. *Id*. at 9. Counsel for Upsolve responded that § 110 created a specific carve out for bankruptcy petition preparers and that § 110(k) specifically ensured and contemplated that all other applicable regulations regarding the practice of law applied to non-lawyers who prepare bankruptcy petitions. *Id*. at 9-10. Counsel for Upsolve further argued that Congress "recogniz[ed] that . . . a category of assistance, purely clerical petition preparation, . . . falls outside the existing regulation of [the] unauthorize[d] practice of law." *Id*. at 10. Upsolve's counsel acknowledged that the compensation contemplated under Section 110 could be either direct or indirect; however, since Upsolve did not receive or solicit direct or indirect compensation for petition preparation, Upsolve is not subject to 11 U.S.C. § 110. *Id*. at 11-12. Upsolve's counsel presented that the referral fees received from attorneys do not constitute indirect compensation

because such fees are not related to preparing forms; rather, the referral fee is paid only when users request a free evaluation from an attorney. *Id*. at 12.

Upsolve contends that, under Maryland law, an activity constitutes the practice of law only if specialized legal knowledge or skill is required to advise about legal principles and precedents. *Id*. at 12-13. Upsolve's software does not require the application of special legal knowledge or skill; rather, Upsolve simplifies the form completion process for its users in a clerical nature with a step-by-step process that poses the same questions set forth on the official bankruptcy forms. *Id*. at 8, 13. "Upsolve ensures the users are making their own decisions in every step of the way. And Upsolve repeatedly discloses to users exactly the limit and nature of their services." *Id*. at 13. Additionally, counsel for Upsolve noted that Upsolve is only available to those with the simplest of no-asset Chapter 7 cases and that the average Upsolve user has less than $2,000.00 in assets, which is lower than the federal wildcard exemption. *Id*.; *see also id*. at 18.

Upsolve does not tell users how to fill out their forms. *Id*. at 14. To assist users, Upsolve provides articles appearing both on its website as well as other websites "that might help users fill out their form[s]." *Id*. For example, "Upsolve offers users a link to Kelley Blue Book when they are asked to input the value of their vehicle. Upsolve does not tell the users to value their vehicle in any particular way. . . . [Upsolve] leaves it to the user what amount to fill in and whether or not to use the Kelley Blue Book at all." *Id*. The Court inquired whether the website specifically directed users to input the Kelley Blue Book trade-in value as their vehicle's value, to which counsel for Upsolve responded that while the program suggests using the trade-in value, it does not require it. *Id*. at 14-15.

Upsolve asserts that the exemptions process is approached in much the same manner as vehicle valuation. *Id*. at 15. Specifically, Upsolve "provide[s] the user with potentially helpful [information], and then support[s] the user[']s choice of whether and how to apply an exemption." *Id*. Counsel reiterated that if both federal and state exemptions are available to a user, the user can choose which set of exemptions to apply; if the user is in a state offering only one form of exemptions, they are not given a choice as to which exemptions to apply. *Id*.[24] Upsolve users are directed to read provided articles specific to the selected exemption scheme, after which they must confirm that "[t]hey understand how those exemptions work, and . . . they are . . . in charge of applying or not applying the exemption to whichever property they choose." *Id*. at 15-16; *see also id*. at 25. The articles provided contain "general information," are available on Upsolve's website to anyone on the internet, and "capture[] which exemptions are available[,] . . . which property they apply to[,] and which statutes that apply." *Id*. at 25. Upsolve urges that this process is comparable to a user performing a Google search for the same information, but instead of a user compiling the information, the article does so for them. *See id*. at 27; *see also id*. at 28. Counsel for Upsolve indicated that the articles provide users "one suggestion on how [the user] might apply exemptions under the regime they [have] chosen." *Id*. at 26. The articles are developed internally by a lawyer using publicly available information. *Id*. at 30-31. Counsel for Upsolve asserted that lawyers drafting the articles do not need to be licensed in the state about which state-specific articles are written because the articles are not case- or fact-specific. *Id*. Upsolve regularly reviews the articles for continuing accuracy. *Id*. at 32.

Upsolve's counsel explained that after a user confirms their understanding of the exemptions, the software "auto populates . . . Schedule C by transposing the assets the user

---

[24] Counsel for Upsolve clarified that users desiring to apply state exemptions in a state where federal exemptions are available are not able to continue using Upsolve. Sept. 22, 2021 Transcript, at 16.

already entered and transposing the exemption statutes the user just read and acknowledge[d]." *Id*. at 16; *see also id*. at 25, 28-30.  The user then has the ability to edit Schedule C, including changing or applying any exemption they choose in any amount or removing property from the schedule.  *Id*. at 16, 18, 28.  During the process, according to Upsolve's counsel, the software "mak[es] these mechanical transpositions at the user's direction," which "does not apply any specific legal knowledge or skill . . . ."  *Id*. at 16; *see also id*. at 26.

The Court questioned counsel for Upsolve as to whether the software operated as a key word matching program by identifying key words in the listed assets and selected exemptions regime to determine the exemption statute it matches to each asset.  *Id*. at 19-20.  Counsel answered affirmatively, noting that "it's a fairly mechanical process of comparing what [the user] entered earlier in the descriptions of those assets to the way those assets are described in the article describing the exemption."  *Id*. at 20.  Upsolve's counsel analogized the process to "a person or a robot comparing the article and the asset the users previously entered, and then plugging in the exemption statute . . . from that article that applies to the property the user has entered."  *Id*. at 21.

The Court inquired as to why the software's application of exemptions to the user's assets did not constitute the practice of law.  *Id*.  Counsel for Upsolve argued that the process was more akin to a typist merely filling a form by matching key words on lists of assets and exemptions and combining the information on one document.  *Id*. at 21-22.  Such action requires no judgment, according to Upsolve, "because the user is directing the typist."  *Id*. at 22.  "All Upsolve is doing is handing the user a suggestion of the sheet they might use that is publicly available on the internet.  The list, the categories of property, and the exemptions they might apply."  *Id*.  Counsel for Upsolve admitted that "in the interest of clarity and candor, what

Upsolve could do is just give the user a blank Schedule C form and leave them to their own devices to fill it in." *Id.* In the alternative, Upsolve could "transpose the assets listed earlier to the exemption schedule . . . without adding the exemption statutes." *Id.* at 23. Upsolve suggested, however, that its current process "enhance[s] consumer protection by making it easier for people to fill in the forms they want without exercising" legal judgment. *Id.* Ultimately, the user is "in complete control of their forms" and they "decide[] whether, where, and when to file" for bankruptcy protection. *Id.* at 14; *see also id.* at 32.

Counsel for Upsolve recounted that Ms. Tran's review takes approximately five minutes per case, during which she uses a checklist to ensure completeness and consistency of the forms; Ms. Tran does not change anything on a user's forms. *Id.* at 34. Upsolve requires all users to attest that they understand Upsolve is not their lawyer, that the users are representing themselves, and that Upsolve cannot provide legal advice. *Id.* at 35. Upsolve further emphasizes and cautions users of the risks of filing *pro se* and offers users alternative resources and attorney referrals. *Id.* Upsolve also provides users with a letter that the user may choose to file with the Court to advise that Upsolve prepared their petition, schedules, and other required documents. *Id.*

Upsolve's counsel argued that under Maryland law, as explained in *Lucas*, 312 B.R. 559 (Bankr. D. Md. 2004), the Court must analyze whether an act constitutes the practice of law in the light of the facts of the case and the purpose of the regulations, which is "to protect the public from incompetent, unethical, or irresponsible representation." Sept. 22, 2021 Transcript, at 36. Counsel maintained that, given the purpose of the regulations and Upsolve's mission of enhancing low-income individuals' access to their legal rights for free, Upsolve is complying and is not engaging in the practice of law. *Id.* at 36-37. Counsel for Upsolve noted that Upsolve

"provides a critical service to its user[s] who otherwise might not be able to access their legal rights or else might have to resort to incompetent, unethical, or irresponsible representation." *Id*. at 36. Counsel also noted Upsolve's commitment to complying with applicable law so as to fulfill its mission of assisting consumers. *Id*. at 38; *see also id*. at 6. Counsel for Upsolve concluded by arguing that because Upsolve's activities do not require specialized knowledge or skill and instead advance the consumer protection goals of the underlying regulations, the Order to Show Cause should be dismissed. *Id*. at 38.

Mr. Vetter closed by referencing the *In re Keller* case, in which the United States Trustee's Office filed a report at the request of the United States Bankruptcy Court for the Eastern District of Kentucky. *Id*. at 39. The *Keller* report addressed whether Upsolve's bankruptcy assistance complied with applicable law and concluded, based solely on Upsolve's representations, Upsolve was not a bankruptcy petition preparer and was neither engaging in the practice of law nor otherwise violating applicable rules of professional conduct. *Id*. Mr. Vetter indicated that the evidence presented at the August 18, 2021 hearing and Upsolve's closing argument did not change the United States Trustee's position set forth in the *Keller* report. *Id*. at 39-40.

At the close of the hearing, the Court requested briefing on the issue of exemptions selection to be provided within two weeks by Upsolve, with the United States Trustee's Office being afforded three weeks after the filing of Upsolve's brief within which to respond. *See id*. at 40-42.

IV.  POST-HEARING BRIEF CONCERNING EXEMPTION SELECTION

A.  Upsolve's Website Functionality Involves No Legal Skill and Is User-Directed

Upsolve, by counsel, filed its post-hearing brief concerning exemption selection on October 6, 2021.  ECF No. 104 (hereinafter, "Post-Hearing Brief").  In addition to recounting the website's content as well as the processes explained during its evidentiary presentation and arguments by its counsel, Upsolve provides further commentary regarding the process that culminates in a user's completed Schedule C.  *See id*. at 4-12.  Upsolve poses "precise" questions to users regarding asset ownership and value to "ensure that no legal skill is required" when the software populates the forms with users' information and "mechanically match[es] the users' entry of their assets to the users' choice of exemptions," the latter of which are presented for users' review in a "standard form article" from Upsolve's website.  *Id*. at 7-8.  Upsolve reiterates that the software performs these actions only upon the user's direction; thus, the users, not Upsolve, select and apply exemptions.  *Id*. at 8, 13; *see also id*. at 3, 6, 10.

Upsolve presents a choice between federal and state exemption schemes to most users.  However, in states requiring use of state-specific exemption laws pursuant to 11 U.S.C. § 522(b)(2), such as Maryland, Upsolve's software presents that state's laws as the user's only option.  *Id*. at 7.  Upsolve equates this limited field of exemption choices to a "determination that can be made through clerical review" of information on the internet.  *Id*.  In support of this argument, Upsolve exemplifies the link to Section 11-504 of the Code of Maryland, Courts and Judicial Proceedings article, on this Court's website.  *Id*. at 8-9 (citing https://www.mdb.uscourts.gov/general-info/legal-resources (last visited June 1, 2022)).  The Maryland Exemptions Article presented to the debtors here describes general categories of exemptible property, although Upsolve concedes that it "does not mention each sub-category of

assets described earlier in the questionnaire." *Id*. at 8 & Exh. A to Post-Hearing Brief, Maryland Bankruptcy Exemptions 2021 (hereinafter, "Maryland Exemptions Article"). For instance, the article references "household goods," whereas the question posed regarding assets uses the term "Personal and Household Items" with sub-categories that include electronics and jewelry. *Id*. at 9 (comparing Maryland Exemptions Article, at 4, with ECF No. 92-2, at 87-89, 91). Despite any distinctions in the category names, Upsolve asserts that the software "match[es] property descriptions to exemption descriptions without the exercise of any legal knowledge or skill" by "select[ing] the broader category" in which the sub-category is contained within the asset section. *Id*.; *see also id*. at 11-12 n.5. Upsolve asserts that the only possible skill employed here was matching the term "household items" with "household goods," which requires no legal knowledge. *Id*. at 11-12.

Fundamental to Upsolve's position that it is not engaged in the practice of law (and as a result, is not doing so in an unauthorized fashion) is that the end user controls the contents of their bankruptcy forms. *Id*. at 5-6; *see also id.* at 10, 12. Upsolve emphasizes that users retain the ability to modify their bankruptcy forms at each stage, including after the software generates the forms for printing. *Id*. at 5 & n.1, 12. Upsolve maintains that the user's control over the bankruptcy forms' contents coupled with Upsolve not providing legal advice could result in a user's inaccurate or ill-advised use of (or failure to use) exemptions. *Id*. at 13. As such, Upsolve equates its software functionality to the drawbacks an unrepresented debtor may encounter when completing bankruptcy forms without the software. *Id*. Upsolve also heavily relies on its disclaimers as well as the attestations and affirmations posed to the users throughout the form-generation process in support of its argument that it is not engaged in the practice of law. *Id*. at 2, 4-5, 13.

On the overarching legal question of whether it has engaged in the unauthorized practice of law, Upsolve restates its position and arguments set forth in its Response to the Order to Show Cause, including the fact-intensive nature of the analysis to determine whether legal knowledge or skill were utilized. *Id*. at 4; *see* Response to Order to Show Cause, at 13-15 (quoting *Lucas*, 312 B.R. at 575 & n.6; *Att'y Grievance Comm'n v. Hallmon*, 343 Md. 390, 397 (1996)). Upsolve argues that actions classified as engineering, accounting, or clerical work, all of which can be performed by a layperson, illustrate tasks that fall outside the ambit of the practice of law in Maryland. Post-Hearing Brief, at 1, 4 (quoting *Lukas v. Bar Ass'n of Montgomery Cnty.*, 35 Md. App. 442, 448 (1977)). Upsolve reasons that its exemption process constitutes clerical work because the software matches the user's assets to the chosen exemptions scheme set forth in the Upsolve-provided article, both of which utilize identical or nearly identical terminology, and requires no legal skill or knowledge. *Id*. at 3; *see also id*. at 4. Upsolve argues that the process does not involve the analysis of any facts specific to a user or the provision of advice to users regarding their selected or applied exemptions. *Id*. at 6; *see also id*. at 7. Upsolve denies that any "artificial intelligence, machine learning, or natural language processing algorithm [is] involved anywhere in the exemption selection[,]" but rather, "only a commonsense understanding of the English language[.]" *Id*. at 7, 10.

B.  Upsolve's Software Promotes the Purpose of Unauthorized Practice of Law Regulations

Upsolve urges that the consumer protection principles underlying Maryland's unauthorized practice of law regulations—to guard against "'incompetent, unethical or irresponsible representation'"—support a finding that its activities should not be so categorized. *Id*. at 4 (quoting *Lucas*, 312 B.R. at 572 n.6); *see also id*. at 3, 14. Upsolve implores the Court to find that "there is virtually no risk of practical harm" that can befall users from the software's

exemption-assignment process. *Id*. at 14. Instead, Upsolve asserts that its free software protects consumers from potentially costlier, riskier alternatives, such as "unlawful and unethical service providers who may prey on low-income individuals in times of acute need." *Id*. at 14, 16; *see also id*. at 3. By simplifying a user's application of exemptions, users are "empower[ed] . . . to represent themselves" in their bankruptcy case. *Id*. at 4; *see also id*. at 12, 15. Upsolve advocates that promoting access to legal rights by self-represented persons advances the purpose and spirit of Maryland's unauthorized practice of law regulations. *Id*. at 15 (citing *Lucas*, 312 B.R. at 572 n.6); *see also id*. at 4. Likewise, Upsolve believes its software furthers the purposes underlying 11 U.S.C. § 110 by promoting self-representation over the use of bankruptcy petition preparers. *Id*. at 15 n.7.

In addition, the eligibility criteria that determines whether a user may partake of Upsolve's software "further minimizes any risk of potential harm from the users' exemption decisions" because users "rarely, if ever, own assets worth more than" the wildcard exemption amount. *Id*. at 14-15 (citing Md. Code, Cts. & Jud. Proc. § 11-504(b)(5), (f)(1)(i)(1)) (noting Maryland's aggregate wildcard exemption amount is $11,000.00); *id*. at 15 n.6 (citing 11 U.S.C. § 522(d)(5)) (noting the current amount of the federal wildcard exemption is "around $12,500").[25] Upsolve stresses that a "user's initial decision of which exemption statutes to list on their bankruptcy forms will virtually never impact the ultimate disposition of their property, since listed property is presumptively exempted and a debtor has the right to amend Schedule C if their exemptions are challenged." *Id*. at 15 (citing 11 U.S.C. § 522(*l*); Federal Rules of Bankruptcy Procedure 1009(a), 4003(c)).

---

[25] As of the date of issuance of this Memorandum Opinion, the federal wildcard exemption limit is $13,950.00. 11 U.S.C. § 522(d)(5); *see also id*. § 104 (providing for periodic adjustments to the dollar amounts contained in various sections of Title 11, including § 522(d)).

Upsolve asserts that it has demonstrated long-standing and continuing efforts to comply with practice of law regulations by consulting with various judges, trustees, and the Office of the United States Trustee.  *Id*.  Indeed, Upsolve cites the September 22, 2021 pronouncement by Mr. Vetter that the United States Trustee does not believe that Upsolve is engaged in the unauthorized practice of law, has violated the rules of professional conduct, or has entered into attorney-client relationships with its users.  *Id*. at 2 (quoting Sept. 22, 2021 Transcript, at 39-40).  Upsolve also cites the lack of complaints from users or any state or federal agencies that any harm has resulted from use of its software.  *Id*. at 3, 16.

Upsolve contrasts its software processes with those discussed by the United States Court of Appeals for the Ninth Circuit in *Frankfort Digital Services v. Kistler* (*In re Reynoso*), 477 F.3d 1117 (9th Cir. 2007).  The *Reynoso* Court found that the unauthorized practice of law occurred under California law when the software affirmatively selected the bankruptcy exemptions.  Post-Hearing Brief, at 13 (citing *In re Reynoso*, 477 F.3d at 1125).  The Court also found that the software engaged in the unauthorized practice of law because it "'held itself out as offering legal expertise'" and "'offered customers extensive advice on how to take advantage of so-called loopholes in the bankruptcy code.'"  *Id*. (quoting *In re Reynoso*, 477 F.3d at 1125).  In contrast, Upsolve represents that it "neither promises nor provides any case-specific advice, and operates only at its users' fully informed direction."  *Id*.

Upsolve requests the Court conclude that it is not engaged in the unauthorized practice of law, withdraw the Order to Show Cause, and allow it to continue operating in the ordinary course.  *Id*. at 4, 16.  In the alternative, if the Court concludes Upsolve's activities constitute the practice of law, Upsolve requests "an opportunity to meet and confer with the U.S. Trustee to propose, for the Court's approval, modifications to Upsolve's software to bring it in compliance

with applicable law," and for the "opportunity to brief and argue preserved constitutional issues regarding whether regulations governing the unauthorized practice of law, as applied to Upsolve, would violate the U.S. and Maryland Constitutions." *Id.* at 16.

On October 7, 2021, Mr. Vetter filed a line of no response, indicating the United States Trustee would not be responding to Upsolve's supplemental brief. ECF No. 105. On October 20, 2021, the Court notified Upsolve and the United States Trustee's Office by letter that the Court was taking the matter under advisement. ECF No. 107.

## V. CONCLUSIONS OF LAW

### A. Authority of the Court to Enter the Show Cause Orders

#### 1. Assistance with and Representations Made in Papers Filed with the Court

In the two instant cases, the Court's concerns center on the basis for the debtors' statements in their respective Declarations and whether Upsolve's assistance to the debtors complied with the applicable statutes and rules regarding the practice of law in Maryland and before this Court. *See* Order to Show Cause, at 4. That the Bankruptcy Court may probe the basis for representations made in a paper filed with the Court is not only axiomatic to the Court's duties but is also provided for by Federal Rule of Bankruptcy Procedure 9011,[26] which authorizes sanctions where documents are not "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of a new law[.]" Fed. R. Bankr. P. 9011(b)(2); *see also Koffman v. Osteoimplant Tech., Inc.*, 182 B.R. 115, 124 (D. Md. 1995) (finding that "the Bankruptcy Code contains numerous other provisions directed toward regulating the use of the bankruptcy process and the conduct of the parties in bankruptcy court[,]" including 11 U.S.C. § 105(a) and Rule 9011)). Further, as this

---

[26] To be clear, the Court is not considering imposing sanctions pursuant to Federal Rule of Bankruptcy Procedure 9011 against Upsolve; the reference to Rule 9011 is employed here for exemplification only.

Court has held, matters concerning the bankruptcy filing fall well within the Court's "core jurisdiction because preparation of bankruptcy statements and schedules is integral to the administration of the estate under 28 U.S.C. § 157(b)(2)(A), and the disclosures therein impact debtor-creditor relationships under 28 U.S.C. § 157(b)(2)(O)." *Lucas*, 312 B.R. at 570.

The Court's jurisdiction also squarely encompasses oversight of those assisting debtors in connection with their bankruptcy cases. *Id*. (citing *McDow v. We the People Forms & Serv. Ctrs., Inc.* (*In re Douglas*), 304 B.R. 223, 232 (Bankr. D. Md. 2003)); *see also In re Moore*, 283 B.R. 852, 857 (Bankr. E.D.N.C. 2002) ("[B]ecause the petition and schedules are at the heart of the bankruptcy process, matters attendant to [their] preparation are 'core' proceedings."). Regardless of whether the Court deems Upsolve to be a bankruptcy petition preparer (addressed *infra* in Section V.B), the duty of the Court remains steadfast to ensure that those assisting debtors with the preparation of documents to be filed with this Court, regardless of whether payment was exchanged, operate within the confines of applicable law.

The Court places particular importance on the Declarations of Pro Se Assistance filed by Ms. Petersen and Ms. Crawford. The Declarations each indicate the debtor received "free legal assistance" from Upsolve, were signed by the individual debtors, and contain the contact information for Ms. Tran, listed as Upsolve's "Managing Attorney." *In re Peterson*, ECF No. 1-1, at 1; *In re Crawford*, ECF No. 8. The Court finds that by including this information, Upsolve purposefully stated its participation in the cases and availed itself of the Court's authority.[27]

---

[27] In the Fourth Circuit, a business purposefully avails itself of the laws of the forum and the authority of the Court when a three-part test is met, under which the Court analyzes: "'(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the forum state; (2) whether the plaintiff's claims [arose] out of those activities; and (3) whether the exercise of personal jurisdiction is constitutionally reasonable." *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 559 (4th Cir. 2014) (alteration in original) (quoting *Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 302 (4th Cir. 2012)). "The purposeful availment inquiry is grounded on the traditional due process concept of

2.  Regulation of the Practice of Law Before the Court

The Court's duty is additionally borne out by the concern regarding whether Upsolve

engaged in the unauthorized practice of law.  *See* Order to Show Cause, at 4.  As previously

explained:

> This Court has subject matter jurisdiction to determine whether a party in
> a bankruptcy proceeding had practiced law without authorization.  The practice of
> law before this Court is a matter that arises in or is related to a case under Title
> 11.  *See* 28 U.S.C. § 1334(b).  In *In re Douglas*, 304 B.R. 223 (Bankr. D. Md.
> 2003), the Court found that a claim of unauthorized legal practice is "certainly a
> 'matter concerning the administration of the estate,'" and therefore is a core
> matter.  *Id*. at 232 (quoting 28 U.S.C. § 157(b)(2)(A)).  Similarly, the Court in *In
> re Lucas*, 312 B.R. 559, 573 (Bankr. D. Md. 2004), determined that it had "the
> inherent power to regulate [legal] practice in cases before it."  The *Lucas* Court
> found that as a unit of the United States District Court of Maryland, the
> Bankruptcy Court's power to regulate the practice before it was derived from the
> District Court's Local Rules which concern attorney regulation.

*In re Final Analysis, Inc.*, 389 B.R. 449, 460 (Bankr. D. Md. 2008) (footnote omitted); *see also*

*U.S. v. Johnson*, 327 F.3d 554, 560 (7th Cir. 2003) ("[A] federal court's power to regulate and

discipline attorneys appearing before it extends to conduct by nonlawyers amounting to the

practice of law without a license. . . .   [T]he fact that state law provides penalties for the

---

'minimum contacts,' which itself is based on the premise that 'a corporation that enjoys the
privilege of conducting business within a state bears the reciprocal obligation of answering to
legal proceedings there.'"  *Id*. (quoting *Tire Eng'g*, 682 F.3d at 301).

　　While the instant circumstances may not lend themselves to application of this test in the
traditional sense, the hallmarks of the test are easily met nonetheless.  Upsolve purposefully
availed itself of this Court's authority by providing its services to Maryland citizens with the
prospect that those citizens would file their bankruptcy cases with this Court.  Upsolve provided
the debtors with the Declarations that both described Upsolve's assistance and bore Ms. Tran's
name and contact information.  While there is not a traditional plaintiff or defendant in these
cases, it is clear that the Orders to Show Cause were issued as a result of Upsolve's interactions
with and activity on behalf of debtors in Maryland, thus satisfying the second prong.  The third
prong is demonstrably fulfilled as Upsolve has not been unduly burdened or inconvenienced by
appearing in this Court; rather, Upsolve appeared willingly, with counsel, on multiple occasions.
Sufficient notice of the proceedings was provided, as demonstrated by the significant amount of
evidence presented to the Court.  Mr. Pavuluri's testimony undoubtedly evidences Upsolve's
mission and goal of assisting potential debtors in Maryland and elsewhere.  Accordingly, the
Court finds Upsolve purposefully availed itself of the jurisdiction of this Court.

unauthorized practice of law does not limit by itself a federal court's exercise of the inherent power to address the same problem[,] . . . [s]o long as the inherent powers are exercised in harmony with applicable statutory or constitutional alternatives . . . .") (footnotes omitted) (citing *G. Heileman Brewing Co. v. Joseph Oat Co.*, 871 F.2d 648, 652 (7th Cir. 1989) (*en banc*)). While Upsolve is not a party to these cases in the traditional sense, the determination of whether the unauthorized practice of law occurred here is nonetheless within this Court's jurisdiction. Accordingly, the Court directed Upsolve to show cause as to the enumerated concerns. *Id.*

### 3. The Court's Inherent Power and Section 105 of the Bankruptcy Code

The inherent power of federal courts to issue orders in furtherance of the duties otherwise conferred by rule or statute has been oft discussed in this and other Circuits, as well as by the United States Supreme Court. "Federal courts possess certain 'inherent powers,' not conferred by rule or statute, 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Goodyear Tire & Rubber Co. v. Haeger*, --- U.S. ---, 137 S. Ct. 1178, 1186 (2017) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)); *see also Chambers v. NASCO*, 501 U.S. 32, 43 (1991). These inherent powers, "[b]ecause of their very potency, . . . must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44 (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980)). Bankruptcy courts additionally wield the well-settled power, under 11 U.S.C. § 105, to "issue any order, process, or judgment that is necessary and appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Further, "[n]o provision of [the Bankruptcy Code] providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." *Id.*

The Fourth Circuit Court of Appeals has read Section 105 in its plainest terms. *See Burd v. Walters* (*In re Walters*), 868 F.2d 665, 669 (4th Cir. 1989) ("We see no reason to read into [the statutory] language anything other than its plain meaning . . . ."); *see also Kestell v. Kestell* (*In re Kestell*), 99 F.3d 146, 149 (4th Cir. 1996) (holding same and quoting *In re Walters*, 868 F.2d at 669). While Section 105 is intentionally broadly phrased, its application is limited to those actions consistent with, but not duplicative of, the Bankruptcy Code; Section 105 "cannot be invoked . . . to achieve ends contrary to other specific Code provisions." *In re Kestell*, 99 F.3d at 148-49; *see also Law v. Siegel*, 571 U.S. 415, 421 (2014) (quoting 2 Collier on Bankruptcy ¶ 105.01[2]] (16th ed. 2013)) ("It is hornbook law that § 105(a) 'does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code.'"); *Simonini v. Bell* (*In re Simonini*), 69 F. App'x 169, 171 (4th Cir. 2003). While this Court concludes that its jurisdiction to decide the matters here is well-settled, the Court finds that, to the extent necessary, it is proper to invoke the Court's inherent powers and 11 U.S.C. § 105(a) to resolve the concerns expressed in the Orders to Show Cause.[28]

---

[28] While not raised by Upsolve, the Court finds it appropriate to acknowledge that a discharge has been entered in both the Peterson and Crawford cases. *In re Peterson*, ECF No. 54 (discharge issued July 7, 2020); *In re Crawford*, ECF No. 22 (discharge issued February 25, 2020). Case law is clear that "[t]he Court's jurisdiction to decide the issue of sanctions is not affected by the status of a case, whether dismissed or closed, or by whether a discharge has been entered." *In re T.H.*, 529 B.R. 112, 134 (Bankr. E.D. Va. 2015) (citing *Garrett v. Coventry II DDR/Trademark Montgomery Farm, L.P.* (*In re White-Robinson*), 777 F.3d 792, 795-96 (5th Cir. 2015); *In re Dental Profile, Inc.*, 446 B.R. 885, 890 (Bankr. N.D. Ill. 2011); *In re Light*, 357 B.R. 23, 31 n.5 (Bankr. N.D.N.Y. 2006); *In re Henderson*, 360 B.R. 477, 484 (Bankr. D.S.C. 2006); *Troost v. Kitchin* (*In re Kitchin*), 327 B.R. 337, 359 (Bankr. N.D. Ill. 2005); *In re Neiman*, 257 B.R. 105, 110 (Bankr. S.D. Fla. 2001)); *see also L. Sols. of Chicago LLC v. Corbett*, 971 F.3d 1299, 1316-17 (11th Cir. 2020) (concluding that the bankruptcy court possessed subject matter jurisdiction to impose sanctions in closed cases). Therefore, the Court finds that the Chapter 7 discharges received by Ms. Peterson and Ms. Crawford neither divest nor otherwise alter the ability of this Court to exercise its duties pursuant to its core jurisdiction or its inherent powers pursuant to § 105(a).

For these reasons, the Court finds that it did properly exercise its authority and discretion pursuant to its core jurisdiction and § 105 in issuing the Orders to Show Cause to Upsolve. Additionally, the Court finds that Upsolve was provided sufficient notice and given extensive opportunity to submit evidence and brief the issues raised by the Court. Upsolve actively and fully participated in these proceedings. The Court is therefore assured that Upsolve received more than sufficient due process.

## B.  11 U.S.C. § 110 Does Not Apply to Upsolve

A bankruptcy petition preparer is defined as "a person, other than an attorney for the debtor or an employee of such attorney under the direct supervision of such attorney, who prepares for compensation a document for filing[.]"  11 U.S.C. § 110(a)(1).  Upsolve asserts that it does not receive direct compensation from its users, as reflected in the free nature of its services.  Response to Order to Show Cause, at 9-10; Aug. 18, 2021 Transcript, at 181.  Further, Upsolve argues that it does not receive indirect compensation from other sources for the services it provides, as the majority of Upsolve's funding represents charitable donations, grants from legal aid associations and government entities, and fees from attorneys who provide consultations upon request by an Upsolve user through the Upsolve website.  Response to Order to Show Cause, at 10; Aug. 18, 2021 Transcript, at 65-66, 181-82.  Upsolve thus contends that it does not meet the definition of a bankruptcy petition preparer because no compensation of any type is received in exchange for the bankruptcy document preparation services.  *See* Response to Order to Show Cause, at 10.

After careful consideration, the Court accepts Upsolve's argument that Upsolve is not a bankruptcy petition preparer pursuant to 11 U.S.C. § 110.  *See* Response to Order to Show Cause, at 9-11.  Case law makes plain that the compensation must be received for preparing

bankruptcy documents for filing to fall under the auspices of Section 110. *See, e.g.*, *U.S. Tr. v. Maali* (*In re Ortega*), 614 B.R. 1, 13 (Bankr. D. Mass 2020) (non-attorney recipient of compensation to prepare bankruptcy documents for filing was subject to 11 U.S.C. § 110); *Harrington v. MVP Home Sols., LLC* (*In re Nina*), 562 B.R. 585, 594 (Bankr. E.D.N.Y. 2016) (corporation and its employees, all non-attorneys, received money, either directly or indirectly, to prepare bankruptcy petitions, thus making all of them subject to § 110); *In re Monson*, 522 B.R. 340, 347 (Bankr. D. Utah 2014) (determining, as a threshold matter, that a non-attorney who received compensation for preparing bankruptcy documents was a petition preparer under Section 110); *U.S. Tr. v. Burton* (*In re Rosario*), 493 B.R. 292, 301, 328 (Bankr. D. Mass. 2013) (non-attorney and the corporation through which he conducted business both received compensation to prepare bankruptcy documents for filing and thus both qualified as petition preparers as defined by § 110(a)(1)). There is no evidence here to indicate that any monies Upsolve receives, regardless of their source, represent direct payment for preparing documents for filing with this Court. The Court further finds the funding model does not provide indirect compensation for Upsolve's services. The Court concludes that the $20.00 fee per referral that Upsolve receives from attorneys providing free consultations to requesting Upsolve users does not constitute indirect compensation for petition preparation, as the compensation arises as a result of users declining to use Upsolve's services.[29] For these reasons, the Court finds that Upsolve receives neither direct nor indirect compensation for its services related to petition or document preparation and thus is not a bankruptcy petition preparer as defined by § 110.

---

[29] The propriety of the exchange of the referral fee between Upsolve and attorneys who provide consultations to Upsolve users upon the users' requests is beyond the scope of the Order to Show Cause and this Memorandum Opinion.

C.  What Constitutes the Practice of Law in Maryland?

1.  Definition of and Considerations Underlying Practice of Law Determinations in Maryland

Bankruptcy courts must look to state law to determine what constitutes the practice of law.  *Lucas*, 312 B.R. at 574; *see also McDow v. Skinner* (*In re Jay*), 446 B.R. 227, 242 (Bankr. E.D. Va. 2010).  There is no dispute that Maryland law is controlling here.  Post-Hearing Brief, at 4.  As this Court has noted, "This [bankruptcy] court is fully capable of applying Maryland law to determine whether Defendants' actions constitute the unauthorized practice of law." *Lucas*, 312 B.R. at 574 (citing *Compliance Marine, Inc. v. Campbell* (*In re Merritt Dredging Co.*), 839 F.2d 203, 205 (4th Cir. 1988)).

"Practice law" is a legal term of art defined within the Maryland code and explained in both state and federal case law.  Section 10-101 of the Maryland Code, Business Occupations and Professions article, defines "practice law" as "(i) giving legal advice; (ii) representing another person before a unit of the State government or of a political subdivision; or (iii) performing any other service that the Court of Appeals defines as practicing law."  Md. Code, Bus. Occ. & Prof., § 10-101(h)(1).  Additionally, the practice of law includes:

> (i) advising in the administration of probate of estates of decedents in an orphans' court of the State;
>
> (ii) preparing an instrument that affects title to real estate;
>
> (iii) preparing or helping in the preparation of any form or document that is filed in a court or affects a case that is or may be filed in a court; and
>
> (iv) giving advice about a case that is or may be filed in a court.

*Id*. § 10-101(h)(2).  Only an individual admitted to the Maryland Bar may practice law in Maryland.  *Id*. § 10-601(a).

While case law elaborates upon and provides additional context for these definitions, an "all encompassing definition" is "difficult to craft[.]" *Att'y Grievance Comm'n v. Hallmon*, 343 Md. 390, 397 (1996) (hereinafter, "*Hallmon*"); *see also Lukas v. Bar Ass'n of Montgomery Cnty*., 35 Md. App. 442, 443-44 (1977) (hereinafter, "*Lukas*") (footnote omitted) (quoting *Shortz v. Farrell*, 327 Pa. 81, 84 (1937)) ("We shall not endeavor to formulate a precise definition of the practice of law because such a definition may . . . 'be more likely to invite criticism than to achieve clarity.'").   Rather, the facts and circumstances of each case must be examined to "determine whether they 'fall[] within the fair intendment of the term.'" *Hallmon*, 343 Md. at 397 (quoting *In re Application of Mark W*., 303 Md. 1, 8 (1985)).   Such evaluations are made against the backdrop of the underlying purpose of Maryland's practice of law regulations:   "'to protect the public from being preyed upon by those not competent to practice law—from incompetent, unethical, or irresponsible representation.'   That 'goal . . . is achieved, in general, by emphasizing the insulation of the unlicensed person from the public and from tribunals such as courts and certain administrative agencies.'" *Id*. (quoting *In re Application of R.G.S.*, 312 Md. 626, 638 (1988)).[30]   The regulations "assure a minimum degree of legal competence:  'to support a presumption . . . that . . . [the] applicant is competent in the law . . . .'" *In re Application of R.G.S.*, 312 Md. at 638 (alterations in original) (quoting *In re Huntley*, 424 A.2d 8, 11 (Del. 1980)).[31]

---

[30] *See also* Model Rules of Pro. Conduct r. 5.5 cmt. 2 (Am. Bar Ass'n 2019) (noting that "limiting the practice of law to members of the bar protects the public against rendition of legal services by unqualified persons").

[31] The utmost importance of attorney competence is evident in Rule 19-301.1 of the Maryland Attorneys' Rules of Professional Conduct, entitled "Competence:" "An attorney shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." Md. Rules of Pro. Conduct 19-301.1.

The *Lukas* decision, discussed by Upsolve, illustrates the considerations this Court has previously relied upon when determining whether the practice of law has occurred:

> [T]he practice of drawing for others . . . written instruments which require more than the most elementary knowledge of the law, or more than that which the ordinary or average layman may be deemed to possess, may well be deemed to constitute the practice of law, since special legal knowledge and skill are required.

*Lukas*, 35 Md. App. at 448-49 (alteration in original) (quoting 111 A.L.R. 19, 24-25 (1937)); *see also McDow v. Mancini* (*In re Johnson*), Adv. No. 12-00408-DER, 2012 WL 5193964, at *6 (Bankr. D. Md. Oct. 19, 2012); *In re Final Analysis, Inc.*, 389 B.R. 449, 460 (Bankr. D. Md. 2008); *Lucas*, 312 B.R. at 575.  The Court of Appeals of Maryland has further explained the concept:

> The  practice of law includes "[u]tilizing legal education, training, and experience . . . [to apply] the special analysis of the profession to a client's problem." *Kennedy v. Bar Ass'n of Montgomery Cty., Inc.*, 316 Md. 646, 662, 561 A.2d 200 (1989). "Where trial work is not involved but the preparation of legal documents, their interpretation, the giving of legal advice, or the application of legal principles to problems of any complexity, is involved, these activities are still the practice of law." *Lukas v. Bar Ass'n of Montgomery Cty., Inc.*, 35 Md. App. 442, 448, 371 A.2d 669, *cert. denied*, 280 Md. 733 (1977). Importantly though, "practice of law [is] a term of art connoting much more than merely working with legally-related matters." *In re Application of Mark W.*, 303 Md. 1, 19, 491 A.2d 576 (1985). The focus of our inquiry is, "whether the activity in question required legal knowledge and skill in order to apply legal principles and precedent." *In re Discipio*, 163 Ill. 2d 515, 206 Ill. Dec. 654, 645 N.E.2d 906, 910 (1994).

*Att'y Grievance Comm'n v. Sperling*, 459 Md. 194, 267 (2018) (alterations in original); *see also Hallmon*, 343 Md. at 397.  Semantics should not override substance where decisions regarding the practice of law are concerned:

> In considering the scope of the practice of law mere nomenclature is unimportant, as, for example, whether or not the tribunal is called a 'court,' or the controversy 'litigation.'  Where the application of legal knowledge and technique is required, the activity constitutes such practice even if conducted before a so-called administrative board or commission.  It is the character of the act, and not the place where it is performed, which is the decisive factor.

*Lukas*, 35 Md. App. at 444-45 (citing *Shortz*, 327 Pa. at 84-85).  "What constitutes the practice of law is a determination that, ultimately, [the] Court makes[.]"  *Att'y Grievance Comm'n v. Shaw*, 354 Md. 636, 648 (1999).

### 2.  Federal Courts and the Unauthorized Practice of Law

Federal courts in this district have similarly approached the practice of law analysis.  The United States District Court has invoked Maryland's definition of practice of law pursuant to § 10-101(h) of the Business Occupations and Professions article as well as guidance from the state courts on the topic.  *See Aramayo v. Johns Hopkins Home Care Grp., Inc.*, Civil Action No. ELH-20-3275, 2021 WL 3883264, at *6 (D. Md. Aug. 31, 2021); *Consumer Fin. Prot. Bureau v. Access Funding, LLC*, 270 F. Supp. 3d 831, 847 (D. Md. 2017) (quoting *Lukas*, 35 Md. App. at 448).  This Court has likewise followed the instruction of the Maryland Code, *Lukas*, and its progeny.  *See In re Johnson*, 2012 WL 5193964, at *6 (quoting *Lukas*, 35 Md. App. at 448); *In re Final Analysis*, 389 B.R. at 460 (quoting *Lucas*, 312 B.R. at 573); *Lucas*, 312 B.R. at 575 (relying upon the *Lukas* and *Hallmon* opinions' examination of the practice of law).  The Court has also recognized and reiterated the importance of and the rationale underlying the practice of law rules and statutes:  "'[L]imiting the practice of law to members of the bar protects the public against rendition of legal services by unqualified persons.'"  *In re Final Analysis*, 389 B.R. at 460 (quoting *Comm. on Md. Laws. Rules of Pro. Conduct*, Formal Op. 28 (2008)).

### D.  Technology and the Unauthorized Practice of Law

The matter currently before the Court is unique, albeit one that could become less so in the face of evolving technology.  Crafting an all-encompassing definition of the practice of law is, as described herein, challenging independent of any technological overlay.  The Court is mindful that technological advancements can require, in some respects, an evolving perspective.

That said, the fundamental aspects of the practice of law must remain steadfast for the exact and perennial purposes the regulations exist:   to ensure that those rendering legal advice and practicing law are qualified, competent, and responsible.  *Cf. LegalZoom.com, Inc. v. N.C. State Bar*, No. 11 CVS 15111, 2014 WL 1213242, at \*10 (N.C. Super. Ct. Mar. 24, 2014) (examining whether LegalZoom's internet-based legal document preparation services constituted the unauthorized practice of law and stating, "The court approaches the matter as one in which it must apply the existing statutes and regulations.").

Courts addressing the intersection of the practice of law and technology stress that individuals remain vested with the right of self-representation.  *See, e.g.*, *id.* at \*12.  Those courts also recognize the "scrivener's exception," allowing non-lawyer typists to "record information that another provides without engaging in [the unauthorized practice of law] as long as [the typists] do not also provide advice or express legal judgments."  *See, e.g.*, *id*.  Either of these circumstances can involve the use of technology, but as one case highlights, it is not merely the use of computer software or the internet that provokes unauthorized practice of law concerns.  In *Janson v. LegalZoom.com, Inc.*, 802 F. Supp. 2d 1053 (W.D. Mo. 2011), the Court, in the context of competing summary judgment motions in a class action case, examined LegalZoom's online interactions with its customers and the services it provided to determine whether the unauthorized practice of law occurred in Missouri.  *See Janson*, 802 F. Supp. 2d at 1054-58.  Those interactions included entering customer-provided information into a LegalZoom template created by a non-Missouri licensed attorney.  *See id*. at 1055.  While "[n]o LegalZoom employee offer[ed] or [gave] personal guidance on answering the questions" posed, LegalZoom's "self-help services" exceeded "general instruction" by encouraging customer reliance on the site for assistance in preparing the final work product, using language such as "we'll prepare your legal

documents" and "LegalZoom takes over once customers answer a few simple online questions."

*Id*. at 1063.  The Court concluded that, under Missouri's practice of law principles, LegalZoom's

services went "well beyond the role of a notary or public stenographer."  *Id*. at 1064.

> LegalZoom's legal document preparation service goes beyond self-help because of the role played by its human employees, not because of the internet medium.  LegalZoom employees intervene at numerous stages of the so-called "self-help services."  First, after the customer has completed the online questionnaire, a LegalZoom employee reviews the data file for completeness, spelling and grammatical errors, and consistency of names, addresses, and other factual information.  If the employee spots a factual error or inconsistency, the customer is contacted and may choose to correct or clarify the answer.  Later in the process, after the reviewed information is inserted into LegalZoom's template, a LegalZoom employee reviews the final document for quality in formatting— e.g., correcting word processing "widows," "orphans," page breaks, and the like. Next, an employee prints and ships the final, unsigned document to the customer. Finally, customer service is available to LegalZoom customers by email and telephone.

*Id*.  (internal citation omitted).  Human involvement was also present in the programming stage

of LegalZoom's internet software.

> LegalZoom's branching computer program is created by a LegalZoom employee using Missouri law.  It is that human input that creates the legal document.  A computer sitting at a desk in California cannot prepare a legal document without a human programming it to fill in the document using legal principles derived from Missouri law that are selected for the customer based on the information provided by the customer.  There is little or no difference between this and a lawyer in Missouri asking a client a series of questions and then preparing a legal document based on the answers provided and applicable Missouri law.  That the Missouri lawyer may also give legal advice does not undermine the analogy because legal advice and document preparation are two different ways in which a person engages in the practice of law.

*Id*. at 1065 (internal citation omitted).  Thus, the *Janson* Court's unauthorized practice of law

concerns were based upon the human interaction and involvement at the programming and

document-creation stages.[32]

---

[32] LegalZoom ultimately prevailed in part on its summary judgment motion because the Court concluded that federal law with respect to patent and trademark applications preempted the plaintiffs' claims on those points.  *Janson*, 802 F. Supp. 2d at 1068-69.  Later, the parties settled

Bankruptcy courts have also confronted the intersection of law with humans' use of technology, particularly in the context of bankruptcy petition preparers' use of software to prepare bankruptcy papers. Several debtors in *In re Kaitangian*, 218 B.R. 102 (Bankr. S.D. Cal. 1998), received assistance from U.S. Paralegal Services in preparing their bankruptcy documents. *Id*. at 105, 109. The owner of U.S. Paralegal Services entered information from debtor-completed questionnaires into a pre-packaged bankruptcy software program, which the Court found constituted the unauthorized practice of law in California. *Id*. at 109-10. The Court in *In re Farness*, 244 B.R. 464 (Bankr. D. Idaho 2000), confronted similar circumstances with a non-lawyer bankruptcy petition preparer who entered debtors' responses to questions, which the preparer read from the official bankruptcy forms, into his computer. *Id*. at 470. Using software, the information was "entered automatically into all appropriate places on the schedules." *Id*. The Court concluded that the preparer's conduct was "more extensive than merely converting a debtor's handwritten materials into typed form[.]" *Id*. at 471.

---

their differences. *Janson v. LegalZoom.com, Inc.*, Case No. 2:10-cv-04018-NKL, 2012 WL 13047852, at *1 (W.D. Mo. Apr. 30, 2012) (granting motion to approve settlement agreement).

LegalZoom settled other lawsuits against it, subject to conditions, as well. For example, the Supreme Court of South Carolina adopted a special referee's report and recommendation concerning the parties' settlement agreement in *Medlock v. LegalZoom.com, Inc.*, 2014 S.C. Lexis 358, at *1 (S.C. Mar. 11, 2014). There, the parties agreed that LegalZoom's practices did not constitute the practice of law in South Carolina. *Id*. LegalZoom further agreed to abide by enumerated provisions, including making certain disclosures to customers and form review and approval by a South Carolina-licensed attorney. *See Medlock v. LegalZoom.com, Inc.*, Case No. 2012-208067, 2013 S.C. Lexis 362, at *6-8 (S.C. Oct. 18, 2013) (report and recommendation by special referee), *adopted by* 2014 S.C. Lexis 358, at *1 (S.C. Mar. 11, 2014).

In 2015, LegalZoom settled with the North Carolina State Bar. *LegalZoom.com, Inc. v. N.C. State Bar*, No. 11 CVS 15111, 2015 WL 6441853, at *1 (N.C. Super. Ct. Oct. 22, 2015). LegalZoom and the state bar agreed that the definition of practice of law in North Carolina "[did] not encompass LegalZoom's operation of a website that offer[ed] consumers access to interactive software that generate[d] a legal document based on the consumer's answers to questions presented by the software so long as LegalZoom complie[d]" with certain conditions. *Id*. at *1. LegalZoom pledged, among other things, to permit consumer review of documents prior to purchase; to have a licensed North Carolina attorney review LegalZoom's document templates; and to make certain disclosures. *Id*.

> [The petition preparer] . . . engaged in the unauthorized practice of law.  He is not saved by his use of preprinted bankruptcy forms or bankruptcy software which automatically placed the information he solicited from the Debtors' into the appropriate schedule.  [The petition preparer's] approach requires debtors to rely on his judgment as to the forms required to successfully file and prosecute a bankruptcy case, his use of computer software to ensure that information is correctly disclosed, and his resources as to what exemptions were available and the legal authorities supporting those claims.

*Id*. at 472 (footnote omitted).

The attempted use of websites as a shield against findings of unauthorized practice of law has also been addressed in the Ninth Circuit.  *See Frankfort Digit. Servs., Ltd. v. Kistler* (*In re Reynoso*), 477 F.3d 1117 (9th Cir. 2007).  Frankfort Digital Services ("Frankfort") sold access to "web-based software that prepare[d] bankruptcy petitions[.]"  *Id*. at 1120.  The software collected personal information from users via a series of dialog boxes, including debts, income, and assets, and used the data to generate completed petitions and schedules with exemptions selected.  *Id*. at 1121.  The software additionally generated a response to a question on the Statement of Financial Affairs regarding debt counseling and bankruptcy service-related payments, indicating, among other things, that the only human intervention or interaction that occurred vis a vis the software was undertaken by the debtor.  *Id*.

Frankfort argued that it "merely own[ed] websites which allow[ed] access to software which enable[d] the users to fill out the forms themselves."  *Frankfort Digit. Servs., Ltd. v. Neary* (*In re Reynoso*), 315 B.R. 544, 551 (B.A.P. 9th Cir. 2004).[33]  The Bankruptcy Appellate Panel found:

> The bankruptcy court properly rejected this argument:
>
> > '[W]ebsites don't just grow out of thin air and aren't maintained out of thin air.  They're put together by people; they're put on the

---

[33] As noted by the Ninth Circuit Court of Appeals, Sara L. Kistler was substituted for her predecessor, William T. Neary, as the United States Trustee on appeal.  *In re Reynoso*, 477 F.3d at 1117.

> Internet; and it's not the website that provides the assistance.  It's
> the people who develop the website that provide the assistance . . .
> .'

> The software did not simply place the debtors' answers, unedited and unmediated,
> into official forms where the debtors had typed them on a screen; rather, it took
> debtors' responses to questions, restated them, and determined where to place the
> revised text into official forms.

*Id*. at 551-52 (alteration in original) (quoting the trial transcript).  The Bankruptcy Appellate

Panel concluded that these practices constituted the unauthorized practice of law:  "Solicitation

of information which is then translated into completed bankruptcy forms is the unauthorized

practice of law, whether by website or otherwise, as is advising a debtor of the availability of

particular exemptions or choosing those exemptions."  *Id*. at 552 (citing *Hastings v. U.S. Tr.* (*In*

*re Agyekum*), 225 B.R. 695, 702 (B.A.P. 9th Cir. 1998); *Glad v. Mork* (*In re Glad*), 98 B.R. 976,

978 (B.A.P. 9th Cir. 1989); *In re Kaitangian*, 218 B.R. at 110)).  Affirming the Bankruptcy

Appellate Panel's decision, the Ninth Circuit Court of Appeals thoroughly examined Frankfort's

business and processes and concluded that it engaged in the unauthorized practice of law.  *In re*

*Reynoso*, 477 F.3d at 1125-26.  The Court found that the software went "far beyond providing

clerical services" because "[i]t determined where (particularly, in which schedule) to place

information provided by the debtor, selected exemptions for the debtor and supplied relevant

legal citations."  *Id*. at 1125-26 (citing *In re Kaitangian*, 218 B.R. at 110) (additional citations

omitted).

The Court would be remiss if *In re Boyce*, 317 B.R. 165 (Bankr. D. Utah 2004), was not

also discussed here.  Predicting Utah law, the Bankruptcy Court found that a bankruptcy petition

preparer's use of pre-packaged computer software to complete bankruptcy petitions and

schedules, including Schedule C using preprogrammed, assigned exemptions that required no

human decision making, did not constitute the practice of law.  *Id*. at 168-69, 176.  The Court

found "little distinction between a bankruptcy petition preparer utilizing specialized bankruptcy software for the preparation of the debtor's schedules and statements, and a retail software package that performs the same function for the debtor on the debtor's home computer." *Id*. at 176 (footnote omitted).

The circumstances in the discussed cases, to be sure, are not identical to those in the instant matter. The forms completed here are not Upsolve-created, but rather, official forms of the United States Bankruptcy Court. Fees were paid by the consumers in *Janson*; it is undisputed that the debtors here did not pay any monies to Upsolve. Further, this Court has concluded, *supra*, that Upsolve is not a bankruptcy petition preparer. Overall, the discussed cases demonstrate and reinforce the precision with which this Court must examine the instant matter.

### E. Does Upsolve's Technology-Based Assistance with Exemption Selection Constitute the Practice of Law?

#### 1. Exemption Assistance Generally

In addition to the *Reynoso* Court, numerous other courts have held that selecting exemptions for debtors, or assisting debtors in doing so, constitutes the practice of law. *U.S. Tr. v. Burton* (*In re Rosario*), 493 B.R. 292, 334 (Bankr. D. Mass. 2013); *McDow v. Skinner* (*In re Jay*), 446 B.R. 227, 249 (Bankr. E.D. Va. 2010); *In re Rose*, 314 B.R. 663, 705 (Bankr. E.D. Tenn. 2004); *In re Guttierez*, 248 B.R. 287, 298 (Bankr. W.D. Tex. 2000); *In re Farness*, 244 B.R. 464, 471-72 (Bankr. D. Idaho 2000); *In re Kaitangian*, 218 B.R. at 110; *In re Bright*, 171 B.R. 799, 804 (Bankr. E.D. Mich. 1994) While each of these cases involved bankruptcy petition preparers, the unauthorized practice of law analysis employed by the various courts is equally applicable to any non-lawyer. For example, in the Central District of California, the Bankruptcy

Court concluded that a bankruptcy petition preparer engaged in the practice of law when he selected and applied bankruptcy exemptions for a debtor.

> The Debtor testified in Court that he did not select his exemptions. Instead, Mr. Bohl [an officer of the petition preparation company] stated that he and [the petition preparation company] did. They apparently have a list of applicable state and federal exemptions and enter the one that seems to fit the best and yields the greatest amount. This, like the Questionnaire, requires little discussion, because it also is clearly the practice of law. The choice of exemptions involves an analysis of the debtor's assets and how they can be protected under various exemption choices. "[A]dvising of available exemptions from which to choose, or actually choosing an exemption for the debtor with no explanation, requires the exercise of legal judgment beyond the capacity and knowledge of lay persons."

*In re Bernales*, 345 B.R. 206, 225 (Bankr. C.D. Cal. 2006) (final alteration in original) (quoting *In re Kaitangian*, 218 B.R. at 110) (citing *In re Pillot*, 286 B.R. 157 (Bankr. C.D. Cal. 2002)).

Similarly, federal courts have addressed whether providing prospective debtors with technology-based assistance to select bankruptcy exemptions constitutes the practice of law, with courts such as the United States Bankruptcy Court for the Southern District of California finding in the affirmative. *In re Kaitangian*, 218 B.R. at 109. The *Kaitangian* Court rejected the bankruptcy petition preparer's defense that the software program selected the exemptions based on the assets he input. *Id.* at 110.

> The Court finds that [the petition preparer]'s contention that the Bankruptcy Speciality Software "does it all" is disingenuous. Plugging in solicited information from questionnaires and personal interviews to a pre-packaged bankruptcy software program constitutes the unauthorized practice of law. Moreover, advising of available exemptions from which to choose, or actually choosing an exemption for the debtor with no explanation, requires the exercise of legal judgment beyond the capacity and knowledge of lay persons. Accordingly, the Court finds that the [petition preparer] engaged in the unauthorized practice of law with respect to selecting exemptions for the debtors in these proceedings.

*Id.* (citing *In re McCarthy*, 149 B.R. 162, 166 (Bankr. S.D. Cal. 1992); *In re Herren*, 138 B.R. 989, 995 (Bankr. D. Wyo. 1992); *Michel v. Larson* (*In re Webster*), 120 B.R. 111, 113 (Bankr.

E.D. Wis. 1990)).  The Ninth Circuit Court of Appeals relied heavily on the *Kaitangian* decision in arriving at the same conclusion where computer software selected exemptions on the debtor's behalf.  *See In re Reynoso*, 477 F.3d at 1125-26 (citing *In re Kaitangian*, 218 B.R. at 110) (additional citations omitted).  Notably, the Court found the personalized guidance in *Reynoso*, while automated, to be legal advice and as such, violative of the unauthorized practice of law regulations in California.  *Id*. at 1126.

At least one court within the Fourth Circuit has also addressed how software-aided bankruptcy exemption selection can constitute the unauthorized practice of law.  In *In re Evans*, 413 B.R. 315 (Bankr. E.D. Va. 2009), a bankruptcy petition preparer denied advising the debtors how to select their exemptions.  *Id*. at 319.  Instead, the petition preparer claimed that the "'exemptions are a direct function of the software . . . the software itself chooses the exemption . . . and [the software] calculates the state and federal exemptions simultaneously and picks the best method for the client.'"  *Id.* at 325 (alterations in original) (quoting response to motion).  Judge Mitchell explained why such activity constituted the practice of law in Virginia:

> Numerous courts have held that the picking of exemptions for a debtor by a petition preparer is the unauthorized practice of law under various states' laws.  As one court has noted, "advising of available exemptions from which to choose, or actually choosing an exemption for the debtor with no explanation, requires the exercise of legal judgment beyond the capacity and knowledge of lay persons."  The result does not change simply because the software program used by the [petition preparer] "selected" the claimed exemptions, as "[p]lugging in solicited information from questionnaires and personal interviews to a prepackaged bankruptcy software program constitutes the unauthorized practice of law."
>
> In the present case, the [petition preparer]—even though he may have relied on a computer program rather than his own knowledge or analysis—nevertheless effectively chose which exemptions the debtors would claim on Schedule C.  The act of selecting exemptions requires "the exercise of legal judgment" as it requires knowledge of the Bankruptcy Code and the state exemption statutes. . . .
>
> . . . .

> . . . As one court has noted, "Adequate legal representation[] requires familiarity with bankruptcy law and its interplay with state law . . . all phases of analysis and document preparation, including resort to reference and document preparation resources, require . . . legal knowledge skill and experience."  Thus, the court concludes that the [petition preparer] engaged in the unauthorized practice of law by selecting the claimed exemptions listed on the debtors' Schedules C.

*In re Evans*, 413 B.R. at 325-27 (second, seventh, and eighth alterations in original) (footnotes omitted) (quoting *In re Gomez*, 259 B.R. 379, 386 (Bankr. D. Colo. 2001); *In re Kaitangian*, 218 B.R. at 110) (remaining internal citations omitted).

These cases illustrate a clear and consistent theme—that selecting exemptions for prospective debtors constitutes the practice of law.  Further, case law makes it abundantly clear that non-lawyers, whether individuals or organizations, are not absolved from the laws and regulations governing the practice of law merely by offering their services via the internet or by utilizing other electronic medium in the process of assisting debtors.  The Court must now determine whether Upsolve's program is, as Upsolve asserts, a mere matching process that enables prospective debtors to select their own exemptions as they would when proceeding *pro se*, or if the program, and by proxy, Upsolve, engages in the practice of law by selecting bankruptcy exemptions.

2. Upsolve's Contentions that the Exemption Process Does Not Constitute the Practice of Law

Upsolve offers a number of arguments as to why its processes do not constitute the practice of law.[34]  First, Upsolve argues that its repeated disclaimers to, affirmations by, and attestations of its users show that Upsolve is not engaged in the practice of law.  Post-Hearing Brief, at 4-5.  Those disclaimers include that Upsolve is not a lawyer (*id*. at 5); Upsolve does not make legal decisions or provide legal advice (*id*. at 2, 4-5, 13); the user makes the legal

---

[34] *See supra* Section I.E (discussing Upsolve's Response to the Order to Show Cause) and Section IV (discussing Upsolve's Post-Hearing Brief).

determinations regarding the contents of their bankruptcy forms (*id*. at 4-5); and the user will be self-represented (*id*. at 4). Regarding exemptions, Upsolve "requires users to attest that they 'are aware and fully understand . . . the role of bankruptcy exemptions' and that they are in sole control of applying exemptions to their property." *Id*. at 5 (alteration in original) (quoting Aug. 18, 2021 Transcript, at 41). Upsolve further argues that users must acknowledge that they, not Upsolve's software, select the statutory exemption scheme and their specific exemptions. *Id*. at 2.

Upsolve maintains that its software provides purely clerical assistance regarding exemptions, devoid of any legal knowledge or skill, and thus falls outside the ambit of Maryland's practice of law parameters. *Id*. at 1 (quoting *Lukas*, 35 Md. App. at 448). Upsolve provides a choice of exemption schemes based upon the user's state of residence or where they lived for a specific period of time prior to the anticipated petition filing date. *Id*. at 7; *see also* Aug. 18, 2021 Transcript, at 162. Upsolve contends that users review publicly available articles from its website containing exemption statutes from the user's selected exemption scheme, but which articles contain no case-specific advice. Post-Hearing Brief, at 8. Upsolve characterizes the articles as an aggregation of and consistent with information obtainable by "a sophisticated Google search of generally available information" on the internet. *Id*. at 8-9; Aug. 18, 2021 Transcript, at 43; Sept. 22, 2021 Transcript, at 27.

Upsolve explains that the articles inform and allow users themselves to select their individual bankruptcy exemptions. Post-Hearing Brief, at 8-9. This process involves the software engaging in the "mechanical" matching of key words between the listed assets and exemption statutes at the direction of the user, akin to a human typist being directed to match words and terms, which requires no legal determination or skill. *Id*. at 3, 6-7; *see* Sept. 22, 2021

Transcript, at 19-22.  The software's "matching" results in the assignment of a statutory "default assumption" based upon the description of the user's asset.  Aug. 18, 2021 Transcript, at 167; Post-Hearing Brief, at 6, 12.

Further defending its software and process, Upsolve asserts that "[t]here is no artificial intelligence, machine learning, or natural language processing algorithm involved anywhere in the exemption selection[.]"  Post-Hearing Brief, at 7.  Rather, Upsolve emphasizes the individualized, full control users can exercise over the contents of the bankruptcy forms at all stages of the process, including with exemptions.  *Id*. at 5-6, 10, 12; Aug. 18, 2021 Transcript, at 160, 164.  In this sense, Upsolve urges the Court to equate use of its software to a user filling out the Court's official bankruptcy forms themselves.  Post-Hearing Brief, at 13.

Additionally, only users with the most basic of cases may use Upsolve's software, lowering the risk of potential harm from users' exemption decisions.  *Id*. at 14.  The average Upsolve user owns assets valued at less than the total amount exemptible under the applicable wildcard exemption; therefore, the selection of the exemption scheme and statutes has no practical effect on the case since listed property is presumptively exempted.  *Id*. at 14-15; *see also id*. at 3.

Upsolve defends its software as falling outside of the fair and intended application of Maryland's unauthorized practice of law regulations, which serve to protect the public, in light of the facts of the case.  *See id*. at 4, 14-16 (citing *Lucas*, 312 B.R. at 572 n.6; *Hallmon*, 343 Md. at 397).  Upsolve argues that its cost-free model protects prospective debtors by simplifying the form completion process and allowing debtors to represent themselves, which in turn poses less risk and harm than paid alternatives.  *Id*. at 14; *see also* Sept. 22, 2021 Transcript, at 23.  Indeed, Upsolve maintains that its software helps users avoid the possibility of incompetent, unethical, or

irresponsible representation and increases low-income individuals' access to justice.  Post-Hearing Brief, at 4 (citing *Lucas*, 312 B.R. at 572 n.6); *see also id.* at 15-16.  Upsolve highlights its efforts to comply with practice of law regulations, citing consultations with numerous constituencies, including judges and the Office of the United States Trustee.  *Id*. at 15.  Upsolve represents it has received no complaints from either users or government agencies regarding its processes.  *Id*. at 3, 16.  Finally, Upsolve notes that the United States Trustee does not believe any violations of unauthorized practice of law or professional conduct regulations have occurred in the instant cases.  *Id*. at 2.

### 3. Analysis of Upsolve's Exemption Process

As discussed at length *supra*, federal courts on multiple occasions have discussed the selection of bankruptcy exemptions in the context of the unauthorized practice of law.  The Court's analysis must focus on whether the user or Upsolve selects the bankruptcy exemptions.  If the Court concludes the latter, then the analysis turns to whether any of Upsolve's asserted defenses ameliorate its unauthorized practice of law violations, as Upsolve admittedly is not a lawyer.  Several cases are particularly instructive in reaching these determinations.  In the Eastern District of Michigan, the Bankruptcy Court determined that a non-lawyer engaged in the unauthorized practice of law by providing the debtor with options regarding his available exemptions:

> Mainardi [the non-lawyer petition preparer] frequently shows debtors particular reference books and specific pages in those reference books.  Mainardi states in her testimony that when she comes to the part of the forms concerning exemptions, she shows the debtor the Michigan page and the federal page in the *Nolo* book and tells them they need to choose one set of exemptions or the other.  However, directing the client to refer to what appears to be a comprehensive list of exemptions from which the client is to select assets is the unauthorized practice of law because the only fair interpretation of the referral to the provided list is that the non-lawyer is advising the client of his or her opinion regarding available exemptions.

*In re Bright*, 171 B.R. 799, 804 (Bankr. E.D. Mich. 1994) (internal citation omitted) (citing *In re Herren*, 138 B.R. 989, 995 (Bankr. D. Wyo. 1992)).   The Court denied the non-lawyer's invocation of the debtor's approval of an option presented by the non-lawyer in the context of limited alternatives as a shield:  "By suggesting language, thus limiting the Debtor's discretion, the non-lawyer is providing legal services."  *Id.*

The Court's decision in *Evans*, which concluded that a non-lawyer bankruptcy petition preparer violated 11 U.S.C. § 110 for, among things, engaging in the unauthorized practice of law by utilizing a software program that selected debtors' exemptions, also provides pertinent guidance.  *In re Evans*, 413 B.R. 315, 319 (Bankr. E.D. Va. 2009).  While the Court here has concluded that Upsolve is not a petition preparer, the unauthorized practice of law analysis nonetheless applies.  The Court in *Evans* rebuffed the preparer's theory that use of a software program that selected the debtors' exempted property, values, and statutory bases protected him from a finding that he engaged in the unauthorized practice of law:  "The result does not change simply because the software program used by the respondent 'selected' the claimed exemptions, as '[p]lugging in solicited information from questionnaires and personal interviews to a prepackaged bankruptcy software program constitutes the unauthorized practice of law.'"  *Id.* at 325-26 (footnote omitted) (quoting *In re Kaitangian*, 218 B.R. 102, 110 (Bankr. S.D. Cal. 1998)).  Relying on *In re Kaitangian*, Judge Mitchell concurred that the selection of exemption statutes, whether performed by a human or a software program, "'requires the exercise of legal judgment beyond the capacity and knowledge of lay persons.'"  *Id.* at 325 (quoting *In re Kaitangian*, 218 B.R. at 110).

Several parallels can be drawn between the instant cases, *Bright*, and *Evans*.  First, that Upsolve utilizes software in the exemption determination process provides no absolution or

shield, as demonstrated by *In re Evans*.  Second, Upsolve's software limits, from the first phase, the exemptions from which the user may choose, much the same way that the presentation of certain pages in reference books were provided to the *Bright* debtors.  In some cases, Upsolve users are presented with no option beyond a state's exemption archetype if the state, like Maryland, requires use of state-specific exemption laws pursuant to 11 U.S.C. § 522(b)(2).  *See* Post-Hearing Brief, at 7 (citing Aug. 18, 2021 Transcript, at 190-91) ("To simplify this process, for users who are located in states, like Maryland, that allow only state exemptions—a determination that can be made through clerical review of information readily available on the internet—Upsolve's interface asks only whether or not they would like to apply state exemptions.").  In addition, Upsolve displays informational articles to users that summarize either federal or state exemptions, again similar to the reference books used in *Bright*.  As in *Bright*, the instant matters constitute circumstances where a "non-lawyer is advising the client of his or her opinion regarding available exemptions;" Upsolve's software deprives the user of the ability to choose and apply federal or other state's exemptions, even if doing so would admittedly be detrimental for prospective debtors.  *See In re Bright*, 171 B.R. at 804 (citing *In re Herren*, 138 B.R. at 995).

Here, the interaction between Upsolve users and its software may, at first blush, seem unobjectionable, in that Upsolve provides the user with exemption scheme alternatives and, later in the process, "suppl[ies] a default assumption of which exemption applies based on the user's description of the property and the user's acknowledgement of the articles they had read," after which the debtor may edit the furnished assumption.  Aug. 18, 2021 Transcript, at 167; *see also* Post-Hearing Brief, at 12.  While Upsolve adeptly described and demonstrated the exemption determination process, its characterization oversimplifies the process at two critical stages where

the Court finds the unauthorized practice of law occurs.  First, Upsolve fails to recognize that the moment the software limits the options presented to the user based upon the user's specific characteristics—thus affecting the user's discretion and decision-making—the software provides the user with legal advice.  The conclusions in *Bright* and *Evans* are apropos in the instant matter under the practice of law standards in Maryland.  By limiting the user's choices, Upsolve is "giving legal advice" and "giving advice about a case that is or may be filed in a court," a privilege limited to attorneys admitted to the Maryland Bar.  Md. Code, Bus. Occ. & Prof., § 10-101(h)(1)-(2); *id*. § 10-601(a).  The advice manifests in the presentation to users of only a limited menu of exemption options (and, in some instances, like the cases here, only one possible selection) based upon the user's current residence.  Such advice requires "more than the most elementary knowledge of the law" and exceeds the legal knowledge an ordinary layperson may have.  *See Lukas*, 35 Md. App. at 448-49 (quoting 111 A.L.R. 19, 24-25 (1937)).  The Court finds that an ordinary layperson would not possess the special legal knowledge and skill regarding exemption laws, such as the fact that both federal and state exemption law schemes exist in the bankruptcy forum, let alone in these particular instances that Maryland has opted out of the federal exemption scheme.  *See* 11 U.S.C. § 522(b)(2); Md. Code, Cts. & Jud. Proc. § 11-504(g).  This Court is not alone in concluding that exemption selection requires the exercise of legal judgment not possessed by a non-lawyer, whether performed by a human or by electronic means.  *See, e.g.*, *In re Evans*, 413 B.R. at 325; *In re Bernales*, 345 B.R. 206, 225 (Bankr. C.D. Cal. 2006); *In re Kaitangian*, 218 B.R. at 110; *In re McCarthy*, 149 B.R. 162, 166-67 (Bankr. S.D. Cal. 1992); *In re Herren*, 138 B.R. at 995.

Further, the advice provided by Upsolve's software requires the application of legal principles to an individual user's circumstances, thus constituting the practice of law in

Maryland. *Att'y Grievance Comm'n v. Sperling*, 459 Md. 194, 267 (2018).  The determination

of the appropriate exemption scheme commences with an analysis of 11 U.S.C. § 522(b)(3)(A):

> (3) Property listed in this paragraph is–
>
>> (A) subject to subsections (o) and (p), any property that is exempt
>> under Federal law, other than subsection (d) of this section, or
>> State or local law that is applicable on the date of the filing of the
>> petition to the place in which the debtor's domicile has been
>> located for the 730 days immediately preceding the date of the
>> filing of the petition or if the debtor's domicile has not been
>> located in a single State for such 730-day period, the place in
>> which the debtor's domicile was located for 180 days immediately
>> preceding the 730-day period or for a longer portion of such 180-
>> day period than in any other place[.]

11 U.S.C. § 522(b)(3)(A).  Mr. Pavuluri testified that Upsolve's software determines the

exemption choices presented to a particular user based upon a "mechanical calculation"

concerning their state of residence:  "[I]f a user has moved recently, the state exemptions that are

available to them are based mechanically on where they live from two years ago to two years and

six months ago."  Aug. 18, 2021 Transcript, at 162; *see also* Post-Hearing Brief, at 7.  The Court

is simply unable to concur with Mr. Pavuluri's view that such calculus constitutes a

"mechanical" process under the Maryland practice of law standards.  Rather, the software

interprets and applies the law to the user's particular facts to determine the exemption law

options to present—in other words, Upsolve provides advice to users as to the exemption

schemes to use.

    A further complication in Upsolve's process arises from a substantive standpoint.  In

most cases, the place of residence does equate to domicile, the latter being the decisive factor to

determine the appropriate exemption scheme to utilize under § 522(b)(3)(A), as the user likely

has the requisite intent to so remain.  *See Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S.

30, 48 (1989) (citing *Texas v. Florida*, 306 U.S. 398, 424 (1939)) ("[D]omicile is established by

physical presence in a place in connection with a certain state of mind concerning one's intent to remain there."). However, "one can reside in one place but be domiciled in another[.]" *Id.* (citing *District of Columbia v. Murphy*, 314 U.S. 441 (1941); *Adams v. Smith* (*In re Jones*), 192 Iowa 78, 80 (1921)). Thus, Upsolve's methodology excludes other possible living scenarios that could conflict with the domicile assessment. For example, one could physically reside in Maryland for employment or temporary military duty station assignment purposes but have no intent to remain there on a permanent basis. Such possibilities soundly demonstrate that the analysis required to determine the proper exemption laws for a debtor consists of more than just a time calculation related to their address. Rather, this critical decision requires acumen possessed only by those with the proper legal training and experience. The Court is constrained to conceive of a more apt example of legal advice than determining the exemption statutes applicable to an individual debtor's circumstances.

Upsolve's point that the exemption-focused articles presented to users are otherwise available on its website for anyone to view, not just its software's users, is unavailing in light of the limited options presented to the user. To be sure, the Court takes no issue with Upsolve providing articles on its website, on exemptions or other topics, be they bankruptcy-related or not. It is the manner in which Upsolve currently utilizes the articles, by filtering them to a pre-determined selection for the user's review and application, that runs afoul of Maryland's practice of law regulations.

Were the Court to accept Upsolve's argument that the information supplied by the articles is, in essence, an aggregation of results to be had from a Google search, such that the use of the articles in the manner here does not constitute the practice of law, the proverbial slippery slope would surely result. Practically anything can be "googled" and return search results; such

reality, however, does not translate into the standard for determining whether the practice of law occurred when coupled with the processes employed by Upsolve in limiting the breadth of the returned results based upon the individual user's specific characteristics.  Accordingly, the Court must conclude that, like in *Bright* and *Evans*, the unauthorized practice of law occurred here when the Upsolve software provided Ms. Peterson and Ms. Crawford with only the Maryland exemption statutes to apply in their respective cases.

Further, just as the *Reynoso* Court (477 F.3d 1117 (9th Cir. 2007)) concluded, this Court concludes that the unauthorized practice of law occurred when the software program assigned "default" exemption provisions based upon the information provided by the user.  While the user may select the exemption scheme (albeit from a limited array of options), it is the software that selects which exemption to apply to a particular asset.  *See* Aug. 18, 2021 Transcript, at 167, 187-88; Post-Hearing Brief, at 6, 12.   Neither the user's antecedent blessing or subsequent acknowledgement of the actions taken by the software nor the user's ability to edit the automated default assignments absolves Upsolve or affects the Court's analysis, particularly given that the user's initial options for exemptions available to apply were limited to those Upsolve determined should be provided (i.e., the practice of law by Upsolve).  Whether an asset constitutes property of a type or kind covered by the statute is, by its nature, a legal determination, not merely a clerical "matching" of key words that could be accomplished by a human typist as Upsolve would have the Court decide.   Many factors must be considered in making such legal determinations, including the nature of property ownership; use or purpose of the asset; and the asset's value.   Such considerations cannot be accomplished by simply "matching" key words between lists.  Even if the Court were to find the "default assignment" practice acceptable, which

it explicitly does not, such action would be tainted by the earlier unauthorized practice of law when the limited exemption options were presented to the users.

Finally, it is critical to reinforce that both instances of the unauthorized practice of law here are demonstrative of the observations made by the Ninth Circuit Bankruptcy Appellate Panel in *Reynoso* as well as those by the United States District Court in *Janson v. LegalZoom.com, Inc.*, 802 F. Supp. 2d 1053 (W.D. Mo. 2011).  This Court concludes, like the *Reynoso* and *Janson* Courts, that the Upsolve software was not spontaneously assembled by a computer, Upsolve's website, or other automated means.  Rather, humans programmed the software to function in the manner it does and to provide the legal advice and assistance to users regarding their exemptions.  Humans determined the information that would be presented to users in response to certain questions and the answers thereto—in other words, engaging in the practice of law by presenting a limited array of exemptions statutes and assigning "default" exemptions provisions.

### 4.  Analysis of Upsolve's Affirmative Defenses

Upsolve argues that their software wholly disclaims its actions as the practice of law and that users fully acknowledge that they are not receiving any legal assistance, which together demonstrate that Upsolve is not engaged in the unauthorized practice of law.  Case law clearly demonstrates that one may run afoul of practice of law principals even if there is a disclaimer instructing non-reliance by the user because liability or potential claims for the unauthorized practice of law cannot be waived.  For instance, the *Bright* Court rejected the notions that non-lawyers may disclaim liability for the unauthorized practice of law by asserting their services are that only of a scrivener or by requiring debtors to attest that no legal advice was provided, concluding that such are irrelevant and ineffectual where a non-lawyer has in fact engaged in the

unauthorized practice of law. *In re Bright*, 171 B.R. at 803 (citing *In re Herren*, 138 B.R. 989, 996 (Bankr. D. Wyo. 1992); *In re Anderson*, 79 B.R. 482, 483 (Bankr. S.D. Cal. 1987)). The *Kaitangian* Court likewise discounted the bankruptcy petition preparer's defense that he reminded the debtors that he was not their attorney and could not provide legal advice. *In re Kaitangian*, 218 B.R. 102, 110, 112 (Bankr. S.D. Cal. 1998). The *Kaitangian* Court's thorough examination of the petition preparer's actions and activities revealed numerous instances of the unauthorized practice of law, including exemption selection. *See id*. at 109-10. As *Bright* and *Kaitangian* demonstrate, the ultimate question is not whether an action, characteristic, or conclusion has been disclaimed. *See id*.; *In re Bright*, 171 B.R. at 803; *see also U.S. Tr. v. Kasuba* (*In re Harris*), 152 B.R. 440, 442, 446 n.1 (Bankr. W.D. Pa. 1993) (holding that a non-attorney who provided legal services in connection with bankruptcy petition preparation could not, despite posted signage and a waiver signed by clients, disclaim or otherwise waive unauthorized practice of law claims). Rather, the Court's focus must remain on the true nature of the activity at the heart of the controversy: "'It is the character of the act . . . [that] is the decisive factor.'" *See Lukas*, 35 Md. App. at 445 (quoting *Shortz v. Farrell*, 327 Pa. 81, 85 (1937)). Thus, regardless of the language of the disclaimers and acknowledgements, the ultimate question is whether legal decisions were made and legal advice was provided by Upsolve. As discussed above, the Court concludes in the affirmative.

Upsolve attempts to distinguish its software from that used in *Reynoso*, asserting that its software neither affirmatively selects exemptions for users nor promises legal expertise or advice. Post-Hearing Brief, at 13 (citing *In re Reynoso*, 477 F.3d at 1125). Upsolve contends that the website and software do not suggest that case-specific legal advice is offered but, instead, that the software "operates only at the users' fully informed direction." *Id*. Similar to

the aforementioned disclaimers, though, what Upsolve states it does *not* provide a user and its representations as to the user's control over the information ultimately contained on the generated bankruptcy forms belies the actual nature of the software's operations.  While the website may represent it does not offer case-specific legal advice, it does exactly that by presenting users with limited selections regarding exemptions based upon their unique circumstances and then assigning those statutes therein to the user's assets.  Rather than emulating an unrepresented debtor's experience completing the Court's official bankruptcy forms, the process includes the assessment and application of the law to specific facts, hallmarks of the practice of law and the provision of legal advice.

Upsolve correctly notes that Maryland's practice of law regulations seek to "'protect the public from . . . incompetent, unethical or irresponsible representation.'" *Lucas*, 312 B.R. at 572 n.6 (quoting *Turkey Point Prop. Owners' Ass'n v. Anderson*, 106 Md. App. 710, 717 (1995)). However, such is not the sole litmus test for determining whether an action constitutes the practice of law:  "'Where the application of legal knowledge and technique is required, the activity constitutes [the] practice [of law] even if conducted before a so-called administrative board or commission.  It is the character of the act, and not the place where it is performed, which is the decisive factor.'"  *Lukas*, 35 Md. App. at 444-45 (quoting *Shortz*, 327 Pa. at 85).  It is the character of the act, which epitomizes the practice of law in Maryland, that leads this Court to conclude that Upsolve's exemption process constitutes the unauthorized practice of law.

Upsolve offers as an additional affirmative defense that most users have fewer assets than the total wildcard exemption available to them.  The Court gives no weight to Upsolve's "no harm, no foul" argument that the selection of exemptions by its software does not constitute the practice of law simply because most, if not all, of a user's assets would be exempt under any

exemption scheme. The availability of the wildcard exemption does not alter the fact the Upsolve's software engages in the practice of law by the manner in which it selects exemptions for users and does not change the "character of the act."

### 5. Additional Points Regarding the Exemption Process

Providing affordable and zero-cost options to assist the impecunious in accessing their legal rights is, without question, the greatest challenge faced by the bar and courts at every level and in every jurisdiction. Technology may enhance such access; however, it does not obviate the concurrent need to ensure that all such mechanisms, regardless of their moniker, operate in a competent, ethical, and responsible manner and in accordance with applicable law. While Upsolve's activities within the legal world do not fit neatly into the traditional models or forms with which this Court typically interacts, the Court does not doubt that Upsolve is conducting itself with good intentions and in good faith. The Court is also assured of Mr. Pavuluri's desire to assist those facing financial hardships by presenting a cost-free option to pursue bankruptcy relief. The Court finds Mr. Pavuluri's testimony to be sincere and grounded in pure motives. His goals and aspirations early in his professional life to help those less fortunate are admirable, and the Court commends the noble efforts he and his colleagues have undertaken. The Court respects the position of the United States Trustee regarding these matters[35] and appreciates that Upsolve proactively consulted with numerous actors in the bankruptcy arena. The Court acknowledges that Upsolve's mission may indeed be in line with the spirit and purpose of

---

[35] The Court has examined the report filed by the United States Trustee in *In re Keller* at the direction of the United States Bankruptcy Court for the Eastern District of Kentucky (discussed in Section I.F.3). In consideration of the admission therein by the United States Trustee that the contents were based solely on Upsolve's representations concerning its "business model" (*see In re Keller*, ECF No. 34, United States Trustee's Report in Response to Order of the Court, at 4 n.1 (filed in *In re Crawford*, ECF No. 74)) and Mr. Vetter's representation in the Response to Upsolve's April 16, 2021 Status Update (ECF No. 88) that the United States Trustee did not undertake any independent fact finding regarding the *Keller* report's conclusions (*id.* at 3-4), the Court places no weight on the report.

protecting prospective debtors from incompetent representation.  However, good faith and pure intentions alone do not negate the "character of the act."  By selecting exemptions for users, the manner in which Upsolve's software operates embodies the character of practicing law and application of legal knowledge when considering the intended constrictions of Maryland's practice of law regulations and the facts and circumstances presently before the Court.  For these reasons, the Court finds that Upsolve engages in the unauthorized practice of law by presenting limited exemption options to users and by selecting exemptions for Upsolve users via its software.

The Court appreciates Upsolve and its counsel providing an extremely thorough demonstration of its software, both at hearing and in briefs.  Though Upsolve makes numerous arguments that its software is a purely clerical word-matching program, the Court cannot reach the same conclusion.  In its Post-Hearing Brief, Upsolve requests the opportunity to review and modify its software regarding exemptions so as to become compliant with applicable law and to confer with the United States Trustee on those modifications before presenting them for Court approval.  Post-Hearing Brief, at 16.  The Court finds that such opportunity should be afforded and will include such provision in the Order to be issued accompanying this Memorandum Opinion.  The Court looks forward to reviewing Upsolve's modified exemption procedures.[36]

### F.  Upsolve's Declarations of Pro Se Assistance

In the Order to Show Cause, the Court made particular mention of the Declarations of Pro Se Assistance (the "Declarations") supplied by Upsolve and signed and filed by Ms. Crawford

---

[36] During closing arguments, counsel for Upsolve presented alternative approaches that Upsolve could utilize regarding the exemptions process, including providing users with a blank Schedule C or importing the assets from Schedule A/B onto Schedule C without providing the exemption statutes.  Sept. 22, 2021 Transcript, at 22-23.  The Court will not evaluate either of these alternatives in fairness to Upsolve and to allow Upsolve the opportunity to review this Memorandum Opinion and consult with the United States Trustee.

and Ms. Peterson in their respective cases.  As the Court noted in the Order to Show Cause, "full disclosure to debtors and to the Court is necessary to protect debtors' interests."  Order to Show Cause, at 3 (footnote omitted).  While the Court appreciates the transparency and candor that Upsolve displayed in supplying the Declarations, the content of the Declarations and the implications thereof raised some concerns.  It was unclear to the Court how the statements within the Declarations and attributable to each debtor here were informed and appropriate under the law.  *Id*. at 4.  Uncertainty also surrounded Upsolve's funding; the identity and licensure status of any participating attorneys;[37] and the extent and nature of Upsolve's services, which appeared to exceed those permitted by a bankruptcy petition preparer under 11 U.S.C. § 110.  *Id*. at 3-4.

Ms. Tran testified that the Declarations were "a courtesy to both the trustees and the courts and clerks," meant simply to advise the Court that the debtors utilized Upsolve's services.  Aug. 18, 2021 Transcript, at 201; *see also id*. at 180 (testimony of Mr. Pavuluri confirming same).  Upsolve additionally asserted that the Declarations serve a purpose similar to attorneys' declarations of pro bono assistance, in their informative capacity.  Response to Order to Show Cause, at 12.  Upsolve no longer provides users with Declarations to file with the Court; instead, Upsolve provides a form letter, which provides a brief explanation of its services and is signed by Ms. Tran, that users may choose to file.  *Id*. at 7; ECF No. 92-1, at 2; *see also* Tran Affidavit ¶ 8 & Exh. A.  Upsolve determined that a letter from Upsolve was more likely to be docketed by the courts than a declaration.  Aug. 18, 2021 Transcript, at 178.

The Court has carefully considered Upsolve's explanation regarding its processes and services; funding sources; and the numerous acknowledgments presented to users of its software, as discussed *supra*.  The Court is satisfied that Ms. Peterson and Ms. Crawford were sufficiently

---

[37] Ms. Tran was not admitted to practice in either the Maryland state courts or in the United States District Court for the District of Maryland at the time Ms. Peterson's and Ms. Crawford's cases were filed.  Order to Show Cause, at 3 n.4.

informed about Upsolve's services prior to utilizing the software and as they completed each step of the software's process. Upsolve now provides a form letter signed by Ms. Tran instead of a declaration. These facts and the evidentiary presentation as a whole lead the Court to conclude that Upsolve has adequately addressed any perceived issues surrounding the Declarations.

### G. The Remainder of Upsolve's Website

In addition to the exemptions section, Upsolve's website provides a platform for potential debtors to complete the remainder of the bankruptcy petition and schedules, which the Court will now address. Based upon the evidentiary presentation, the Court accepts and finds credible Mr. Pavuluri's testimony that the "software by and large mimics the bankruptcy forms." *Id*. at 12. While the Court takes no issue with a majority of Upsolve's website, as explained above regarding the exemptions process as well as certain sections *infra*, the Court determines that Upsolve engages in the unauthorized practice of law.

### 1. Website Access and General Information

It is certainly not the practice of law to provide access to Upsolve's website and allow individuals to create an account profile. Upsolve employs numerous gating criteria to prevent users with certain types of assets or liabilities from using the embedded software; Upsolve does so to avoid interacting with potential debtors that may, as Mr. Pavuluri testified, "requir[e] legal advice in the future[.]" *Id*. at 16, 26. Such restrictions do not implicate the practice of law in any respect. Additionally, the general information gathered by the Upsolve software and transcribed onto the petition and schedules, such as basic contact information, marital status, and social security number, equates to a scrivening action, as it does not involve any legal advice, expertise, or application of law to fact.

2.  Debts and Creditors Section

In the Debts and Creditors section, the Upsolve program requests information regarding the user's debts and also performs a "soft pull" of the user's credit report.  Upsolve's software populates the debts reflected on the credit report onto the user's schedules.  This may facially appear to be equivalent to the software-facilitated action the Court has found impermissible as to exemptions.  The Court concludes, however, that populating a user's debts from their credit report does not rise to the level of requiring legal knowledge or expertise and is well within the capabilities of an ordinary layperson with no more than elementary legal knowledge (to the extent any such knowledge is even required for such exercise).  The contents of the credit report, obtained with the user's permission, are unique to that user.  The Court finds no evidence that any discretion is involved or utilized by the software in accessing or transcribing the report's contents.  There is no indication, either in the exhibits or by Mr. Pavuluri's testimony, that Upsolve's software transcribes only certain of the debts included on the credit report onto the user's schedules.  There is also no suggestion that the software utilizes or handles the credit reports in different manners for different users.  Further, the debtor-creditor relationships reflected within the credit report are established prior to the user accessing Upsolve's website; the debt amounts are objective in nature; and laypeople often have personal knowledge of the information contained on their credit reports by virtue of billing and account statements or collection notices.  The Court finds that when Upsolve's software electronically obtains, with consent, a user's credit report and populates their debts, the software is acting in a manner that does not require legal knowledge, skill, or discretion.

### 3.  Vehicle Ownership Section and the Valuation Instructions

Regarding vehicles owned by users, Upsolve's website directs users to the Kelley Blue Book website, provides a link to the website, and warns that they "must go to Kelley Blue Book and look up the 'Trade-in value' of the car" or risk losing their vehicle.  ECF No. 92-1, at 205.  While Upsolve does not automatically import a vehicle value from the Kelley Blue Book website onto the user's schedules on their behalf, the instructions Upsolve provides are troubling to the Court.

While Mr. Pavuluri testified that Upsolve merely suggests a valuation method, Upsolve's instruction, from the perspective of the typical Upsolve user who is, by definition, a potential debtor seeking relief from financial peril, conveys that one can *only* retain their vehicle by following Upsolve's advice.  In this Court's experience, such language likely influences a user's state of mind and leads the user to believe they have no option other than adherence or risk losing possession of their vehicle.  The user's perceived universe of valuation options shrinks to that one specified valuation type—trade-in value from the Kelley Blue Book website.[38]  Such

---

[38] The instructions for Official Form 106A/B, Schedule A/B: Property, state:

> Current value — In this form, report the current value of the property that you own in each category.  Current value is sometimes called fair market value and, for this form, is the fair market value as of the date of the filing of the petition.  Current value is how much the property is worth, which may be more or less than when you purchased the property.

Instructions: Bankruptcy Forms for Individuals, https://www.uscourts.gov/forms/individual-debtors/schedule-ab-property- individuals (last visited June 1, 2022).  Thus, the Court finds that Upsolve's instructions are at odds with the instructions for the official bankruptcy forms.

Upsolve's instruction is also contrary to the Bankruptcy Code.  Section 506(a)(2) sets forth the valuation method for personal property in a Chapter 7 case, which is

> determined based on the replacement value of such property as of the date of the filing of the petition without deduction for costs of sale or marketing.  With respect to property acquired for personal, family, or household purposes, replacement value shall mean the price a retail merchant would charge for

limitation upon a user's theoretical choice of valuation options pushes Upsolve's exacting directive into the realm of the practice of law, similar to Upsolve's current exemption practices. Here again, limiting a user's options constitutes legal advice under Maryland's practice of law regulations.  Md. Code, Bus. Occ. & Prof., § 10-101(h)(1)-(2).

Further, various courts have concluded that interpreting the meaning and methodology of valuation constitutes the practice of law; this Court agrees.  For example, the United States Court of Appeals for the Ninth Circuit concluded that a bankruptcy petition preparer engaged in the unauthorized practice of law by interpreting the term "market value" as used in the then-current instructions for the official bankruptcy forms when determining the value of a retirement account.  *Taub v. Weber*, 366 F.3d 966, 971-72 (9th Cir. 2004).  The United States Bankruptcy Court for the District of New Mexico also found that a bankruptcy petition preparer supplied legal advice to debtors by instructing them concerning how to value their assets.  *In re Rojero*, 399 B.R. 913, 919 (Bankr. D.N.M. 2008).  Other courts nationwide have reached the same conclusion.  *See, e.g.*, *Hannigan v. Marshall* (*In re Bonarrigo*), 282 B.R. 101, 106 (D. Mass. 2002) (affirming Bankruptcy Court's conclusion that bankruptcy petition preparer engaged in the unauthorized practice of law by explaining, among other things, that the debtors could value their personal property at "yard sale" values); *In re Monson*, 522 B.R. 340, 353 (Bankr. D. Utah 2014)

---

property of that kind considering the age and condition of the property at the time value is determined.

11 U.S.C. § 506(a)(2).  As the United States Bankruptcy Court for the Middle District of North Carolina cogently concluded, the definition of "'replacement value' as the price that a 'retail merchant' would charge for such property convinces the court that the valuation inquiry under section 722 must consider what a retail merchant would charge for the particular property, and not what value such property would have as a trade-in."  *In re Griffin*, No. 13-89001C-7D, 2013 WL 781141, at *1 (Bankr. M.D.N.C. Mar. 1, 2013); *accord In re Brown*, No. CIVA 06-00197JW, 2006 WL 3692609, at *3 (Bankr. D.S.C. Apr. 24, 2006).

(concluding that bankruptcy petition preparer gave legal advice in contravention of 11 U.S.C. § 110(e)(2)(B)(vi) by advising the debtor to use the "yard sale value" for her personal property).

An ordinary layperson is certainly capable of determining a vehicle's value. It is doubtless that if users independently research the value of their vehicle from online third parties, the Kelley Blue Book website would be among the internet search results. What sets Upsolve's current practice apart, however, is its reference to the Kelley Blue Book website coupled with its specific, uncategorical, and cautionary directive to utilize a particular value type among those provided by Kelley Blue Book, thus foreclosing use of any other possible valuation type or method in the user's mind. Considering all of these points, the Court concludes that referring users to the Kelley Blue Book with the express directive to utilize the trade-in value is impermissible and constitutes the practice of law. As the Court will be providing Upsolve with time to modify the exemptions section of its software, the Court invites Upsolve to proceed in the same manner on this section as well. The Order to be issued accompanying this Memorandum Opinion will include such provision, and the Court will review Upsolve's proposed revisions to this section simultaneously with the review of the exemptions section proposal.

### 4. PACER Search

Upsolve also assists users in determining the date(s) of the user's prior bankruptcy filing(s) (if any) by automatically searching the PACER system for the user's name and social security number. ECF No. 92-1, at 212; Aug. 18, 2021 Transcript, at 96. Mr. Pavuluri explained that the software's PACER search ensures that users do not inadvertently fail to list prior bankruptcy cases filed within the preceding eight years. Aug. 18, 2021 Transcript, at 96. Here again, the Court finds that this service does not require legal knowledge or skill and thus does not

rise to practicing law.  Upsolve utilizes the user's name and social security number, which the user has already provided, and compares those details to the information on PACER, which is accessible and searchable by any member of the general public.  Upsolve then transcribes the information returned by that search onto the user's bankruptcy schedules.  Similar to the credit report, the Court finds no evidence that Upsolve or its software utilizes any discretion in accessing or transcribing the retrieved data.  The average layperson would otherwise possess the information regarding their prior bankruptcy filings, making this a matter of fact unique to that user as opposed to a discretionary point.  Performing a PACER search on another's behalf is a common practice across many industries and for many different reasons, such as litigation, decisions to extend credit, and during the foreclosure process.  Certainly those individuals who regularly perform PACER searches are not practicing law when they do so, nor is Upsolve practicing law by doing so here.

### 5.  Income, Expense, Business, Contract, and Asset Information Sections

Upsolve's program further asks users to list their income, expenses, businesses, contracts, leases, and assets.  Upsolve provides users with access to informational articles and videos to inform users regarding each of these items and instructions regarding how to upload paystubs to the Upsolve program.  The Court finds that the transcriptional aspect of these sections does not amount to the practice of law, as no legal knowledge or skill is required in asking users about their income, expenses, and other categories of items.  Further, these inquiries are all reflective of items set forth on the official bankruptcy forms.  Likewise, transcribing those answers onto the schedules is analogous to a scrivener's services rather than those by a lawyer.

### 6.  Informational Articles

Additionally, the Court finds that it is not the practice of law for Upsolve to include the informational articles and videos discussing various bankruptcy-related topics within its program or on its website.  *See, e.g.*, ECF No. 92-1, at 114 (link to an "F.A.Q." article entitled "Do I Need to Include My Spouse's Income and Expenses?"); *id*. at 224 (link to a video, also available on YouTube, titled "Expenses on Your Bankruptcy Petition"); ECF No. 92-2, at 129-30 (links to articles and a video concerning exemptions generally); *id*. at 159 (Upsolve's "Bankruptcy Learning Center," which contains general, bankruptcy-related articles); ECF No. 92-3, at 419 (article entitled "Filing bankruptcy while self-employed").  The Court agrees with Mr. Pavuluri's recitation that the articles contain information that is easily obtainable by a layperson, on the internet or through other research means, and Upsolve does not provide legal assistance by merely offering these articles on its website.  *See* Aug. 18, 2021 Transcript, at 43.  As the Court previously noted, the practice of law in Maryland occurs when there is an application of legal knowledge or principles to specific facts or when legal advice is given.  *See Att'y Grievance Comm'n v. Sperling*, 459 Md. 194, 267 (2018); *Lukas*, 35 Md. App. at 448-49.  None of the articles or videos appear to contain any case- or fact-specific content.  Thus, providing articles and videos such as those described here, without more (such as specifically directing users to a particular exemption scheme or limiting a user's choices in that regard), does not constitute the practice of law.  A multitude and variety of websites provide information related to law and legal process or procedures.  For example, municipal websites cannot be said to be practicing law by electronically posting copies of municipal codes or other process-related information, and the same applies to Upsolve and its freedom to post information on its website.

7.  Court Filing Fee Payment Method Section

The Upsolve program concludes by informing users about the Chapter 7 filing fee, the methods of fee payment, and other case requirements.  Aug. 18, 2021 Transcript, at 172-73; ECF No. 92-2, at 143-44.  Information regarding the amount and acceptable manners of payment of the Chapter 7 filing fee and the income standards to qualify for waiver of the fee is widely available through both the Court and various websites.  An ordinary layperson could determine the income guidelines for their household size and compare their income to the applicable income level.  For this reason, the Court will not conclude that Upsolve's provision of this information constitutes the practice of law.

However, the Court must reach a different outcome regarding Upsolve's limitation of the options presented to a user whose monthly net income exceeds "150 percent of the income official poverty line . . . applicable to a family of the size involved[.]"  28 U.S.C. § 1930(f)(1).  In such circumstance, users are unable to select the option to apply for a waiver of the Chapter 7 filing fee; where the link to do so would otherwise appear, users see "(Not Eligible for Fee Waiver)" instead.  ECF No. 92-2, at 144.  Instead, users may only select from "Pay in full when filing" or "Pay in installments (within 120 days)" options.  *Id.*  Such option restriction is a clear application of the law to the user's particular factual circumstances—in other words, legal advice.  As stated earlier in the context of Upsolve's exemption process, limiting the options presented *ipso facto* affects a user's discretion and decision-making.  That a user could, theoretically, still apply for a waiver of the filing fee does not absolve Upsolve of the unauthorized practice of law that occurs at the moment in time when the user's universe of choices is truncated.  Further, Upsolve's process ignores that the statutory determination of a debtor's eligibility for a waiver of the Chapter 7 filing fee is not merely a review and comparison

of income to the specified income amounts. Rather, Section 1930(f)(1) requires, in the conjunctive, the Court to also assess whether the debtor's ability to pay the filing fee in installments. 28 U.S.C. § 1930(f)(1). Accordingly, the Court concludes that limiting the options presented to users regarding the filing fee constitutes the practice of law by Upsolve. While Upsolve did not request the opportunity to do so, in light of the Court granting Upsolve's request for time to review and modify the exemption section of its software, the Court invites Upsolve to proceed in the same manner on this section as well. Such provision will be included in the Order to be issued accompanying this Memorandum Opinion, and the Court will review the proposed revisions to this section simultaneously with the review of the proposals for the exemption and vehicle valuation sections.

### 8.  The Balance of the Software

The Court finds that the remainder of the software's sections is purely informational and akin to general bankruptcy information that could be obtained from numerous and varied sources by prospective debtors. The same information is provided to all users, regardless of their personal circumstances or the information they have input. The information is not used in a way that is distinct based upon the user's particular facts and circumstances. Therefore, the Court concludes that the remaining sections the software presents to users do not constitute or engage in the practice of law.

### H.  Clerical Review

After a user has supplied all requested information for their bankruptcy papers, Ms. Tran performs a clerical review of the user's forms. Upsolve users must await completion of this clerical review before they can generate and print their bankruptcy forms. Aug. 18, 2021 Transcript, at 173. Ms. Tran's review takes less than five minutes per case typically and is based

upon an internal review checklist, from which Ms. Tran does not deviate. *Id*. at 174-75, 197-98; ECF No. 92-1, at 4-5. Ms. Tran reviews the documents for "completeness and consistency" and ensures users have uploaded correct documents such as paystubs or tax returns. Aug. 18, 2021 Transcript, at 196-97. Consistent with Upsolve's internal policy limiting the scope of the review, Ms. Tran neither scrutinizes any discretionary choices made by users nor does she utilize her legal training and expertise when reviewing users' forms. *Id*. at 174-75, 199-200; ECF No. 92-1, at 7-8. If Ms. Tran discovers an error or inconsistency on a user's forms, she contacts the user through the website's messaging platform to notify them but only makes changes to the forms if the user so directs. Aug. 18, 2021 Transcript, at 199. Ms. Tran had no contact with either Ms. Peterson or Ms. Crawford. *Id*. at 200-01.

The Court finds that Ms. Tran's review of users' forms does not rise to the practice of law. Ms. Tran is not unilaterally substituting, replacing, or otherwise editing any information entered by Upsolve users without their express direction. Instead, she confirms that users have followed Upsolve's program correctly. Several facts distinguish the instant matter from those addressed in *Janson*, where the United States District Court for the Western District of Missouri found that the unauthorized practice of law occurred as a result of intense human interaction throughout the process. *LegalZoom.com, Inc. v. Janson*, 802 F. Supp. 2d 1053, 1065 (W.D. Mo. 2011). LegalZoom.com-created templates were in use and at the heart of the documents being drafted in *Janson*. *Id*. at 1055. Moreover, the *Janson* templates were created by a non-Missouri licensed attorney. *Id*. In stark contrast, there are no Upsolve-created forms in use here; rather, the Bankruptcy Court's official forms are utilized and completed. Likewise, Upsolve's website poses questions to users that mimic the bankruptcy forms. Thus, Ms. Tran's review starts from a wholly distinct documentary and procedural platform. The *Janson* Court condemned

114

LegalZoom.com for encouraging its users to rely solely on the website to prepare the needed document. *Id.* at 1064. Mr. Pavuluri and Ms. Tran each gave convincing testimony regarding Upsolve's strict policies against providing any legal advice during the form review process. Further, Ms. Tran's review focuses on consistency and completeness of answers—a task that does not require legal judgment or skill.

The Court finds Ms. Tran's testimony that she does not deviate from Upsolve's review checklist to be credible, as is her and Mr. Pavuluri's consistent testimony that each clerical review takes approximately five minutes. A typical Chapter 7 bankruptcy filing, consisting of the petition, schedules, statements, creditor list, and required declarations, is approximately fifty pages in length, though often more. The Court finds it difficult to conjure how Ms. Tran could render any legal advice in a brief review of such a lengthy document. In short, the Court finds that the human involvement and review in *Janson* far exceeds the clerical review performed by Ms. Tran both in duration and scope. The Court therefore concludes that Ms. Tran's clerical review does not constitute the practice of law.

## VI.  CONCLUSION

The Court finds that the issue of whether the software overall constitutes the practice of law is a close one in the instances discussed here. Based on the Court's in-depth review of the contents of the website and the items presented to the users, the Court finds that it does not constitute the practice of law as a whole, save the sections discussed above, on which the Court will await Upsolve's proposed modifications. That being said, the Court would urge and encourage Upsolve to review its website and software *en toto* for areas where the process could be moved further away from the precipice of legal advice.

Upsolve stated in its October 29, 2020 Status Report that it had "suspended use of its software product by self-represented debtors in Maryland pending resolution of this proceeding." *In re Crawford*, ECF No. 58, at 2. The Court appreciates Upsolve's candor, initiative, and respect for the adjudication process by ceasing operations within Maryland pending the outcome of this proceeding. Given the findings contained within this Memorandum Opinion, the Court finds it appropriate and expects such self-imposed suspension within Maryland to continue during Upsolve's remedial discussions with the United States Trustee Program, and pending further review by this Court and full resolution of the Order to Show Cause.

The Court will issue a separate Order consistent with the conclusions contained in this Memorandum Opinion.


cc:     All parties in interest


**End of Memorandum Opinion**